1   Jahan C. Sagafi (Cal. Bar No. 224887)        Daniel Kohrman (admitted *pro hac vice*)

2   Katrina L. Eiland (Cal. Bar No. 275701)      Laurie McCann (admitted *pro hac vice*)
    Julia Rabinovich (Cal. Bar No. 290730)       Dara Smith (admitted *pro hac vice*)

3   OUTTEN & GOLDEN LLP                           AARP FOUNDATION LITIGATION
    One Embarcadero Center, 38th Floor            601 E. Street, N.W.

4   San Francisco, CA 94111                       Washington, D.C. 20049
    Telephone: (415) 638-8800                     Telephone: (202) 434-2060

5   Facsimile: (415) 638-8810                     Facsimile: (202) 434-2082
    E-mail: jsagafi@outtengolden.com              E-mail: dkohrman@aarp.org

6   E-mail: keiland@outtengolden.com              E-mail: lmccann@aarp.org

7   E-mail: jrabinovich@outtengolden.com          E-mail: dsmith@aarp.org

8   Adam T. Klein (admitted *pro hac vice*)       Jennifer L. Liu (Cal. Bar No. 279370)
    OUTTEN & GOLDEN LLP                           THE LIU LAW FIRM, P.C.

9   3 Park Avenue, 29th Floor                     1170 Market Street, Suite 700
    New York, New York 10016                      San Francisco, CA 94102

10  Telephone: (212) 245-1000                     Telephone: (415) 896-4260

11  Facsimile: (646) 509-2060                     Facsimile: (415) 231-0011
    E-mail: atk@outtengolden.com                  E-mail: jliu@liulawpc.com

12

13  *Attorneys for Plaintiffs and Proposed Class and Collective Members*

14              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16  STEVE RABIN and JOHN CHAPMAN,          Case No. 16-cv-02276- JST
    on behalf of themselves, and all others

17  similarly situated,                     Hon. Jon S. Tigar

18          Plaintiffs,

19          v.                              **FIRST AMENDED COMPLAINT FOR**
                                            **VIOLATIONS OF ADEA AND STATE LAWS**

20  PRICEWATERHOUSECOOPERS LLP,
                                            **CLASS AND COLLECTIVE ACTION**
21          Defendant.

22                                          **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

Individual and Representative Plaintiffs Steve Rabin and John Chapman ("Plaintiffs"), on behalf of himself and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## SUMMARY OF CLAIMS

1.      This is a class and collective action brought by applicants to Defendant PricewaterhouseCoopers LLP ("PwC") alleging violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), as well as the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, *et seq.*("FEHA"), California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* ("MCRA").

## PwC

2.      PwC is a global accounting and auditing firm.  The firm has offices in 157 countries and over 208,000 employees worldwide.  The firm is also very profitable.  For the year ending June 30, 2015, PwC's global gross revenues were $35.4 billion.

3.      PwC classifies its accountants in the following general hierarchy:  Junior Associates, Associates, Experienced and/or Senior Associates, Junior Managers, Managers, Senior Managers, Junior Directors, Directors, Senior Directors.  Above those individuals are Partners, Managing Partners, a Board of Partners and Principals of PwC, and a Global Board of the PwC global network of affiliated entities.

4.      PwC prides itself on attracting and retaining young workers.  PwC has conducted extensive research on maintaining a workforce of Millennials.  In 2013, PwC commissioned the largest, most comprehensive global generational study ever conducted of Millennial employees and how to retain them.  PwC generally does not hire older individuals for its Associate and

other entry-level positions.  Rather, it generally hires younger individuals, with an emphasis on hiring through on-campus hiring.

**Discrimination against older workers**

5.      PwC's culture and practices have distributed the benefits of its enormous success unequally—systematically favoring younger applicants at the expense of their older counterparts. Individuals 40 years of age and older are rarely in an Associate position at PwC.

6.      PwC maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants.  PwC's unlawful bias against older workers manifests itself in several ways, including but not limited to: (1) a near-exclusive reliance on a recruitment system for entry-level accounting positions that requires applicants to be affiliated with a university, (2) a focus on attracting and retaining "Millennials," and (3) a mandatory early retirement policy that requires Partners to retire by age 60.  As a result of this bias against older workers, older accountants who are equally or more qualified have been systematically excluded from the career opportunities that are afforded to people who work for PwC.

7.      The underrepresentation of workers over age 40 at PwC is stark.  In its 2011 U.S. Corporate Responsibility Summary Report, PwC boasted that the average age of its workforce was 27, and that two out of three PwC employees were in their 20s and early 30s.  Of that group, 75% reported that PwC was their first job out of college.  According to its own figures, in 2016, almost 80% of PwC employees will be Millennials, individuals between the ages of 21 and 36. Not surprisingly, the number of workers 40 years of age and older in entry-level and lower to mid-level positions is stunningly low.

8.      PwC's demographics sharply diverge from the relevant labor pool.  According to the U.S. Department of Labor's Bureau of Labor Statistics' 2013 Labor Force Statistics, the median age of accountants and auditors in the United States is 43.2 years old.  Approximately 35% of accountants and auditors nationwide are Millennials.  At 80% of its workforce, Millennials are vastly overrepresented at PwC, and employees ages 40 and older are notably underrepresented in its workforce.

