Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: michael.esser@kirkland.com

Emily Nicklin (pro hac vice)
Gabor Balassa (pro hac vice)
Christina Briesacher (pro hac vice)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: emily.nicklin@kirkland.com
        gabor.balassa@kirkland.com
        christina.briesacher@kirkland.com

Attorneys for Defendant
*PricewaterhouseCoopers LLP*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEVE RABIN and JOHN CHAPMAN, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>Defendant. | CASE NO. 3:16-cv-002276-JST<br><br>Hon. Jon S. Tigar<br><br>**ANSWER AND AFFIRMATIVE DEFENSES OF PRICEWATERHOUSECOOPERS LLP TO STEVE RABIN'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ADEA AND STATE LAWS** |

Answer and Affirmative Defenses of PricewaterhouseCoopers LLP to Steve Rabin's First Amended Complaint for Violations of ADEA and State Laws

Case No. 3:16-cv-02276-JST

Defendant PricewaterhouseCoopers LLP ("Defendant") through its undersigned counsel of record, submits this Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint for Violations of ADEA and State Laws ("Amended Complaint").  Defendant denies each and every allegation of the Amended Complaint not expressly and specifically admitted below.  Using the same numbering as the Amended Complaint and leaving in Plaintiffs' headings for clarity, Defendant answers as follows:

## SUMMARY OF CLAIMS

1.      This is a class and collective action brought by applicants to Defendant PricewaterhouseCoopers LLP ("PwC") alleging violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") as well as the California Fair Employment and Housing Act, Cal. Gov. Code § 12900, *et seq.*("FEHA").  California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq* ("MCRA").

**ANSWER:**    Defendant denies the allegations of Paragraph 1, except Defendant states that PricewaterhouseCoopers LLP ("PwC") is a U.S.-based professional services firm with offices throughout the United States and several other countries.  Defendant admits that Plaintiffs purport to bring a class and collective action for alleged age discrimination under Section 621 of the Age Discrimination in Employment Act of 1967, Section 12900 of the California Fair Employment and Housing Act, Section 17200 of the California Business and Professions Code, and Section 37.2101 of the Elliott-Larsen Civil Rights Act.

### PwC

2.      PwC is a global accounting and auditing firm.  The firm has offices in 157 countries and over 208,000 employees worldwide.  The firm is also very profitable.  For the year ending June 30, 2015, PwC's global gross revenues were $35.4 billion.

**ANSWER:**    Defendant denies the allegations of Paragraph 2, except Defendant states that PwC is a U.S.-based professional services firm with offices throughout the United States and several other countries.

3.     PwC classifies its accountants in the following general hierarchy: Junior Associates, Associates, Experienced and/or Senior Associates, Junior Managers, Managers, Senior Managers, Junior Directors, Directors, Senior Directors.  Above those individuals are Partners, Managing Partners, a Board of Partners and Principals of PwC, and a Global Board of the PwC global network of affiliated entities.

**ANSWER:**     Defendant denies the allegations of Paragraph 3, except Defendant admits that its professional services staff includes Associates, Experienced Associates, Senior Associates, Managers, Senior Managers, and Directors.  Defendant also states that PwC is owned and managed by Partners and Principals.

4.     PwC prides itself on attracting and retaining young workers.  PwC has conducted extensive research on maintaining a workforce of Millennials.  In 2013, PwC commissioned the largest, most comprehensive global generational study ever conducted of Millennial employees and how to retain them.  PwC generally does not hire older individuals for its Associate and other entry-level positions.  Rather, it generally hires younger individuals, with an emphasis on hiring through on-campus hiring.

**ANSWER:**     Defendant denies the allegations of Paragraph 4, except Defendant admits that in 2013, the PwC Network (a network of professional services firms in many countries around the world, each of which is a separate legal entity), the University of Southern California, and the London Business School conducted "PwC's NextGen: A Global Generational Study" into the attitudes of "Millennial" employees (those born between 1980 and 1995 and were under 33 years of age).  Defendant also states that the 2013 NextGen Study Summary and Compendium of Findings speaks for itself.  Defendant denies all allegations concerning the content of this publication that is not expressly stated therein.

**Discrimination against older workers**

5.     PwC's culture and practices have distributed the benefits of its enormous success unequally—systematically favoring younger applicants at the expense of their older counterparts.  Individuals 40 years of age and older are rarely in an Associate position at PwC.

**ANSWER:**     Defendant denies the allegations of Paragraph 5.

6.      PwC maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants.  PwC's unlawful bias against older workers manifests itself in several ways, including but not limited to:  (1) a near-exclusive reliance on a recruitment system for entry-level accounting positions that requires applicants to be affiliated with a university, (2) a focus on attracting and retaining "Millennials," and (3) a mandatory early retirement policy that requires Partners to retire by age 60.  As a result of this bias against older workers, older accountants who are equally or more qualified have been systematically excluded from the career opportunities that are afforded to people who work for PwC.

**ANSWER:**      Defendant denies the allegations of Paragraph 6, except Defendant admits that PwC has an agreed retirement age for partners and principals that is, in most cases, at age 60.

7.      The underrepresentation of workers over age 40 at PwC is stark.  In its 2011 U.S. Corporate Responsibility Summary Report, PwC boasted that the average age of its workforce was 27, and that two out of three PwC employees were in their 20s and early 30s.  Of that group, 75% reported that PwC was their first job out of college.  According to its own figures, in 2016, almost 80% of PwC employees will be Millennials, individuals between the ages of 21 and 36.  Not surprisingly, the number of workers 40 years of age and older in entry-level and lower to mid-level positions is stunningly low.

**ANSWER:**      Defendant denies the allegations of Paragraph 7, except Defendant states that its 2011 U.S. Corporate Responsibility Report and the 2013 NextGen Study Summary and Compendium of Findings speak for themselves.  Defendant denies all allegations concerning the content of those publications that are not expressly stated therein.

8.      PwC's demographics sharply diverge from the relevant labor pool.  According to the U.S. Department of Labor's Bureau of Labor Statistics' 2013 Labor Force Statistics, the median age of accountants and auditors in the United States is 43.2 years old.  Approximately 35% of accountants and auditors nationwide are Millennials.  At 80% of its workforce, Millennials are vastly overrepresented at PwC, and employees ages 40 and older are notably underrepresented in its workforce.

**ANSWER:**      Defendant denies that PwC's demographics sharply diverge from the relevant labor pool.  Defendant further denies that Millennials are vastly overrepresented at PwC, and that personnel ages 40

1  and older are notably underrepresented in its workforce.  Defendant lacks sufficient information to admit

2  or deny the remaining allegations of Paragraph 8.

3      9.    According to a 2013 industry study by CareersinAudit.com, 57% of accountants believe

4  that ageism is prevalent in the industry.  Forty-seven percent believe that accountants 40 years of age or

5  older find it difficult to get promoted or to get a new job.  Of the survey participants ages 50 and over,

6  37% believe they had missed out on career opportunities because of their age.

7  **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 9.

8      **PwC's recruiting and hiring**

9      10.    PwC has three main channels, or "tracks," for recruiting and hiring—Campus,

10 Experienced, and Executive.  PwC fills Junior Associate, Associate, and other entry-level positions

11 straight out of college through the Campus track.  PwC recruits applicants for Experienced and/or Senior

12 Associate and Manager positions through its Experienced track.  Plaintiff challenges PwC's hiring

13 policies and practices with respect to its Campus track hiring, as well as a portion of its Experienced

14 track hiring (i.e., non-management Experienced and/or Senior Associate positions). Executive track

15 hiring is not at issue here.

16 **ANSWER:**    Defendant denies the allegations of Paragraph 10, except Defendant admits that its

17 recruitment process is generally broken into three channels referred to on PwC's website as Campus,

18 Experienced, and Executive.

19      11.    PwC's recruiting and hiring policies, patterns, and/or practices have a disparate impact on

20 applicants 40 years of age or older because they deter applicants 40 years of age or older from applying

21 and disfavor hiring those applicants 40 years of age or older who do apply.  Specifically, its Campus

22 track recruiting results in disproportionately higher employment of younger employees than their older

23 comparators.  This is because PwC generally does not post job openings for Associate and other entry-

24 level positions on its website, even though it regularly posts job openings for "Experienced" hires on its

25 website.  The only way to apply to these positions is through PwC's Campus track recruitment tool,

26 which requires a college affiliation.

27 **ANSWER:**    Defendant denies the allegations of Paragraph 11, except Defendant admits that it posts

28 job openings for Experienced and Senior Associates on its website.