9.      According to a 2013 industry study by CareersinAudit.com, 57% of accountants believe that ageism is prevalent in the industry.  Forty-seven percent believe that accountants 40 years of age or older find it difficult to get promoted or to get a new job.  Of the survey participants ages 50 and over, 37% believe they had missed out on career opportunities because of their age.

**PwC's recruiting and hiring**

10.      PwC has three main channels, or "tracks," for recruiting and hiring—Campus, Experienced, and Executive.  PwC fills Junior Associate, Associate, and other entry-level positions straight out of college through the Campus track.  PwC recruits applicants for Experienced and/or Senior Associate and Manager positions through its Experienced track. Plaintiff challenges PwC's hiring policies and practices with respect to its Campus track hiring, as well as a portion of its Experienced track hiring (i.e., non-management Experienced and/or Senior Associate positions).  Executive track hiring is not at issue here.

11.      PwC's recruiting and hiring policies, patterns, and/or practices have a disparate impact on applicants 40 years of age or older because they deter applicants 40 years of age or older from applying and disfavor hiring those applicants 40 years of age or older who do apply. Specifically, its Campus track recruiting results in disproportionately higher employment of

younger employees than their older comparators.  This is because PwC generally does not post job openings for Associate and other entry-level positions on its website, even though it regularly posts job openings for "Experienced" hires on its website.  The only way to apply to these positions is through PwC's Campus track recruitment tool, which requires a college affiliation.

12.     In addition, PwC has a continuing policy, pattern, and/or practice of subjecting all Associate applicants 40 years of age or older to disparate treatment.  Namely, PwC intentionally disfavors hiring people 40 years of age or older for both entry-level and Experienced-level Associate positions.  Upon information and belief, when applicants 40 years of age or older apply for an Associate position, regardless of level, PwC intentionally screens them out and denies them employment opportunities because of their age.

13.     These policies, patterns, and/or practices are no accident.  Rather, they are part and parcel of PwC's corporate culture.  PwC has intentionally implemented these companywide policies and practices throughout the United States in order to maintain its youthful culture. PwC's policies and practices have the effect of deterring prospective applicants ages 40 and older from applying and denying job opportunities to those individuals ages 40 and older who do apply.  PwC provides compliance consulting services and undoubtedly understands the consequences of its own recruitment policies and practices.

14.     PwC also requires Partners to retire at the age of 60.  Therefore, the closer an applicant is to the age of 60, the less time PwC would employ that individual as a Partner and the less return on investment an applicant can offer PwC.  Because of the organization's mandatory retirement policy, PwC's hiring personnel are incentivized to hire applicants under 40 years of age.

15.     Older applicants denied employment at PwC continue to experience repercussions stemming from PwC's discriminatory hiring protocols throughout their careers.  Because many jobs in the accounting field require applicants to have previous employment at PwC, KPMG, Deloitte, or Ernst & Young (collectively known as the Big 4), accountants ages 40 and older are shut out of future business opportunities and professional growth as a result of PwC's discriminatory policies.

16.     Accordingly, in addition to bringing this action on his own behalf, Plaintiff also brings this action on behalf of a class and collective of similarly situated applicants 40 years of age or older who have been (1) denied employment in Junior Associate, Associate, Experienced Associate, or Senior Associate or comparable positions (the "Covered Positions") and/or (2) deterred from applying to work in the Covered Positions at PwC, in order to end PwC's discriminatory policies and/or practices and to make the class and collective whole.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction over the ADEA claims pursuant to 28 U.S.C. § 1331 and Section 7(c) of the ADEA, 29 U.S.C. § 626(c).

18.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

19.     The United States District Court for the Northern District of California has personal jurisdiction over PwC because the firm does business in California and in this District, and because some of the acts complained of and giving rise to the claims alleged occurred in and emanated from this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

21.     Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to their ADEA claims.  Rabin filed a charge of age discrimination on or about December 11, 2013 with the Equal Employment Opportunity Commission ("EEOC").  He subsequently filed an amended charge of discrimination specifically alleging classwide claims on behalf of all similarly situated individuals age 40 or older denied employment by PwC on August 14, 2014. Sixty days have passed since the filing of this amended charge.  29 U.S.C. § 626(d)(1). Because Chapman is similarly situated to Rabin, having been affected by the ongoing discriminatory policies and practices raised in Rabin's charge, Rabin's charge satisfies the ADEA's administrative exhaustion requirement for Chapman.

22.     Pursuant to the EEOC's work-sharing agreement with the California Department of Fair Employment and Housing ("DFEH"), Rabin's charge and amendment are considered dually filed with the DFEH.  By notice dated December 17, 2013, the DFEH dismissed Rabin's case and issued a Notice of Right to Sue.

23.     Pursuant to the EEOC's work-sharing agreement with the Michigan Department of Civil Rights ("MDCR"), Chapman's charge is considered dually filed with the MDCR.  The MCRA imposes no administrative exhaustion requirements.