12.     In addition, PwC has a continuing policy, pattern, and/or practice of subjecting all Associate applicants 40 years of age or older to disparate treatment.  Namely, PwC intentionally disfavors hiring people 40 years of age or older for both entry-level and Experienced-level Associate positions.  Upon information and belief, when applicants 40 years of age or older apply for an Associate position, regardless of level, PwC intentionally screens them out and denies them employment opportunities because of their age.

**ANSWER:**     Defendant denies the allegations of Paragraph 12.

13.     These policies, patterns, and/or practices are no accident.  Rather, they are part and parcel of PwC's corporate culture.  PwC has intentionally implemented these companywide policies and practices throughout the United States in order to maintain its youthful culture.  PwC's policies and practices have the effect of deterring prospective applicants ages 40 and older from applying and denying job opportunities to those individuals ages 40 and older who do apply.  PwC provides compliance consulting services and undoubtedly understands the consequences of its own recruitment policies and practices.

**ANSWER:**     Defendant denies the allegations of Paragraph 13, except Defendant admits that it performs a variety of consulting services that may include consulting regarding compliance.

14.     PwC also requires Partners to retire at the age of 60.  Therefore, the closer an applicant is to the age of 60, the less time PwC would employ that individual as a Partner and the less return on investment an applicant can offer PwC.  Because of the organization's mandatory retirement policy, PwC's hiring personnel are incentivized to hire applicants under 40 years of age.

**ANSWER:**     Defendant denies the allegations of Paragraph 14, except Defendant admits that PwC has an agreed retirement age for partners and principals that is, in most cases, at age 60.

15.     Older applicants denied employment at PwC continue to experience repercussions stemming from PwC's discriminatory hiring protocols throughout their careers.  Because many jobs in the accounting field require applicants to have previous employment at PwC, KPMG, Deloitte, or Ernst & Young (collectively known as the Big 4), accountants ages 40 and older are shut out of future business opportunities and professional growth as a result of PwC's discriminatory policies.

**ANSWER:**     Defendant denies the allegations of Paragraph 15.

16.     Accordingly, in addition to bringing this action on his own behalf, Plaintiff also brings this action on behalf of a class and collective of similarly situated applicants 40 years of age or older who have been (1) denied employment in Junior Associate, Associate, Experienced Associate, or Senior Associate or comparable positions (the "Covered Positions") and/or (2) deterred from applying to work in the Covered Positions at PwC, in order to end PwC's discriminatory policies and/or practices and to make the class and collective whole.

**ANSWER:**     Defendant denies the allegations of Paragraph 16, except Defendant admits that Plaintiffs purport to bring this action on behalf of themselves and allegedly similarly situated applicants 40 years of age or older who have been denied employment in the "Covered Positions" and/or allegedly deterred from applying to work in the "Covered Positions" at PwC.  Defendant further states that it does not classify any position on its professional services staff as "Junior Associate."

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction over the ADEA claims pursuant to 28 U.S.C. § 1331 and Section 7(c) of the ADEA, 29 U.S.C. § 626(c).

**ANSWER:**     Defendant states that Paragraph 17 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 17.

18.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**     Defendant states that Paragraph 18 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 18.

19.     The United States District Court for the Northern District of California has personal jurisdiction over PwC because the firm does business in California and in this District, and because some of the acts complained of and giving rise to the claims alleged occurred in and emanated from this District.

**ANSWER:**     Defendant states that Paragraph 19 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 19.

1    20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part

2    of the events giving rise to the claims occurred in this District.

3    **ANSWER:**    Defendant states that Paragraph 20 calls for a legal conclusion to which no answer is

4    required.   Except as expressly admitted, Defendant denies the allegations of Paragraph 20.

5    21.    Plaintiffs have exhausted their administrative remedies and complied with all statutory

6    prerequisites to their ADEA claims.  Rabin filed a charge of age discrimination on or about December

7    11, 2013 with the Equal Employment Opportunity Commission ("EEOC").   He subsequently filed an

8    amended charge of discrimination specifically alleging classwide claims on behalf of all similarly

9    situated individuals age 40 or older denied employment by PwC on August 14, 2014.  Sixty days have

10   passed since the filing of this amended charge.  29 U.S.C. § 626(d)(1).  Because Chapman is similarly

11   situated to Rabin, having been affected by the ongoing discriminatory policies and practices raised in

12   Rabin's charge, Rabin's charge satisfies the ADEA's administrative exhaustion requirement for

13   Chapman.

14   **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 21,

15   except Defendant states that the EEOC notified it of Charge No. 556-2014-00151 purportedly filed by

16   Plaintiff Rabin in or around December 2013 and that the EEOC notified it of an Amendment to Charge

17   No. 556-2014-00151 purportedly filed by Plaintiff Rabin in or around August 2014.  Defendant admits

18   that sixty days have passed since August 2014.  Defendant further states that the EEOC notified it of

19   Charge No. 471-2016-03129 purportedly filed by Plaintiff Chapman in or around July 2016.  Defendant

20   denies the remaining allegations in Paragraph 21.

21   22.    Pursuant to the EEOC's work-sharing agreement with the California Department of Fair

22   Employment and Housing ("DFEH"), Rabin's charge and amendment are considered dually filed with

23   the DFEH.  By notice dated December 17, 2013, the DFEH dismissed Rabin's case and issued a Notice

24   of Right to Sue.

25   **ANSWER:**    Defendant states that Paragraph 22 calls for a legal conclusion to which no answer is

26   required.  Defendant lacks sufficient information to admit or deny the allegations of Paragraph 22.

27

28

23.     Pursuant to the EEOC's work-sharing agreement with the Michigan Department of Civil Rights ("MDCR"), Chapman's charge is considered dually filed with the MDCR.  The MCRA imposes no administrative exhaustion requirements.

**ANSWER:**     Defendant states that Paragraph 23 calls for a legal conclusion to which no answer is required.   Except as expressly admitted, Defendant denies the allegations of Paragraph 23.

24.     Any and all other prerequisites to the filing of this suit have been met.

**ANSWER:**     Defendant states that Paragraph 24 calls for a legal conclusion to which no answer is required.   Except as expressly admitted, Defendant denies the allegations of Paragraph 24.

## PARTIES

**Plaintiff Steve Rabin**

25.     Plaintiff Steve Rabin is a Certified Public Accountant, who lives in Fremont, California. He graduated from the California Institute of Technology with a B.S. in Mathematics.  He is a citizen of the United States.  He was born in 1962 and is now 53 years old.

**ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 25.

26.     In or around October 2013, at the age of 50, Rabin applied for the position of Seasonal Experienced Associate with PwC.  His employment application was directed to PwC's San Jose office. That same month, PwC notified him that it had rejected his application.

**ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 26, except Defendant admits that in or around October 2013, after a PwC recruiter reached out to Plaintiff Rabin, Plaintiff Rabin submitted an application for a Seasonal Experienced Associate Auditor position for the San Jose office.  Defendant also admits that in or around October 2013, after interviews with Plaintiff Rabin, it notified Plaintiff Rabin that PwC would not extend him an offer of employment.

**Plaintiff John Chapman**

27.     Plaintiff John Chapman has a Master's degree in accounting with ten years of experience in bookkeeping.  He is a citizen of the United States.  He was born in 1968 and is now 47 years old.

**ANSWER**:     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 27.

28.     In or around April 2016, he applied for a Tax Transfer Pricing Associate position in Detroit, Michigan.  PwC rejected his application.

1    **ANSWER**:     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 28,

2    except Defendant admits that in or around April 2016, Plaintiff Chapman submitted an application for a

3    Tax Transfer Pricing Associate position based in Detroit, Michigan.  Defendant admits that Plaintiff

4    Chapman was not selected for this position.

5    **Defendant PwC**

6        29.    Upon information and belief, Defendant PwC is a Delaware limited partnership formed

7    under the laws of the State of Delaware with a place of business within San Francisco, and County of

8    San Francisco at Three Embarcadero Center, San Francisco, California 94111.

9    **ANSWER:**     Defendant denies the allegations of Paragraph 29, except Defendant admits that it is a

10   Delaware Limited Liability Partnership.  Defendant also admits that it has an office location at Three

11   Embarcadero Center, San Francisco, California 94111.

12       30.    Upon information and belief, Defendant PwC maintains control, oversight, and direction

13   over the operation of its facilities, including its employment practices.

14   **ANSWER:**     Defendant denies the allegations of Paragraph 30.  Defendant states that PwC's hiring

15   decisions in the United States are spread out across PwC's 80+ offices in the United States, and there is

16   not one individual or group who oversees and/or decides who is extended offers of employment.