24.     Any and all other prerequisites to the filing of this suit have been met.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES**

**Plaintiff Steve Rabin**

25.     Plaintiff Steve Rabin is a Certified Public Accountant, who lives in Fremont, California.  He graduated from the California Institute of Technology with a B.S. in Mathematics.  He is a citizen of the United States.  He was born in 1962 and is now 53 years old.

26.     In or around October 2013, at the age of 50, Rabin applied for the position of Seasonal Experienced Associate with PwC.  His employment application was directed to PwC's San Jose office.  That same month, PwC notified him that it had rejected his application.

**Plaintiff John Chapman**

27.     Plaintiff John Chapman has a Master's degree in accounting with ten years of experience in bookkeeping.  He is a citizen of the United States.  He was born in 1968 and is now 47 years old.

28.     In or around April 2016, he applied for a Tax Transfer Pricing Associate position in Detroit, Michigan. PwC rejected his application.

**Defendant PwC**

29.     Upon information and belief, Defendant PwC is a Delaware limited partnership formed under the laws of the State of Delaware with a place of business within San Francisco, and County of San Francisco at Three Embarcadero Center San Francisco, California 94111.

30.     Upon information and belief, Defendant PwC maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

31.     Defendant PwC interviewed Plaintiff for a position and rejected his application, with the purpose and effect of denying him employment because of his age.

32.     On information and belief, Defendant PwC employs over 184,000 people worldwide.  At the end of fiscal year 2015, PwC employed 53,656 people in its North American and Caribbean region.  Hundreds or thousands of potential class members have applied, attempted to apply, or been interested in applying to the Covered Positions during the relevant time period.

## FACTUAL ALLEGATIONS

33.     PwC has three main channels, or "tracks," for recruiting and hiring—Campus, Experienced, and Executive.  PwC fills Junior Associate, Associate, and other entry-level positions through its Campus track.  The Experienced track recruits applicants for Experienced and/or Senior Associate and Manager positions.  Plaintiff challenges PwC's hiring policies and practices with respect to its Campus track hiring, as well as a portion of its Experienced track hiring (i.e., non-management Experienced and/or Senior Associate positions).  Executive track hiring is not at issue here.

34.     PwC maintains uniform employment policies throughout the United States.  It cultivates and promotes a common human resources strategy to recruit and maintain a young workforce.  Indeed, PwC conducted the "largest, most comprehensive global generational study ever conducted" into how to attract and keep "Millennials."  This study interviewed 1,000 Millennials and conducted 44,000 web-based surveys over 18 territories.

35.     In a 2014 Harvard Business Review article, the U.S. Chairman of PwC trumpeted PwC's "strikingly young" workforce:  "Because we recruit approximately 8,000 graduates annually from college and university campuses, two-thirds of our people are in their twenties and early thirties.  We've always employed large numbers of young people."  According to its FY 2013 U.S. Corporate Responsibility Report, PwC hired approximately 3,200 Experienced hires

and approximately 9,000 Campus hires.  According to a 2016 article in The Atlantic, today PwC recruits about 11,000 new hires on college campuses each year.

**Campus Recruitment Track**

36.     PwC offices throughout the country use common employment policies to deter and screen out applicants ages 40 and older.  The Campus track recruits applicants straight out of college.  PwC fills entry-level positions such as Junior Associate and Associate through Campus hiring, and has designated recruiters for different schools.  PwC also hires college students as interns (who may then be offered entry-level positions).

37.     Individuals not affiliated with a college campus cannot apply to entry-level positions at PwC.  Entry-level positions are rarely advertised to the general public.  Interested applicants can browse the handful of entry-level job postings that are sometimes listed on PwC's Campus track webpage under the "Featured Jobs" section.  However, applicants cannot submit an application for these "Featured Jobs" without going through the Campus recruiting tool. Interested applicants may also browse the jobs posted on the Experienced track webpage, but entry-level accounting positions are generally not advertised there.  To apply for an entry-level accounting position, applicants must therefore conduct their job searches either through a designated school recruiter or through PwC's Campus webpage—a recruitment tool that, on its face, targets younger, college-aged applicants.  To submit their applications for entry-level positions through this webpage, applicants must list their college affiliation and college year (freshman, sophomore, junior, senior, or graduate student).  These fields are mandatory, precluding individuals who are no longer in school from submitting an application.

**Experienced Track**

38.     PwC's second hiring channel, the Experienced hire track, posts open positions for Experienced and/or Senior Associates.  Although anyone may *apply* for positions in this track, PwC's unlawful bias against older workers, including its focus on attracting and retaining "Millennials" and its mandatory early retirement policy, systematically decreases older workers' chances of being hired.  Due to this bias, PwC intentionally denies applicants ages 40 and older employment in the Covered Positions because of their age.

**Professional Support**

39.     According to its FY 2013 U.S. Corporate Responsibility Report, PwC uses a series of programs that introduce college students to the accounting profession.  These programs provide college students with opportunities to grow professionally while simultaneously getting to know the firm.  They include PwC's "Personal Brand Experience," which offers an opportunity for individuals to focus on the unique characteristics that can make them stand out from the crowd, and "Explore," which introduces freshman and sophomore college students to the accounting profession while developing their teamwork, strategic thinking, problem-solving, and leadership skills.