17       31.    Defendant PwC interviewed Plaintiff for a position and rejected his application, with the

18   purpose and effect of denying him employment because of his age.

19   **ANSWER:**     Defendant denies the allegations of Paragraph 31, except Defendant admits that it

20   interviewed Plaintiff Rabin for a position and did not extend him an offer of employment.

21       32.    On information and belief, Defendant PwC employs over 184,000 people worldwide.  At

22   the end of fiscal year 2015, PwC employed 53,656 people in its North American and Caribbean region.

23   Hundreds or thousands of potential class members have applied, attempted to apply, or been interested

24   in applying to the Covered Positions during the relevant time period.

25   **ANSWER:**     Defendant denies the allegations of Paragraph 32.

26                          **FACTUAL ALLEGATIONS**

27       33.    PwC has three main channels, or "tracks," for recruiting and hiring—Campus,

28   Experienced, and Executive.  PwC fills Junior Associate, Associate, and other entry-level positions

through its Campus track.  The Experienced track recruits applicants for Experienced and/or Senior Associate and Manager positions.  Plaintiff challenges PwC's hiring policies and practices with respect to its Campus track hiring, as well as a portion of its Experienced track hiring (i.e., non-management Experienced and/or Senior Associate positions).  Executive track hiring is not at issue here.

**ANSWER:**    Defendant denies the allegations of Paragraph 33, except Defendant admits that its recruitment process is generally broken into three channels referred to on PwC's website as Campus, Experienced, and Executive.

34.    PwC maintains uniform employment policies throughout the United States.  It cultivates and promotes a common human resources strategy to recruit and maintain a young workforce.  Indeed, PwC conducted the "largest, most comprehensive global generational study ever conducted" into how to attract and keep "Millennials."  This study interviewed 1,000 Millennials and conducted 44,000 web-based surveys over 18 territories.

**ANSWER:**    Defendant denies the allegations of Paragraph 34, except Defendant states that the 2013 NextGen Study Summary and Compendium of Findings speaks for itself.  Defendant denies all allegations concerning the content of that publication that are not expressly stated therein.  Defendant also states that PwC's hiring decisions are spread out across PwC's 80+ offices in the United States, and there is not one individual or group who oversees and/or decides who is extended offers of employment.

35.    In a 2014 Harvard Business Review article, the U.S. Chairman of PwC trumpeted PwC's "strikingly young" workforce:  "Because we recruit approximately 8,000 graduates annually from college and university campuses, two-thirds of our people are in their twenties and early thirties.  We've always employed large numbers of young people."  According to its FY 2013 U.S. Corporate Responsibility Report, PwC hired approximately 3,200 Experienced hires and approximately 9,000 Campus hires.  According to a 2016 article in The Atlantic, today PwC recruits about 11,000 new hires on college campuses each year.

**ANSWER:**    Defendant denies the allegations of Paragraph 35, except Defendant states that the 2014 Harvard Business Review article, its FY 2013 U.S. Corporate Responsibility Report and the December 2015 article in The Atlantic speak for themselves.  Defendant denies all allegations concerning the content of those publications that are not expressly stated therein.

11

**Campus Recruitment Track**

36.    PwC offices throughout the country use common employment policies to deter and screen out applicants ages 40 and older.  The Campus track recruits applicants straight out of college.  PwC fills entry-level positions such as Junior Associate and Associate through Campus hiring, and has designated recruiters for different schools.  PwC also hires college students as interns (who may then be offered entry-level positions).

**ANSWER:**    Defendant denies the allegations of Paragraph 36, except Defendant admits that it posts Associate positions through campus recruiting and/or career centers, and recruits applicants from colleges.  Defendant also admits that it designates recruiters for schools, and that it hires college students as interns who may then be offered entry-level positions.

37.    Individuals not affiliated with a college campus cannot apply to entry-level positions at PwC.  Entry-level positions are rarely advertised to the general public.  Interested applicants can browse the handful of entry-level job postings that are sometimes listed on PwC's Campus track webpage under the "Featured Jobs" section.   However, applicants cannot submit an application for these "Featured Jobs" without going through the Campus recruiting tool.  Interested applicants may also browse the jobs posted on the Experienced track webpage, but entry-level accounting positions are generally not advertised there.  To apply for an entry-level accounting position, applicants must therefore conduct their job searches either through a designated school recruiter or through PwC's Campus webpage—a recruitment tool that, on its face, targets younger, college-aged applicants.  To submit their applications for entry-level positions through this webpage, applicants must list their college affiliation and college year (freshman, sophomore, junior, senior, or graduate student).  These fields are mandatory, precluding individuals who are no longer in school from submitting an application.

**ANSWER:**    Defendant denies the allegations of Paragraph 37.

**Experienced Track**

38.    PwC's second hiring channel, the Experienced hire track, posts open positions for Experienced and/or Senior Associates.  Although anyone may *apply* for positions in this track, PwC's unlawful bias against older workers, including its focus on attracting and retaining "Millennials" and its mandatory early retirement policy, systematically decreases older workers' chances of being hired.  Due

1  to this bias, PwC intentionally denies applicants ages 40 and older employment in the Covered Positions

2  because of their age.

3  **ANSWER:**   Defendant denies the allegations of Paragraph 38, except Defendant admits that it posts

4  open positions for Experienced Associates and/or Senior Associates on its website.

5  **Professional Support**

6      39.   According to its FY 2013 U.S. Corporate Responsibility Report, PwC uses a series of

7  programs that introduce college students to the accounting profession.  These programs provide college

8  students with opportunities to grow professionally while simultaneously getting to know the firm.  They

9  include PwC's "Personal Brand Experience," which offers an opportunity for individuals to focus on the

10  unique characteristics that can make them stand out from the crowd, and "Explore," which introduces

11  freshman and sophomore college students to the accounting profession while developing their

12  teamwork, strategic thinking, problem-solving, and leadership skills.

13  **ANSWER:**   Defendant denies the allegations of Paragraph 39, except Defendant states that its FY

14  2013 U.S. Corporate Responsibility Report speaks for itself.  Defendant denies all allegations

15  concerning the content of that publication that are not expressly stated therein.

16      40.   According to its FY 2013 U.S. Corporate Responsibility Report, PwC also assigns interns

17  an associate coach, a career coach, and a relationship partner.

18  **ANSWER:**   Defendant denies the allegations of Paragraph 40, except Defendant states that its FY

19  2013 U.S. Corporate Responsibility Report speaks for itself.  Defendant denies all allegations

20  concerning the content of that publication that are not expressly stated therein.

21      41.   PwC offers all employees coaching, mentorship, and training to provide career

22  advancement. PwC employees receive world-class learning opportunities through a system called

23  "Learning at PwC," where they have access to an in-depth catalogue of learning programs and

24  specialized courses.  This training program has been ranked number one for three years by Training

25  magazine in its "Training Top 125," which recognizes "the organizations with the most successful

26  learning and development programs in the world."  Because of the opportunities it provides employees,

27  PwC has repeatedly been named as one of the top three places to launch a career by BusinessWeek.

28

1    **ANSWER:**    Defendant denies the allegations of Paragraph 41, except Defendant admits that PwC

2    employees receive learning opportunities through a system called "Learning at PwC," where they have

3    access to an in-depth catalogue of learning programs and specialized courses.  Defendant admits that

4    PwC was ranked number one in Training magazine's list of the "Training Top 125" three years in a row.

5    Defendant admits that it was named as one of the top three "Best Places to Launch a Career" by

6    BusinessWeek in 2008 and 2009.

7          42.    By disproportionally hiring young applicants, PwC deprives class and collective

8    members of invaluable professional support that leads to future business and growth opportunities.

9    **ANSWER:**    Defendant denies the allegations of Paragraph 42.

10   **Employment Policies**

11         43.    PwC maintains a uniform employment policy of exclusively conducting hiring for entry-

12   level accounting positions, such as Junior Associate or Associate, through its Campus track hiring.  By

13   not advertising the overwhelming majority of entry-level accounting positions anywhere except on

14   college campuses and, sometimes, behind a log-in wall on its Campus webpage that only those affiliated

15   with a college can access, PwC makes it nearly impossible for non-students to apply for entry-level

16   accounting positions.  To submit an application for an entry-level position through PwC's Campus

17   webpage, applicants must list their college affiliation and college year (freshman, sophomore, junior,

18   senior, or graduate student).  Applicants ages 40 and over who are no longer affiliated with an

19   educational institution cannot answer these questions, and consequently, cannot submit their application.