40.     According to its FY 2013 U.S. Corporate Responsibility Report, PwC also assigns interns an associate coach, a career coach, and a relationship partner.

41.     PwC offers all employees coaching, mentorship, and training to provide career advancement.  PwC employees receive world-class learning opportunities through a system called "Learning at PwC," where they have access to an in-depth catalogue of learning programs and specialized courses.  This training program has been ranked number one for three years by Training magazine in its "Training Top 125," which recognizes "the organizations with the most

successful learning and development programs in the world." Because of the opportunities it provides employees, PwC has repeatedly been named as one of the top three places to launch a career by BusinessWeek.

42.    By disproportionally hiring young applicants, PwC deprives class and collective members of invaluable professional support that leads to future business and growth opportunities.

**Employment Policies**

43.    PwC maintains a uniform employment policy of exclusively conducting hiring for entry-level accounting positions, such as Junior Associate or Associate, through its Campus track hiring. By not advertising the overwhelming majority of entry-level accounting positions anywhere except on college campuses and, sometimes, behind a log-in wall on its Campus webpage that only those affiliated with a college can access, PwC makes it nearly impossible for non-students to apply for entry-level accounting positions. To submit an application for an entry-level position through PwC's Campus webpage, applicants must list their college affiliation and college year (freshman, sophomore, junior, senior, or graduate student). Applicants ages 40 and over who are no longer affiliated with an educational institution cannot answer these questions, and consequently, cannot submit their application. As a result of this recruitment policy, PwC discriminates against prospective applicants ages 40 and older.

44.    In advertising its career opportunities, PwC almost exclusively uses pictures of young people. The "Campus" track webpage and the "Experienced" track webpage feature a young-looking male and female. On its website, PwC also advertises that in 2016, 80% of its workforce will be a "Millennial," and touts its efforts to attract and keep these "Millennials" in a prominently posted report. Earlier this year, PwC even rolled out a new perk targeted at

"Millennials":  student loan repayment assistance.  On its "Diversity" webpage, PwC boasts of company initiatives and support systems for many other groups, including minorities, women, parents, the LGBT community, disabled workers, and veterans.  These initiatives include Minority Circles, Women's Networking Circles, Parenting Circles, Professionals with Disabilities Network, Lesbian, Gay, Bisexual and Transgender Circles, an LGBT Partner Advisory Board, a Disability Strategy Council, Connect (a mentoring program for disabled employees), and Veteran's Network (a program that helps veterans obtain transition support and career development opportunities).  In contrast, there is not a single initiative focused on the needs or interests of older workers.  Similarly, information on the "Family" section of PwC's "Diversity" webpage is focused on benefits that are primarily of interest to younger workers. There is extensive information about the company's generous, fully-paid parental leave policies for new parents, but very little about benefits that older workers are more likely to take advantage of, such as time off to care for a sick parent or spouse.  By using photos of young people, advertising its disproportionately young workforce, announcing its desire to maintain that youthful workforce, designing benefits packages specifically for younger workers, and largely ignoring the needs of older workers, PwC deters prospective applicants ages 40 and older from applying.

45.    PwC also intentionally disfavors hiring people 40 years of age or older for the Covered Positions.  PwC is very proud of its inordinately young workforce.  In order to continue to attract and maintain "Millennials," PwC intentionally screens out individuals ages 40 and older who apply for the Covered Positions and denies them employment opportunities.

46.    PwC also has a mandatory retirement age of 60 for Partners.  As a result, applicants ages 40 or over are less attractive to hiring personnel because their potential

contributions to PwC appear limited when compared to those of similarly situated younger applicants. Because of PwC's mandatory retirement policy, PwC's hiring personnel are disincentivized from hiring applicants 40 years of age or older.

47. Together, PwC's uniform employment policies systematically exclude and deter applicants and prospective applicants ages 40 and older.

48. Notwithstanding this discrimination, PwC claims on its website that it is an equal opportunity employer. In particular, on its career pages, PwC states in multiple places: "All qualified applicants will receive consideration for employment at PwC without regard to race; creed; color; religion; national origin; sex; age; disability; sexual orientation; gender identity or expression; genetic predisposition or carrier status; veteran, marital, or citizenship status; or any other status protected by law."

**PwC is a Gateway Employer in the Accounting Industry**

49. Business opportunities in the accounting profession are determined, at least in part, by "Big 4" experience—meaning previous employment at PwC, Deloitte, KPMG, or Ernst & Young. Because having Big 4 experience is so critical to obtaining good jobs in the accounting profession, by not posting entry-level job openings on its website and only accepting applications for these positions from college students, and by intentionally screening out applicants ages 40 and older for the Covered Positions, PwC deprives applicants and prospective applicants ages 40 and older from both current and future business opportunities. Thus, age disparities in PwC's allocation of business opportunities perpetuate age discrimination in the accounting sector as a whole.

**Conclusion**

50.     Accordingly, Plaintiffs brings this class and collective action on behalf of themselves, individually, and all similarly situated applicants and prospective applicants ages 40 and older in the United States.  This action seeks to end PwC's discriminatory policies, patterns, and/or practices, and to make the class and collective whole by requesting the following remedies: injunctive relief to remedy systemic age discrimination; declaratory relief; an award of back pay and front pay; liquidated damages; compensatory and punitive damages; restitution; and attorneys' fees.

## COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiffs bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) seeking liability-phase injunctive and declaratory relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States, who were denied employment at PwC or deterred from applying for employment at PwC, at any time from October 18, 2013, through the resolution of this action for claims under the ADEA.  Plaintiffs also bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) for monetary damages and other make-whole relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States, who were denied employment at PwC or deterred from applying for employment at PwC, at any time from October 18, 2013 through the resolution of this action for claims under the ADEA.

52.     Plaintiffs and other potential members of the collective are similarly situated in that they have all sought and been denied or were deterred from applying for the Covered Positions at PwC by policies and practices that have the purpose and effect of denying them employment opportunities because of their age.

53.     There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

54.     As part of its regular business practice, PwC has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiff and the collective.  This policy and pattern or practice includes, but is not limited to:

      a.     willfully utilizing a biased recruiting system for entry-level accounting hiring that excludes, deters, and discriminates against workers ages 40 and over; and

      b.     willfully implementing a mandatory early retirement policy that deters and discriminates against applicants ages 40 and over for the Covered Positions;

      c.     willfully refusing to hire applicants ages 40 and over for the Covered Positions.

55.     PwC maintained and implemented these policies and practices with the purpose and effect of denying Plaintiff and other members of the collective employment opportunities because of their age.  These policies cannot be justified on the basis of reasonable factors other than age.

56.     PwC is aware or should have been aware that federal law requires it to conduct recruitment and hiring for the Covered Positions without regard to an applicant's age.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff Rabin also brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in California at any time (1) from August 14, 2013 through the resolution of this action for claims under FEHA and (2) from four years prior to the filing of this

- 16 -
FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
CASE NO. 16-cv-02276-JST

complaint through the resolution of this action for claims under the UCL.  Rabin also brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for monetary damages and other make-whole relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in California at any time (1) from August 14, 2013 through the resolution of this action for claims under FEHA and (2) from four years prior to the filing of this complaint through the resolution of this action for claims under the UCL.  Rabin reserves the right to amend the definition of the class based on discovery or legal developments.

58.     Plaintiff Chapman also brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in Michigan at any time from three years before the filing of this complaint through the resolution of this action for claims under the MCRA.  Rabin also brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for monetary damages and other make-whole relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in Michigan at any time from three years before the filing of this complaint through the resolution of this action for claims under the MCRA.  Chapman reserves the right to amend the definition of the class based on discovery or legal developments.

59.     Plaintiffs are members of the classes they to represent.

60.     The members of the classes identified herein are so numerous that joinder of all members is impracticable.  As of June 2015, PwC employs over 208,000 employees worldwide and approximately 53,000 in the North American region.  Although Plaintiffs do not know the

precise number of all applicants and deterred prospective applicants ages 40 and older of PwC, the number is far greater than can be feasibly addressed through joinder.

61.     There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

(a)     whether PwC's policies or practices exclude prospective applicants ages 40 and over from applying to the Covered Positions;

(b)     whether PwC's policies or practices deter prospective applicants ages 40 and over from applying to the Covered Positions;

(c)     whether PwC's policies or practices discriminate against applicants and deterred prospective applicants ages 40 and older;

(d)     whether PwC intentionally disfavors applicants ages 40 and older;

(e)     whether PwC's policies and practices violate FEHA;

(f)     whether PwC's policies and practices violate the MCRA;

(g)     whether PwC's challenged policies or practices are necessary to its business operations;

(h)     whether age is a bona fide occupational qualification; and

(i)     whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the class are warranted.

62.     The Representative Plaintiffs' claims are typical of the claims of the classes

63.     The Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the classes.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

64.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because PwC has acted and/or refused to act on grounds generally applicable

to the class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the class as a whole.  The class members are entitled to injunctive relief to end PwC's common, uniform, unfair, and discriminatory policies and practices.

65.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of PwC's common, uniform, unfair, and discriminatory policies and practices.  The propriety and amount of punitive damages are based on PwC's conduct, making these issues common to the class.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

### Steve Rabin

66.     Plaintiff Steve Rabin is a 53-year-old Certified Public Accountant with over ten years of accounting experience.  Notwithstanding his experience, Rabin is willing to take even an entry-level job at PwC because having Big 4 experience is so critical to obtaining good jobs in the accounting profession.

67.     However, because PwC generally does not post entry-level accounting jobs on its website and only accepts applications for these positions from college students, Rabin was not able to apply for an entry-level accounting position.

68.     In October 2013, Rabin applied for a position of Seasonal Experienced Associate, generally one of the lower-level positions on an audit team, in the San Jose, California office of PwC.

69.     On or around October 22, 2013, PwC interviewed him.  The interview process consisted of an in-person meeting and a meeting via conference call.  During the course of the interview, the interviewer, a Senior Assurance Manager (approximate age 35) asked Plaintiff, "The people in the cubicles are much younger than you.  How would you fit in?  Would you be able to work for a younger manager or director?"  Rabin responded that he had worked for a younger manager in the past, found it to be beneficial, and that he enjoyed the experience.