20   As a result of this recruitment policy, PwC discriminates against prospective applicants ages 40 and

21   older.

22   **ANSWER:**    Defendant denies the allegations of Paragraph 43.

23         44.    In advertising its career opportunities, PwC almost exclusively uses pictures of young

24   people.  The "Campus" track webpage and the "Experienced" track webpage feature a young-looking

25   male and female.  On its website, PwC also advertises that in 2016, 80% of its workforce will be a

26   "Millennial," and touts its efforts to attract and keep these "Millennials" in a prominently posted report.

27   Earlier this year, PwC even rolled out a new perk targeted at "Millennials": student loan repayment

28   assistance.  On its "Diversity" webpage, PwC boasts of company initiatives and support systems for

1   many other groups, including minorities, women, parents, the LGBT community, disabled workers, and

2   veterans.  These initiatives include Minority Circles, Women's Networking Circles, Parenting Circles,

3   Professionals with Disabilities Network, Lesbian, Gay, Bisexual and Transgender Circles, an LGBT

4   Partner Advisory Board, a Disability Strategy Council, Connect (a mentoring program for disabled

5   employees), and Veteran's Network (a program that helps veterans obtain transition support and career

6   development opportunities).  In contrast, there is not a single initiative focused on the needs or interests

7   of older workers.  Similarly, information on the "Family" section of PwC's "Diversity" webpage is

8   focused on benefits that are primarily of interest to younger workers.  There is extensive information

9   about the company's generous, fully-paid parental leave policies for new parents, but very little about

10  benefits that older workers are more likely to take advantage of, such as time off to care for a sick parent

11  or spouse.  By using photos of young people, advertising its disproportionately young workforce,

12  announcing its desire to maintain that youthful workforce, designing benefits packages specifically for

13  younger workers, and largely ignoring the needs of older workers, PwC deters prospective applicants

14  ages 40 and older from applying.

15  **ANSWER:**   Defendant denies the allegations of Paragraph 44, except Defendant states that the 2013

16  NextGen Study Summary and Compendium of Findings speaks for itself.  Defendant denies all

17  allegations concerning the content of that publication that are not expressly stated therein.  Defendant

18  also admits that in 2015, it launched a new program to help reduce employee student loan burden.

19  Defendant admits that its diversity initiatives include Minority Circles, Women's Networking Circles,

20  Parenting Circles, Professionals with Disabilities Network, Lesbian, Gay, Bisexual and Transgender

21  (LGBT) Circles, an LGBT Partner Advisory Board, a Disability Strategy Council, "Connect," and

22  Veteran's Network.  Defendant states that, as confirmed on its website, its "diversity initiatives and

23  strategies are designed to attract, develop, and advance the most talented individuals regardless of their

24  race, sexual orientation, religion, age, gender, disability status or any other dimension of diversity."

25  Defendant further states that its benefits support all employees regardless of age; for example, PwC

26  provides unprescribed sick days to its employees that allows paid time off not just for an employee's

27  own illness, but also to care for a sick child, parent, spouse, or same-sex domestic partner.

28

45.     PwC also intentionally disfavors hiring people 40 years of age or older for the Covered Positions.  PwC is very proud of its inordinately young workforce.  In order to continue to attract and maintain "Millennials," PwC intentionally screens out individuals ages 40 and older who apply for the Covered Positions and denies them employment opportunities.

**ANSWER:**     Defendant denies the allegations of Paragraph 45.

46.     PwC also has a mandatory retirement age of 60 for Partners.  As a result, applicants ages 40 or over are less attractive to hiring personnel because their potential contributions to PwC appear limited when compared to those of similarly situated younger applicants.  Because of PwC's mandatory retirement policy, PwC's hiring personnel are disincentivized from hiring applicants 40 years of age or older.

**ANSWER:**     Defendant denies the allegations of Paragraph 46, except Defendant admits that PwC has an agreed retirement age for partners and principals that is, in most cases, at age 60.

47.     Together, PwC's uniform employment policies systematically exclude and deter applicants and prospective applicants ages 40 and older.

**ANSWER:**     Defendant denies the allegations of Paragraph 47.

48.     Notwithstanding this discrimination, PwC claims on its website that it is an equal opportunity employer.  In particular, on its career pages, PwC states in multiple places: "All qualified applicants will receive consideration for employment at PwC without regard to race; creed; color; religion; national origin; sex; age; disability; sexual orientation; gender identity or expression; genetic predisposition or carrier status; veteran, marital, or citizenship status; or any other status protected by law."

**ANSWER:**     Defendant denies the allegations of Paragraph 48, except that Defendant states that its website speaks for itself and denies all allegations concerning the content that are not expressly stated therein.

**PwC is a Gateway Employer in the Accounting Industry**

49.     Business opportunities in the accounting profession are determined, at least in part, by "Big 4" experience—meaning previous employment at PwC, Deloitte, KPMG, or Ernst & Young. Because having Big 4 experience is so critical to obtaining good jobs in the accounting profession, by

not posting entry-level job openings on its website and only accepting applications for these positions from college students, and by intentionally screening out applicants ages 40 and older for the Covered Positions, PwC deprives applicants and prospective applicants ages 40 and older from both current and future business opportunities.   Thus, age disparities in PwC's allocation of business opportunities perpetuate age discrimination in the accounting sector as a whole.

**ANSWER:**   Defendant denies the allegations of Paragraph 49.

**Conclusion**

50.   Accordingly, Plaintiffs bring this class and collective action on behalf of themselves, individually, and all similarly situated applicants and prospective applicants ages 40 and older in the United States. This action seeks to end PwC's discriminatory policies, patterns, and/or practices, and to make the class and collective whole by requesting the following remedies: injunctive relief to remedy systemic age discrimination; declaratory relief; an award of back pay and front pay; liquidated damages; compensatory and punitive damages; restitution; and attorneys' fees.

**ANSWER:**   Defendant denies the allegations of Paragraph 50, except Defendant admits that Plaintiffs purport to bring this action on behalf of themselves and alleged similarly situated applicants and prospective applicants 40 years of age or older in the United States.

## COLLECTIVE ACTION ALLEGATIONS

51.   Plaintiffs bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) seeking liability-phase injunctive and declaratory relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States, who were denied employment at PwC or deterred from applying for employment at PwC, at any time from October 18, 2013 through the resolution of this action for claims under the ADEA.  Plaintiffs also bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) for monetary damages and other make-whole relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States, who were denied employment at PwC or deterred from applying for employment at PwC, at any time from October 18, 2013 through the resolution of this action for claims under the ADEA.

**ANSWER:** Defendant denies the allegations of Paragraph 51, except Defendant admits that Plaintiffs purport to bring a collective pursuant to 29 U.S.C. §§ 216(b), 626(b) on behalf of a collective of applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States at any time from October 18, 2013 through the resolution of this action for claims under the ADEA. Defendant admits that Plaintiffs seek monetary damages.

52. Plaintiffs and other potential members of the collective are similarly situated in that they have all sought and been denied or were deterred from applying for the Covered Positions at PwC by policies and practices that have the purpose and effect of denying them employment opportunities because of their age.

**ANSWER:** Defendant denies the allegations of Paragraph 52.

53. There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

**ANSWER:** Defendant denies the allegations of Paragraph 53.

54. As part of its regular business practice, PwC has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiff and the collective. This policy and pattern or practice includes, but is not limited to:

    a) willfully utilizing a biased recruiting system for entry-level accounting hiring that excludes, deters, and discriminates against workers ages 40 and over; and

    b) willfully implementing a mandatory early retirement policy that deters and discriminates against applicants ages 40 and over for the Covered Positions;

    c) willfully refusing to hire applicants ages 40 and over for the Covered Positions.

**ANSWER:** Defendant denies the allegations of Paragraph 54.

55. PwC maintained and implemented these policies and practices with the purpose and effect of denying Plaintiff and other members of the collective employment opportunities because of their age. These policies cannot be justified on the basis of reasonable factors other than age.

**ANSWER:** Defendant denies the allegations of Paragraph 55.

56.     PwC is aware or should have been aware that federal law requires it to conduct recruitment and hiring for the Covered Positions without regard to an applicant's age.

**ANSWER:**     Defendant denies the allegations of Paragraph 56, except Defendant states that it has complied with its obligations under all applicable laws with respect to recruitment and hiring for the positions at issue here, and further states that to the extent Paragraph 56 calls for a legal conclusion, no answer is required.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff Rabin also brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in California at any time (1) from August 14, 2013 through the resolution of this action for claims under FEHA and (2) from four years prior to the filing of this complaint through the resolution of this action for claims under the UCL.  Rabin also brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for monetary damages and other make-whole relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in California at any time (1) from August 14, 2013 through the resolution of this action for claims under FEHA and (2) from four years prior to the filing of this complaint through the resolution of this action for claims under the UCL.  Rabin reserves the right to amend the definition of the class based on discovery or legal developments.