70.     Even though Rabin was qualified for the position in all respects, he was told he was not selected for the position in late October 2013.

71.     Instead, on information and belief, PwC hired a substantially younger individual who was not more qualified than Rabin to fill the position.

72.     On or about December 2013, Rabin filed a charge of age discrimination with the EEOC.

73.     On or about August 14, 2014, he filed an amended charge of discrimination with the EEOC specifically alleging classwide claims on behalf of all similarly situated individuals age 40 or older who were either deterred from applying or denied employment by PwC because of their age.

74.     This charge and amendment are considered dually filed with the DFEH pursuant to the EEOC's work-share agreement with the DFEH.  The DFEH issued a Notice of Right to Sue on December 17, 2013.

**John Chapman**

75.     John Chapman, who is 47 years old, earned a Master's Degree in accounting in 2014 and has been earning credit towards his doctorate since then.  He has approximately ten years of bookkeeping experience and some experience teaching accounting classes.

76.     Chapman was interested in both entry-level and experienced associate positions at PwC because he is interested in PwC's tax practice, he wants experience to qualify as a Certified Public Accountant, and Big 4 experience is essential for securing a job in the accounting profession.

77.     Chapman applied to the following entry-level positions with PwC between December 2014 and April 2016: Transfer Pricing Associate positions in Virginia and Tax Core Associate positions in Texas.  Although he was qualified for these positions, PwC did not select him.  PwC did not provide a reason for rejecting his applications.

78.     On or around March 8, 2016, Chapman applied for an Audit/Assurance Experienced Associate position with PwC in Denver, Colorado and a Transfer Pricing Experienced Associate position in Houston, Texas.  Although he was qualified for these positions, PwC did not select him.  PwC did not provide a reason for rejecting his application.

79.     On or around April 17, 2016, Chapman applied for Tax Transfer Pricing Associate Summer/Fall 2016 position with PwC in Detroit, Michigan.  PwC did not select him for this position, but did not give him a reason for his rejection.  Although he was qualified for this position, PwC did not select him.  PwC did not provide a reason for rejecting his application.

80.     During one of his in-person interviews, a senior manager expressed concern about whether Chapman would have a problem reporting to and working with people younger than himself.  Chapman said that this was not a problem for him.  Chapman later indirectly heard feedback from a current PwC staff person knowledgeable about the market for entry-level accountants, who reacted to his efforts to obtain an accounting job with PwC with the comment that "I would question whether the pace of public accounting will be up this guy's alley" and

suggested seeking work abroad, noting, for example, that a firm with a slower pace of work could be more suitable for someone with Chapman's background.

81.     On or about July 13, 2016, Chapman filed a charge of discrimination with the EEOC alleging classwide claims on behalf of all similarly situated individuals age 40 or older who were either deterred from applying or denied employment by PwC because of their age. This charge and amendment are considered dually filed with the MCRA pursuant to the EEOC's work-sharing agreement with the MDCR.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Intentional Discrimination
### (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(1))
### (On Behalf of Plaintiff and the Collective)

82.     Plaintiffs incorporate the preceding paragraphs as alleged above.

83.     This Claim is brought by Representative Plaintiffs on behalf of themselves and the collective they represent.  Plaintiffs have exhausted their administrative remedies.  Sixty days have passed since Rabin has filed charges with the EEOC.

84.     PwC engages in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older. PwC has intentionally discriminated against Plaintiffs and the collective in violation of the ADEA by, among other things:

> (a)     Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;
>
> (b)     Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;
>
> (c)     Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;

(d)     Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;

(e)     Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and

(f)     Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

85.     These companywide policies are intended to and do have the effect of denying Plaintiffs and the collective employment opportunities because of their ages.  The discriminatory acts that constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

86.     Age is not a bona fide occupational qualification for the Covered Positions.

87.     As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

88.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1).

89.     Plaintiffs request relief as hereinafter described.

## SECOND CLAIM FOR RELIEF

### Disparate Impact Discrimination
### (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(2))
### (On Behalf of Plaintiff and the Collective)

90.     Plaintiff incorporates the preceding paragraphs as alleged above.

91.     This Claim is brought by Representative Plaintiffs on behalf of themselves and the collective they represent.  Plaintiffs have exhausted their administrative remedies.  Sixty days have passed since Rabin has filed charges with the EEOC.

92.     PwC maintains discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age, including but not limited to the following: its near-exclusive reliance on "Campus" track hiring to fill entry-level accounting positions, its requirement that applicants for entry-level positions be currently affiliated with a college or university, its failure to advertise the vast majority of open entry-level positions to the general public, its preference for hiring and retaining "Millennials," and its mandatory early retirement policy.

93.     PwC has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

94.     As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

95.     The foregoing policies, patterns, and/or practices have an unlawful disparate impact on applicants and prospective applicants ages 40 and older in violation of by 29 U.S.C. § 623(a)(2).

96.     Plaintiffs request relief as hereinafter described.

## THIRD CLAIM FOR RELIEF

### Intentional Discrimination
### (California Fair Employment and Housing Act, Cal. Gov't Code § 12940(a))
### (On Behalf of Plaintiff Rabin and the Class)

97.     Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

98.     This Claim is brought by Representative Plaintiff Rabin on behalf of himself and the class he represents.  Rabin has timely filed charges with the DFEH and has thus exhausted his administrative remedies.