**ANSWER:**     Defendant denies the allegations of Paragraph 57, except Defendant admits that Plaintiff Rabin purports to bring a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) on behalf of a class of all applicants and deterred prospective applicants ages 40 and older for the Covered Positions in California at any time from August 14, 2013 through the resolution of this action for claims under the FEHA and from four years prior to the filing of this Amended Complaint through the resolution of this action for claims under the UCL.  Defendant admits that Plaintiff Rabin seeks monetary damages.

58.     Plaintiff Chapman also brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a

class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in Michigan at any time from three years before the filing of this complaint through the resolution of this action for claims under the MCRA.  Chapman also brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for monetary damages and other make-whole relief on behalf of a class of all denied applicants and deterred prospective applicants ages 40 and older for the Covered Positions in Michigan at any time from three years before the filing of this complaint through the resolution of this action for claims under the MCRA.  Chapman reserves the right to amend the definition of the class based on discovery or legal developments.

**ANSWER:**   Defendant denies the allegations of Paragraph 58, except Defendant admits that Plaintiff Chapman purports to bring a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) on behalf of a class of all applicants and deterred prospective applicants ages 40 and older for the Covered Positions in Michigan at any time from three years before the filing of this Amended Complaint through the resolution of this action for claims under the MCRA.  Defendant admits that Plaintiff Chapman seeks monetary damages.

59.   Plaintiffs are members of the classes they seek to represent.

**ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 59.

60.   The members of the classes identified herein are so numerous that joinder of all members is impracticable.   As of June 2015, PwC employs over 208,000 employees worldwide and approximately 53,000 in the North American region.  Although Plaintiffs do not know the precise number of all applicants and deterred prospective applicants ages 40 and older of PwC, the number is far greater than can be feasibly addressed through joinder.

**ANSWER:**   Defendant denies the allegations of Paragraph 60.

61.   There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

        a)   whether PwC's policies or practices exclude prospective applicants ages 40 and over from applying to the Covered Positions;

        b)   whether PwC's policies or practices deter prospective applicants ages 40 and over from applying to the Covered Positions;

c)      whether PwC's policies or practices discriminate against applicants and deterred prospective applicants ages 40 and older;

d)      whether PwC intentionally disfavors applicants ages 40 and older;

e)      whether PwC's policies and practices violate FEHA;

f)      whether PwC's policies and practices violate the MCRA;

g)      whether PwC's challenged policies or practices are necessary to its business operations;

h)      whether age is a bona fide occupational qualification; and

i)      whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the class are warranted.

**ANSWER:**      Defendant denies the allegations of Paragraph 61.

62.      The Representative Plaintiffs' claims are typical of the claims of the classes.

**ANSWER:**      Defendant denies the allegations of Paragraph 62.

63.      The Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the classes.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

**ANSWER:**      Defendant lacks sufficient information to admit or deny the allegations of Paragraph 63.

64.      Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because PwC has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the class as a whole.  The class members are entitled to injunctive relief to end PwC's common, uniform, unfair, and discriminatory policies and practices.

**ANSWER:**      Defendant denies the allegations of Paragraph 64.

65.      Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of PwC's common, uniform, unfair, and discriminatory policies and practices.

The propriety and amount of punitive damages are based on PwC's conduct, making these issues common to the class.

**ANSWER:**   Defendant denies the allegations of Paragraph 65.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

**Steve Rabin**

66.    Plaintiff Steve Rabin is a 53-year-old Certified Public Accountant with over ten years of accounting experience.  Notwithstanding his experience, Rabin is willing to take even an entry-level job at PwC because having Big 4 experience is so critical to obtaining good jobs in the accounting profession.

**ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 66.

67.    However, because PwC generally does not post entry-level accounting jobs on its website and only accepts applications for these positions from college students, Rabin was not able to apply for an entry-level accounting position.

**ANSWER:**   Defendant denies the allegations of Paragraph 67.

68.    In October 2013, Rabin applied for a position of Seasonal Experienced Associate, generally one of the lower-level positions on an audit team, in the San Jose, California office of PwC.

**ANSWER:**   Defendant denies the allegations of Paragraph 68, except Defendant admits that in or around October 2013, after a PwC recruiter reached out to Plaintiff Rabin and suggested he submit an application, Plaintiff Rabin submitted an application for a Seasonal Experienced Associate Auditor position, a junior position, for the San Jose, California office of PwC.

69.    On or around October 22, 2013, PwC interviewed him.  The interview process consisted of an in-person meeting and a meeting via conference call.  During the course of the interview, the interviewer, a Senior Assurance Manager (approximate age 35) asked Plaintiff, "The people in the cubicles are much younger than you.  How would you fit in?  Would you be able to work for a younger manager or director?"  Rabin responded that he had worked for a younger manager in the past, found it to be beneficial, and that he enjoyed the experience.

1   **ANSWER:**     Defendant denies the allegations of Paragraph 69, except Defendant admits that on or

2   around October 22, 2013, PwC interviewed Plaintiff Rabin, and states that the interview process

3   consisted of a screening interview and two subsequent interviews with Senior Managers.

4          70.     Even though Rabin was qualified for the position in all respects, he was told he was not

5   selected for the position in late October 2013.

6   **ANSWER:**     Defendant denies the allegations of Paragraph 70, except Defendant admits that Plaintiff

7   Rabin was told he was not selected for the position in late October 2013.

8          71.     Instead, on information and belief, PwC hired a substantially younger individual who was

9   not more qualified than Rabin to fill the position.

10  **ANSWER:**     Defendant denies the allegations of Paragraph 71.

11         72.     On or about December 2013, Rabin filed a charge of age discrimination with the EEOC.

12  **ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 72,

13  except Defendant states that the EEOC notified it of Charge No. 556-2014-00151 purportedly filed by

14  Plaintiff Rabin in or around December 2013.

15         73.     On or about August 14, 2014, he filed an amended charge of discrimination with the

16  EEOC specifically alleging classwide claims on behalf of all similarly situated individuals age 40 or

17  older who were either deterred from applying or denied employment by PwC because of their age.

18  **ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 73,

19  except Defendant states that the EEOC notified it of an Amendment to Charge No. 556-2014-00151

20  purportedly filed by Plaintiff Rabin in or around August 2014.

21         74.     This charge and amendment are considered dually filed with the DFEH pursuant to the

22  EEOC's work-share agreement with the DFEH.  The DFEH issued a Notice of Right to Sue on

23  December 17, 2013.

24  **ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 74.

25  **John Chapman**

26         75.     John Chapman, who is 47 years old, earned a Master's Degree in accounting in 2014 and

27  has been earning credit towards his doctorate since then.  He has approximately ten years of

28  bookkeeping experience and some experience teaching accounting classes.

1    **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 75.

2         76.    Chapman was interested in both entry-level and experienced associate positions at PwC

3 because he is interested in PwC's tax practice, he wants experience to qualify as a Certified Public

4 Accountant, and Big 4 experience is essential for securing a job in the accounting profession.

5    **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 76.

6         77.    Chapman applied to the following entry-level positions with PwC between December

7 2014 and April 2016: Transfer Pricing Associate positions in Virginia and Tax Core Associate positions

8 in Texas. Although he was qualified for these positions, PwC did not select him. PwC did not provide a

9 reason for rejecting his applications.

10    **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 77,

11 except Defendant admits that in or around November 2014, Plaintiff Chapman submitted an application

12 to PwC for a Tax Associate position in the North Texas area, and in or around March 2016, Plaintiff

13 Chapman submitted an application to PwC for a Transfer Pricing Experienced Associate position in the

14 Washington metro area. PwC admits that it did not select Plaintiff Chapman for either position.

15 Defendant denies the remaining allegations in Paragraph 77.

16         78.    On or around March 8, 2016, Chapman applied for an Audit/Assurance Experienced

17 Associate position with PwC in Denver, Colorado and a Transfer Pricing Experienced Associate

18 position in Houston, Texas. Although he was qualified for these positions, PwC did not select him. PwC

19 did not provide a reason for rejecting his application.