99.     PwC engages in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older. PwC has intentionally discriminated against Rabin and the class in violation of FEHA by, among other things:

> (a)     Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;
>
> (b)     Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;
>
> (c)     Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;
>
> (d)     Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;
>
> (e)     Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and
>
> (f)     Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

100.     These companywide policies are intended to and do have the effect of denying Plaintiff and class members employment opportunities because of their age. The discriminatory acts that constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

101.     PwC has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California, and the discriminatory policies,

patterns, and/or practices have had a discriminatory impact on applicants and prospective applicants ages 40 and older within the state of California.

102.    Age is not a bona fide occupational qualification for the Covered Positions.

103.    As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

104.    The foregoing conduct constitutes illegal, intentional discrimination prohibited by California Government Code section 12940(a).

105.    Rabin requests relief as hereinafter described.

## **FOURTH CLAIM FOR RELIEF**

**Disparate Impact Discrimination**
**(California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940(a), 12491)**
**(On Behalf of Plaintiff Rabin and the Class)**

106.    Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

107.    This Claim is brought by Representative Plaintiff Rabin on behalf of himself and the class he represents.  Rabin has timely filed charges with the DFEH and has thus exhausted his administrative remedies.

108.    PwC maintains discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of FEHA and are not, and cannot be, justified by a business necessity, including but not limited to the following:  its near-exclusive reliance on "Campus" track hiring to fill entry-level accounting positions, its requirement that applicants for entry-level positions be currently affiliated with a college or university, its failure to advertise the vast majority of open entry-level positions to the general public, its preference for hiring and retaining "Millennials," and its mandatory early

1    retirement policy.  Even if such systems and/or policies could be justified by business necessity,

2    less discriminatory alternatives exist and would equally serve any alleged necessity.

3    109.    PwC has maintained these discriminatory policies, patterns, and/or practices

4    within and outside the liability period in this case.

5    110.    As a direct result of PwC's discriminatory policies and/or practices as described

6    above, Plaintiff and the class have suffered damages including, but not limited to, lost past and

7    future income, compensation, and benefits.

8    111.    The foregoing policies, patterns, and/or practices have an unlawful disparate

9    impact on applicants and prospective applicants ages 40 and older in violation of California

10   Government Code sections 12940(a), 12941.

11   112.    Plaintiff requests relief as hereinafter described.

### FIFTH CLAIM FOR RELIEF

**Unfair Competition**
**(California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
(On Behalf of Plaintiff Rabin and the Class))**

113.    Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

114.    The foregoing conduct, as alleged, violates the California Unfair Competition

Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, which prohibits, *inter alia,* unfair

competition in the form of any "unlawful, unfair or fraudulent business act or practice."  Cal.

Bus. & Prof. Code § 17200.

115.    PwC committed, and continues to commit, unlawful and unfair business practices,

including (1) engaging in an intentional, companywide, and systemic policy, pattern, and/or

practice of discrimination against applicants and prospective applicants ages 40 and older in

violation of FEHA and the ADEA, and (2) maintaining discriminatory policies, patterns, and/or

practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of FEHA and the ADEA.  Each of these violations constitutes an independent and separate violation of the UCL.  PwC also committed fraudulent business practices by claiming that it does not discriminate in hiring against any protected groups, yet maintaining policies and practices that have the intent and impact of discriminating against applicants ages 40 and older.

116.    Plaintiff Rabin and Class Members have suffered injury in fact as a result of PwC's unlawful, unfair, and fraudulent business policies and practices.

117.    PwC's conduct alleged herein occurred during the four years preceding the filing of this complaint.

118.    PwC's unfairly obtained benefits and profits as a direct and proximate result of its unlawful conduct alleged herein and has an unfair competitive advantage over employers who comply with FEHA and the ADEA because older workers are typically compensated more than their younger colleagues.  Plaintiff and Class Members are therefore entitled to disgorgement by PwC of those unlawfully obtained profits.

119.    Rabin and Class Members are entitled to appropriate restitution, injunctive relief, attorneys' fees, and declaratory relief stating that PwC's hiring policies and practices systematically and intentionally discriminate against applicants and prospective applicants ages 40 and older and result in the disproportionate employment of younger applicants.

## SIXTH CLAIM FOR RELIEF

### Intentional Discrimination
### (Michigan Civil Rights Act, Mich. Comp. Laws § 37.2202(a) )
### (On Behalf of Plaintiff Chapman and the Class)

120.    Plaintiff Chapman incorporates the preceding paragraphs as alleged above.

121.    This Claim is brought by Representative Plaintiff Chapman on behalf of himself and the class he represents.  No administrative remedies must be exhausted prerequisite to this claim.

122.    PwC engages in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older. PwC has intentionally discriminated against Chapman and the class in violation of the MCRA by, among other things:

(a)    Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;

(b)    Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;

(c)    Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;

(d)    Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;

(e)    Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and

(f)    Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

123.    These companywide policies are intended to and do have the effect of denying Plaintiff and class members employment opportunities because of their age. The discriminatory acts that constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

124.    PwC has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California, and the discriminatory policies,

patterns, and/or practices have had a discriminatory impact on applicants and prospective

applicants ages 40 and older within the state of California.