20    **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 78,

21 except Defendant admits that in or around March 2016, Plaintiff Chapman submitted an application to

22 PwC for an Audit/Assurance Experienced Associate position in Denver, Colorado and a Transfer Pricing

23 Experienced Associate position in the greater Houston area. Defendant admits that it did not select

24 Plaintiff Chapman for either position. Defendant denies the remaining allegations in Paragraph 78.

25         79.    On or around April 17, 2016, Chapman applied for Tax Transfer Pricing Associate

26 Summer/Fall 2016 position with PwC in Detroit, Michigan. PwC did not select him for this position,

27 but did not give him a reason for his rejection. Although he was qualified for this position, PwC did not

28 select him. PwC did not provide a reason for rejecting his application.

1   **ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 79,

2   except Defendant admits that on or around April 2016, Plaintiff Chapman submitted an application to

3   PwC for a Tax Transfer Pricing Associate position in Detroit, Michigan.   Defendant admits that it did

4   not select Plaintiff Chapman for this position.   Defendant denies the remaining allegations in

5   Paragraph 79.

6   80.   During one of his in-person interviews, a senior manager expressed concern about

7   whether Chapman would have a problem reporting to and working with people younger than himself.

8   Chapman said that this was not a problem for him.   Chapman later indirectly heard feedback from a

9   current PwC staff person knowledgeable about the market for entry-level accountants, who reacted to

10  his efforts to obtain an accounting job with PwC with the comment that "I would question whether the

11  pace of public accounting will be up this guy's alley" and suggested seeking work abroad, noting, for

12  example, that a firm with a slower pace of work could be more suitable for someone with Chapman's

13  background.

14  **ANSWER:**   Defendant denies the allegations of Paragraph 80, except Defendant lacks information to

15  admit or deny what is meant by and whether Plaintiff "Chapman later indirectly heard feedback from a

16  current PwC staff person knowledgeable about the market for entry-level accountants."

17  81.   On or about July 13, 2016, Chapman filed a charge of discrimination with the EEOC

18  alleging classwide claims on behalf of all similarly situated individuals age 40 or older who were either

19  deterred from applying or denied employment by PwC because of their age.   This charge and

20  amendment are considered dually filed with the MCRA pursuant to the EEOC's work-sharing

21  agreement with the MDCR.

22  **ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 81,

23  except Defendant states that the EEOC notified it of Charge No. 471-2016-03129 purportedly submitted

24  by Plaintiff Chapman on or around July 13, 2016.

25

26

27

28

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
#### Intentional Discrimination
#### (Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1))
#### (On Behalf of Plaintiff and the Collective)

82.     Plaintiffs incorporate the preceding paragraphs as alleged above.

**ANSWER:**     Defendant incorporates its answers as stated above.

83.     This Claim is brought by Representative Plaintiffs on behalf of themselves and the collective they represent.  Plaintiffs have exhausted their administrative remedies.  Sixty days have passed since Rabin has filed charges with the EEOC.

**ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 83, except Defendant admits that sixty days have passed since the EEOC first notified it of Charge No. 556-2014-00151 purportedly filed by Plaintiff Rabin.

84.     PwC engages in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older.  PwC has intentionally discriminated against Plaintiffs and the collective in violation of the ADEA by, among other things:

a)     Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;

b)     Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;

c)     Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;

d)     Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;

e)     Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and

f)     Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

**ANSWER:**     Defendant denies the allegations of Paragraph 84.

85.     These companywide policies are intended to and do have the effect of denying Plaintiffs and the collective employment opportunities because of their ages.  The discriminatory acts that constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

**ANSWER:**     Defendant denies the allegations of Paragraph 85.

86.     Age is not a bona fide occupational qualification for the Covered Positions.

**ANSWER:**     Defendant states that Paragraph 86 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 86.

87.     As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**ANSWER:**     Defendant denies the allegations of Paragraph 87.

88.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1).

**ANSWER:**     Defendant denies the allegations of Paragraph 88.

89.     Plaintiffs request relief as hereinafter described.

**ANSWER:**     Defendant denies the allegations of Paragraph 89, except Defendant admits that Plaintiffs purport to request relief described herein.

## SECOND CLAIM FOR RELIEF

### Disparate Impact Discrimination
### (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(2))
### (On Behalf of Plaintiff and the Collective)

90.     Plaintiff incorporates the preceding paragraphs as alleged above.

**ANSWER:**     Defendant incorporates its answers as stated above.

91.     This Claim is brought by Representative Plaintiffs on behalf of themselves and the collective they represent.  Plaintiffs have exhausted their administrative remedies.  Sixty days have passed since Rabin has filed charges with the EEOC.

1   **ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 91,

2   except Defendant admits that sixty days have passed since the EEOC first notified it of Charge No. 556-

3   2014-00151 purportedly filed by Plaintiff Rabin.

4          92.   PwC maintains discriminatory policies, patterns, and/or practices that have an adverse

5   impact on applicants and prospective applicants ages 40 and older in violation of the ADEA and are not,

6   and cannot be, justified by reasonable factors other than age, including but not limited to the following:

7   its near-exclusive reliance on "Campus" track hiring to fill entry-level accounting positions, its

8   requirement that applicants for entry-level positions be currently affiliated with a college or university,

9   its failure to advertise the vast majority of open entry-level positions to the general public, its preference

10  for hiring and retaining "Millennials," and its mandatory early retirement policy.

11  **ANSWER:**   Defendant denies the allegations of Paragraph 92.

12         93.   PwC has maintained these discriminatory policies, patterns, and/or practices both within

13  and outside the liability period in this case.

14  **ANSWER:**   Defendant denies the allegations of Paragraph 93.

15         94.   As a direct result of PwC's discriminatory policies and/or practices as described above,

16  Plaintiff and the collective have suffered damages including, but not limited to, lost past and future

17  income, compensation, and benefits.

18  **ANSWER:**   Defendant denies the allegations of Paragraph 94.

19         95.   The foregoing policies, patterns, and/or practices have an unlawful disparate impact on

20  applicants and prospective applicants ages 40 and older in violation of 29 U.S.C. § 623(a)(2).

21  **ANSWER:**   Defendant denies the allegations of Paragraph 95.

22         96.   Plaintiffs request relief as hereinafter described.

23  **ANSWER:**   Defendant denies the allegations of Paragraph 96, except Defendant admits that Plaintiffs

24  purport to seek the relief described herein.

25                              **THIRD CLAIM FOR RELIEF**

26                              **Intentional Discrimination**
    **(California Fair Employment and Housing Act, Cal. Gov't Code § 12940(a))**
27                  **(On Behalf of Plaintiff Rabin and the Class)**

28         97.   Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

1    **ANSWER:**    Defendant incorporates its answers as stated above.

2        98.    This Claim is brought by Representative Plaintiff Rabin on behalf of himself and the

3    class he represents.  Plaintiff Rabin has timely filed charges with the DFEH and has thus exhausted his

4    administrative remedies.

5    **ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations of Paragraph 98,

6    except Defendant admits that Plaintiff Rabin purports to bring his claim on behalf of himself and the

7    class he purports to represent.

8        99.    PwC engages in an intentional, companywide, and systematic policy, pattern, and/or

9    practice of discrimination against applicants and prospective applicants ages 40 and older.  PwC has

10    intentionally discriminated against Rabin and the class in violation of FEHA by, among other things:

11
12    a)    Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;

13    b)    Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;

14
15    c)    Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;

16
17    d)    Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;

18
19    e)    Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and

20
21    f)    Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

22    **ANSWER:**    Defendant denies the allegations of Paragraph 99.

23        100.    These companywide policies are intended to and do have the effect of denying Plaintiff

24    and class members employment opportunities because of their age.   The discriminatory acts that

25    constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the

26    liability period in this case.

27    **ANSWER:**    Defendant denies the allegations of Paragraph 100.

28

101.    PwC has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California, and the discriminatory policies, patterns, and/or practices have had a discriminatory impact on applicants and prospective applicants ages 40 and older within the state of California.

**ANSWER:**    Defendant denies the allegations of Paragraph 101.

102.    Age is not a bona fide occupational qualification for the Covered Positions.

**ANSWER:**    Defendant states that Paragraph 102 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 102.

103.    As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**ANSWER:**    Defendant denies the allegations of Paragraph 103.

104.    The foregoing conduct constitutes illegal, intentional discrimination prohibited by California Government Code section 12940(a).

**ANSWER:**    Defendant denies the allegations of Paragraph 104.

105.    Rabin requests relief as hereinafter described.

**ANSWER:**    Defendant denies the allegations of Paragraph 105, except Defendant admits that Plaintiff Rabin purports to seek the relief described herein.