125.    Age is not a bona fide occupational qualification for the Covered Positions.

126.    As a direct result of PwC's discriminatory policies and/or practices as described

above, Plaintiff and the class have suffered damages including, but not limited to, lost past and

future income, compensation, and benefits.

127.    The foregoing conduct constitutes illegal, intentional discrimination prohibited by

Mich. Comp. Laws § 37.2202(a)

128.    Chapman requests relief as hereinafter described.

**SEVENTH CLAIM FOR RELIEF**

**Disparate Impact Discrimination**
**(Michigan Civil Rights Act, Mich. Comp. Laws § 37.2202(b) )**
**(On Behalf of Plaintiff Rabin and the Class)**

129.    Plaintiff Chapman incorporates the preceding paragraphs as alleged above.

130.    This Claim is brought by Representative Plaintiff Chapman on behalf of himself

and the class he represents.  No administrative remedies must be exhausted prerequisite to this

claim.

131.    PwC maintains discriminatory policies, patterns, and/or practices that have an

adverse impact on applicants and prospective applicants ages 40 and older in violation of the

MCRA and are not, and cannot be, justified by a business necessity, including but not limited to

the following:  its near-exclusive reliance on "Campus" track hiring to fill entry-level accounting

positions, its requirement that applicants for entry-level positions be currently affiliated with a

college or university, its failure to advertise the vast majority of open entry-level positions to the

general public, its preference for hiring and retaining "Millennials," and its mandatory early

retirement policy.  Even if such systems and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

132.    PwC has maintained these discriminatory policies, patterns, and/or practices within and outside the liability period in this case.

133.    As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

134.    The foregoing policies, patterns, and/or practices have an unlawful disparate impact on applicants and prospective applicants ages 40 and older in violation of Mich. Comp. Law 37.2202(b).

135.    Chapman requests relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

136.    Plaintiffs and the classes and collective members they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief.  Plaintiffs and the class and collective members they seek to represent are now suffering, and will continue to suffer, irreparable injury from PwC's discriminatory acts and omissions.

137.    PwC's actions have caused and continue to cause Plaintiffs and class and collective members substantial losses in employment opportunities, earnings, and other employment benefits.

138.    In addition, Plaintiffs and class and collective members suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

139.     PwC performed the acts herein alleged with malice, oppression, or fraud. Plaintiffs and class members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

140.     WHEREFORE, Plaintiffs and the class and collective pray for relief as follows:

(a)     Certification of the case as a class action on behalf of the proposed classes;

(b)     Designation of each Representative Plaintiff as a class representative for his or her respective state claims;

(c)     Designation of Representative Plaintiffs' counsel of record as class counsel;

(d)     A declaratory judgment that the practices complained of herein are unlawful and violate 29 U.S.C. §§ 621, *et seq.*; California Government Code sections 12940, *et seq.*; California Business & Professions Code sections 17200, *et seq.*; and Michigan Comp. Laws § 37.2101, *et seq.;*

(e)     A preliminary and permanent injunction against PwC and its Partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their age;

(f)     An order that PwC institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of age, and that it eradicate the effects of their past and present unlawful employment practices;

(g)     An order appointing a monitor to ensure that PwC complies with the injunction provisions of any decree that the Court orders;

(h)     An order retaining jurisdiction over this action to ensure that PwC complies with such a decree;

(i)     An order for front pay benefits to Plaintiff and class and collective members;

(j)     Back pay (including interest and benefits) for Plaintiff and class and collective members;

(k)    All damages sustained as a result of PwC's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(l)    Liquidated damages;

(m)   An award of restitution to Plaintiff and class and collective members that reflects PwC's unlawfully obtained profits;

(n)    Exemplary and punitive damages in an amount commensurate with PwC's ability to pay and to deter future conduct;

(o)    Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(p)    Pre-judgment and post-judgment interest, as provided by law; and

(q)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

141.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 626(c)(2), Plaintiff demands a trial by jury in this action.

Dated:  September 8, 2016              Respectfully submitted,

By:    */s/ Jahan C. Sagafi*
                 Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
Katrina L. Eiland (Cal. Bar No. 275701)
Julia Rabinovich (Cal. Bar No. 290730)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: keiland@outtengolden.com
E-mail: jrabinovich@outtengolden.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com

Daniel Kohrman (admitted *pro hac vice*)
Laurie McCann (admitted *pro hac vice*)
Dara Smith (admitted *pro hac vice*)
AARP FOUNDATION LITIGATION
601 E. Street, N.W.
Washington, D.C. 20049
Telephone: (202) 434-2060
Facsimile: (202) 434-2082
E-mail: dkohrman@aarp.org
E-mail: lmccann@aarp.org
E-mail: dsmith@aarp.org

Jennifer L. Liu (Cal. Bar No. 279370)
THE LIU LAW FIRM, P.C.
1170 Market Street, Suite 700
San Francisco, CA 94102
Telephone: (415) 896-4260
Facsimile: (415) 231-0011
E-mail: jliu@liulawpc.com

*Counsel for Plaintiffs and Proposed Class and
Collective Members*