### FOURTH CLAIM FOR RELIEF

**Disparate Impact Discrimination**
**(California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940(a), 12491)**
**(On Behalf of Plaintiff Rabin and the Class)**

106.    Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

**ANSWER:**    Defendant incorporates its answers as stated above.

107.    This Claim is brought by Representative Plaintiff Rabin on behalf of himself and the class he represents.  Rabin has timely filed charges with the DFEH and has thus exhausted his administrative remedies.

1    **ANSWER:**     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 107,

2    except Defendant admits that Plaintiff Rabin purports to bring his claim on behalf of himself and the

3    class he purports to represent.

4            108.    PwC maintains discriminatory policies, patterns, and/or practices that have an adverse

5    impact on applicants and prospective applicants ages 40 and older in violation of FEHA and are not, and

6    cannot be, justified by a business necessity, including but not limited to the following: its near-exclusive

7    reliance on "Campus" track hiring to fill entry-level accounting positions, its requirement that applicants

8    for entry-level positions be currently affiliated with a college or university, its failure to advertise the

9    vast majority of open entry-level positions to the general public, its preference for hiring and retaining

10   "Millennials," and its mandatory early retirement policy.  Even if such systems and/or policies could be

11   justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged

12   necessity.

13   **ANSWER:**     Defendant denies the allegations of Paragraph 108.

14           109.    PwC has maintained these discriminatory policies, patterns, and/or practices within and

15   outside the liability period in this case.

16   **ANSWER:**     Defendant denies the allegations of Paragraph 109.

17           110.    As a direct result of PwC's discriminatory policies and/or practices as described above,

18   Plaintiff and the class have suffered damages including, but not limited to, lost past and future income,

19   compensation, and benefits.

20   **ANSWER:**     Defendant denies the allegations of Paragraph 110.

21           111.    The foregoing policies, patterns, and/or practices have an unlawful disparate impact on

22   applicants and prospective applicants ages 40 and older in violation of California Government Code

23   sections 12940(a), 12941.

24   **ANSWER:**     Defendant denies the allegations of Paragraph 111.

25           112.    Plaintiff requests relief as hereinafter described.

26   **ANSWER:**     Defendant denies the allegations of Paragraph 112, except Defendant admits that Plaintiff

27   Rabin purports to seek the relief described herein.

28

**FIFTH CLAIM FOR RELIEF**

**Unfair Competition**
**(California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff Rabin and the Class)**

113.    Plaintiff Rabin incorporates the preceding paragraphs as alleged above.

**ANSWER:**    Defendant incorporates its answers as stated above.

114.    The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, which prohibits, *inter alia*, unfair competition in the form of any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

**ANSWER:**    Defendant denies the allegations of Paragraph 114.

115.    PwC committed, and continues to commit, unlawful and unfair business practices, including (1) engaging in an intentional, companywide, and systemic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older in violation of FEHA and the ADEA, and (2) maintaining discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of FEHA and the ADEA. Each of these violations constitutes an independent and separate violation of the UCL.  PwC also committed fraudulent business practices by claiming that it does not discriminate in hiring against any protected groups, yet maintaining policies and practices that have the intent and impact of discriminating against applicants ages 40 and older.

**ANSWER:**    Defendant denies the allegations of Paragraph 115.

116.    Plaintiff Rabin and Class Members have suffered injury in fact as a result of PwC's unlawful, unfair, and fraudulent business policies and practices.

**ANSWER:**    Defendant denies the allegations of Paragraph 116.

117.    PwC's conduct alleged herein occurred during the four years preceding the filing of this complaint.

**ANSWER:**    Defendant denies the allegations of Paragraph 117.

118.    PwC's unfairly obtained benefits and profits as a direct and proximate result of its unlawful conduct alleged herein and has an unfair competitive advantage over employers who comply with FEHA and the ADEA because older workers are typically compensated more than their younger

colleagues.   Plaintiff and Class Members are therefore entitled to disgorgement by PwC of those unlawfully obtained profits.

**ANSWER:**   Defendant denies the allegations of Paragraph 118.

119.   Rabin and Class Members are entitled to appropriate restitution, injunctive relief, attorneys' fees, and declaratory relief stating that PwC's hiring policies and practices systematically and intentionally discriminate against applicants and prospective applicants ages 40 and older and result in the disproportionate employment of younger applicants.

**ANSWER:**   Defendant denies the allegations of Paragraph 119.

### SIXTH CLAIM FOR RELIEF

**Intentional Discrimination**
**(Michigan Civil Rights Act, Mich. Comp. Laws § 37.2202(a) )**
**(On Behalf of Plaintiff Chapman and the Class)**

120.   Plaintiff Chapman incorporates the preceding paragraphs as alleged above.

**ANSWER:**   Defendant incorporates its answers as stated above.

121.   This Claim is brought by Representative Plaintiff Chapman on behalf of himself and the class he represents.  No administrative remedies must be exhausted prerequisite to this claim.

**ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 121, except Defendant admits that Plaintiff Chapman purports to bring his claim on behalf of himself and the class he purports to represent.

122.   PwC engages in an intentional, companywide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older.  PwC has intentionally discriminated against Chapman and the class in violation of the MCRA by, among other things:

      a)    Utilizing a biased recruitment system that deters prospective applicants ages 40 and older from applying for the Covered Positions;

      b)    Utilizing a biased recruitment system that excludes prospective applicants ages 40 and older from applying for the Covered Positions;

      c)    Utilizing a biased recruitment system that discriminates against prospective applicants ages 40 and older;

1
2

      d)      Implementing a mandatory early retirement policy that deters applicants ages 40 and over from applying to the Covered Positions;

3
4

      e)      Implementing a mandatory early retirement policy that causes PwC to discriminate against applicants ages 40 and over who apply to the Covered Positions; and

5
6

      f)      Systematically and intentionally discriminating against applicants ages 40 and older throughout the hiring process.

7

**ANSWER:**    Defendant denies the allegations of Paragraph 122.

8
9
10
11

123.    These companywide policies are intended to and do have the effect of denying Plaintiff and class members employment opportunities because of their age.  The discriminatory acts that constitute PwC's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

**ANSWER:**    Defendant denies the allegations of Paragraph 123.

12
13
14
15
16

124.    PwC has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the state of California, and the discriminatory policies, patterns, and/or practices have had a discriminatory impact on applicants and prospective applicants ages 40 and older within the state of California.

**ANSWER:**    Defendant denies the allegations of Paragraph 124.

17
18

125.    Age is not a bona fide occupational qualification for the Covered Positions.

**ANSWER:**    Defendant states that Paragraph 125 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 125.

19
20
21
22

126.    As a direct result of PwC's discriminatory policies and/or practices as described above, Plaintiff and the class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**ANSWER:**    Defendant denies the allegations of Paragraph 126.

23
24
25

127.    The foregoing conduct constitutes illegal, intentional discrimination prohibited by Mich. Comp. Laws § 37.2202(a).

**ANSWER:**    Defendant denies the allegations of Paragraph 127.

26
27

128.    Chapman requests relief as hereinafter described.

28

1  **ANSWER:**   Defendant denies the allegations of Paragraph 128, except Defendant admits that Plaintiff

2  Chapman purports to seek the relief described herein.

3  **SEVENTH CLAIM FOR RELIEF**

4  **Disparate Impact Discrimination**
   **(Michigan Civil Rights Act, Mich. Comp. Laws § 37.2202(b))**
5  **(On Behalf of Plaintiff Rabin and the Class)**

6  129.   Plaintiff Chapman incorporates the preceding paragraphs as alleged above.

7  **ANSWER:**   Defendant incorporates its answers as stated above.

8  130.   This Claim is brought by Representative Plaintiff Chapman on behalf of himself and the

9  class he represents.  No administrative remedies must be exhausted prerequisite to this claim.

10  **ANSWER:**   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 130,

11  except Defendant admits that Plaintiff Chapman purports to bring his claim on behalf of himself and the

12  class he purports to represent.

13  131.   PwC maintains discriminatory policies, patterns, and/or practices that have an adverse

14  impact on applicants and prospective applicants ages 40 and older in violation of the MCRA and are not,

15  and cannot be, justified by a business necessity, including but not limited to the following: its near-

16  exclusive reliance on "Campus" track hiring to fill entry-level accounting positions, its requirement that

17  applicants for entry-level positions be currently affiliated with a college or university, its failure to

18  advertise the vast majority of open entry-level positions to the general public, its preference for hiring

19  and retaining "Millennials," and its mandatory early retirement policy.  Even if such systems and/or

20  policies could be justified by business necessity, less discriminatory alternatives exist and would equally

21  serve any alleged necessity.

22  **ANSWER:**   Defendant denies the allegations of Paragraph 131.

23  132.   PwC has maintained these discriminatory policies, patterns, and/or practices within and

24  outside the liability period in this case.

25  **ANSWER:**   Defendant denies the allegations of Paragraph 132.

26  133.   As a direct result of PwC's discriminatory policies and/or practices as described above,

27  Plaintiff and the class have suffered damages including, but not limited to, lost past and future income,

28  compensation, and benefits.

1   **ANSWER:**      Defendant denies the allegations of Paragraph 133.

2          134.      The foregoing policies, patterns, and/or practices have an unlawful disparate impact on

3   applicants and prospective applicants ages 40 and older in violation of Mich. Comp. Law 37.2202(b).

4   **ANSWER:**      Defendant denies the allegations of Paragraph 134.

5          135.      Chapman requests relief as hereinafter described.

6   **ANSWER:**      Defendant denies the allegations of Paragraph 135, except Defendant admits that Plaintiff

7   Chapman purports to seek the relief described herein.

8                           **ALLEGATIONS REGARDING RELIEF**

9          136.      Plaintiffs and the classes and collective members they seek to represent have no plain,

10  adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they

11  seek in this action is the only means of securing complete and adequate relief.  Plaintiffs and the class

12  and collective members they seek to represent are now suffering, and will continue to suffer, irreparable

13  injury from PwC's discriminatory acts and omissions.

14  **ANSWER:**      Defendant denies the allegations of Paragraph 136.

15         137.      PwC's actions have caused and continue to cause Plaintiffs and class and collective

16  members substantial losses in employment opportunities, earnings, and other employment benefits.

17  **ANSWER:**      Defendant denies the allegations of Paragraph 137.

18         138.      In addition, Plaintiffs and class and collective members suffered and continue to suffer

19  emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according

20  to proof.

21  **ANSWER:**      Defendant denies the allegations of Paragraph 138.

22         139.      PwC performed the acts herein alleged with malice, oppression, or fraud.  Plaintiffs and

23  class members are thus entitled to recover punitive damages in an amount according to proof.

24  **ANSWER:**      Defendant denies the allegations of Paragraph 139.

25                              **PRAYER FOR RELIEF**

26         140.      WHEREFORE, Plaintiffs and the class and collective pray for relief as follows:

27              a)       Certification of the case as a class action on behalf of the proposed classes;

28

b)    Designation of each Representative Plaintiff as a class representative for his or her respective state claims;

c)    Designation of Representative Plaintiffs' counsel of record as class counsel;

d)    A declaratory judgment that the practices complained of herein are unlawful and violate 29 U.S.C. §§ 621, *et seq.*; California Government Code sections 12940, *et seq.*; California Business & Professions Code sections 17200, *et seq*; and Michigan Comp. Laws § 37.2101, *et seq;*

e)    A preliminary and permanent injunction against PwC and its Partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their age;

f)    An order that PwC institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of age, and that it eradicate the effects of their past and present unlawful employment practices;

g)    An order appointing a monitor to ensure that PwC complies with the injunction provisions of any decree that the Court orders;

h)    An order retaining jurisdiction over this action to ensure that PwC complies with such a decree;

i)    An order for front pay benefits to Plaintiff and class and collective members;

j)    Back pay (including interest and benefits) for Plaintiff and class and collective members;

k)    All damages sustained as a result of PwC's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

l)    Liquidated damages;

m)    An award of restitution to Plaintiff and class and collective members that reflects PwC's unlawfully obtained profits;

n)    Exemplary and punitive damages in an amount commensurate with PwC's ability to pay and to deter future conduct;

o)    Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

p)    Pre-judgment and post-judgment interest, as provided by law; and

q)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**ANSWER:**    Defendant denies that Plaintiffs are entitled to the relief sought in Paragraph 140.

## JURY DEMAND

141.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 626(c)(2), Plaintiff demands a trial by jury in this action.

**ANSWER:**    Defendant states that Paragraph 141 calls for a legal conclusion to which no answer is required.  Except as expressly admitted, Defendant denies the allegations of Paragraph 141.

## AFFIRMATIVE DEFENSES

Defendant asserts the following defenses on information and belief in response to the allegations contained in Plaintiffs' Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses below, Defendant specifically reserves the right to allege additional defenses that become known through additional investigation and discovery.

### First Affirmative Defense
### Failure to State a Cause of Action

The Amended Complaint and each purported cause of action alleged therein fails to state facts sufficient to constitute a cause of action upon which relief can be granted against PwC.

### Second Affirmative Defense
### Reasonable Factors Other Than Age

PwC's actions were motivated by reasonable factors other than age.

### Third Affirmative Defense
### Failure to Mitigate

If Plaintiffs had incurred any damages (which PwC denies), Plaintiffs failed to reasonably mitigate those purported damages, and are therefore barred, in whole or in part, from recovering any relief on the Amended Complaint or any purported cause of action alleged therein.

### Fourth Affirmative Defense
### Mixed Motive

If a trier of fact were to find that PwC's actions were motivated by both nondiscriminatory and discriminatory reasons (PwC denies the latter), the nondiscriminatory reasons alone would have

motivated PwC to make the same decision. Furthermore, if a trier of fact were to find that PwC's actions were motivated by both nondiscriminatory and discriminatory reasons (PwC denies the latter), the allegedly discriminatory reasons would not be a substantial motivating factor in PwC's decision.

### Fifth Affirmative Defense
### Judicial Estoppel

The Amended Complaint, each purported cause of action alleged therein (each of which PwC denies), and the elements of relief sought therein are barred, in whole or in part, by judicial estoppel.

### Sixth Affirmative Defense
### After Acquired Evidence

Plaintiffs' claims for damages are, or may be, barred or reduced by application of the after-acquired evidence doctrine.

### Seventh Affirmative Defense
### Failure to Exhaust Administrative Remedies

Plaintiffs' claims are barred to the extent that they were not alleged or encompassed within the administrative charges filed by Plaintiffs, or the administrative investigations thereof.

### Eighth Affirmative Defense
### Punitive Damages Unavailable

Plaintiffs' ADEA-based claims, MCRA-based claims, and UCL-based claims for punitive damages must be dismissed because punitive damages are not available under those statutes.

### Ninth Affirmative Defense
### Compensatory and Emotional Distress Damages Unavailable

Plaintiffs' ADEA-based claims for compensatory and emotional distress damages and UCL-based claims for emotional distress damages must be dismissed because such damages are not available under those statutes.

### Tenth Affirmative Defense
### Absence of Willful Discrimination Precludes Liquidated Damages

Plaintiffs are not entitled to liquidated damages under the ADEA because the Defendant at no time engaged in willful discriminatory conduct within the meaning of that statute, and at no time engaged in any discriminatory practice or conduct with malice or reckless indifference to Plaintiffs' rights.

### Eleventh Affirmative Defense
### Absence of Malice, Reckless Indifference or Fraud Precludes Punitive Damages

Plaintiffs are not entitled to punitive damages under FEHA because at no time did Defendant or any of its employees engage in any acts of oppression, fraud, or malice, or act with reckless indifference to Plaintiffs' rights.

### Twelfth Affirmative Defense
### Business Necessity

Any practice or policies challenged by Plaintiffs are job-related and consistent with business necessity.

### Thirteenth Affirmative Defense
### Attorneys' Fees Unavailable

Plaintiffs' UCL-based claims for attorneys' fees must be dismissed because attorneys' fees are not available under that statute.

### Fourteenth Affirmative Defense
### Non-Restitutionary Disgorgement Damages Unavailable

Plaintiffs' UCL-based claims for non-restitutionary disgorgement damages must be dismissed because such damages are not available under that statute.

### Fifteenth Affirmative Defense
### UCL Claims Unavailable

Plaintiffs' UCL claims fail to the extent the Court finds Plaintiffs' FEHA and/or ADEA claims fail.

### Other Affirmative Defenses

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant intends to rely upon such other defenses as may become available or apparent as the case progresses and reserves the right to amend this Answer to assert such defenses.


DATED:   September 30, 2016

Respectfully submitted,
KIRKLAND & ELLIS LLP


*/s/ Emily Nicklin*
Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: michael.esser@kirkland.com

Emily Nicklin (pro hac vice)
Gabor Balassa (pro hac vice)
Christina Briesacher (pro hac vice)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: emily.nicklin@kirkland.com
          gabor.balassa@kirkland.com
          christina.briesacher@kirkland.com

Attorneys for Defendant
PricewaterhouseCoopers LLP

1
2

**<u>CERTIFICATE OF SERVICE</u>**

3

 On September 30, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.

4
5

*/s/ Emily Nicklin*_____

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28