UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RABIN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>　　　　　Defendant. | Case No. 16-cv-02276-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: ECF No. 55 |

Before the Court is Defendant PricewaterhouseCooper LLP's ("PwC" or "Defendant") Motion for Judgment on the Pleadings. ECF No. 55. Defendant seeks judgment as a matter of law on Plaintiff Steve Rabin and John Chapman's ("Plaintiffs") second cause of action—a disparate impact claim under the Age Discrimination in Employment Act ("ADEA"). For the reasons set forth below, the Court will deny the motion.

**I.　BACKGROUND**

On April 27, 2017, Plaintiffs filed this putative class action, alleging that PwC "engages in systemic and pervasive discrimination against older job applicants." ECF No. 62 at 7. Plaintiffs claim that PwC's "maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants." ECF No. 1 at 3. According to the complaint, these practices also deter older applicants from applying for positions at PwC in the first place. Id. at 4. On July 22, 2016, PwC answered the complaint. ECF No. 32. Plaintiffs filed an amended complaint on September 8, 2016, ECF No. 42, and Defendant answered again on September 30, 2017, ECF No. 47.

Then, on January 9, 2017, Defendant moved for judgment on the pleadings, asking the court to enter judgment in favor of PwC as to Plaintiffs' disparate impact claim under the ADEA.

1  ECF No. 60.  Defendant argues that the ADEA does not permit job applicants to bring disparate
2  impact claims.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6) . . . ." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotations omitted).  To evaluate a Rule 12(b)(6) motion to dismiss, the court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A plaintiff must allege facts that are enough to raise her right to relief "above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Fajardo v. Cty. of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).

## III. ANALYSIS

"The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir. 1981) (quoting Dartt v. Shell Oil Co., 539 F.2d 1256 (10th Cir. 1976).  To that end, the Supreme Court held in Smith v. City of Jackson that the ADEA permits disparate impact claims in addition to disparate treatment claims.  544 U.S. 228, 240 (2005) ("[The ADEA] authorize[s] recovery on a disparate-impact theory[.]").  Neither the Supreme Court nor the Ninth Circuit has explicitly held, however, that this right extends to both employees and job applicants under the ADEA.  Based on the language of the ADEA, existing precedent, agency interpretations of the ADEA, and the Act's legislative history, the Court today concludes that job applicants like Plaintiffs may bring disparate impact claims.

### A. Text of the ADEA

Section 4 of the ADEA makes it unlawful for an employer:

> to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a)(2). In Smith, the Supreme Court held unequivocally that section 4(a)(2) allows for disparate impact claims. 544 U.S. at 240. The only question here is whether that right extends to job applicants in addition to employees.

The plain language of the statute supports the more inclusive interpretation. Critically, the ADEA uses the phase "any individual," rather than "employee" to identify those people section 4(a)(2) protects. 29 U.S.C. § 623(a)(2). By contrast, elsewhere in the same provision, Congress chose the word "employees" to refer to the people an employer may not "limit, segregate, or classify." Id. The Court assumes that this variation in language was a deliberate choice, and one that reflects Congress's intent to include all "individuals" within section 4(a)(2)'s ambit. S.E.C. v. McCarthy, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). This reading of section 4(a)(2) is bolstered further by the fact that, elsewhere in the ADEA, Congress used the phrase "any employee" to refer to the affected parties with a right to sue. See, e.g., 29 U.S.C. § 623(a)(3) (making it unlawful "to reduce the wage rate of any employee in order to comply with this chapter") (emphasis added). "If Congress intended to protect a narrower group, [such as employees only], it would have said so." Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 982 (11th Cir. 2016) (Martin, J., dissenting).

The Court acknowledges that the Eleventh Circuit came to the opposite conclusion in Villarreal. Indeed, Defendant leans heavily on the majority opinion in that case for its argument that the plain language of section 4(a)(2) clearly limits its application to employees. The Court in Villarreal focused on the phrase "or otherwise adversely affect his status as an employee," and argued that its use made "'depriving or tending to deprive any individual of employment opportunities' a subset of 'adversely affecting [the individual's status as an employee.'" Villarreal, 839 F.3d at 963. Under this reading, section 4(a)(2) gives only employees, and not applicants, the right to bring disparate impact claims. Defendant further explains how, in other

3

parts of the U.S. Code, similar "otherwise" phrases have been interpreted to "operate[] as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise.'" ECF No. 64 at 8. But the power of this argument and Defendants' statutory examples is undermined by the fact that the Supreme Court has interpreted *identical* statutory language in Title VII, and did not suggest that only employees were entitled to bring suit or that the "otherwise" phrase modifies "any individual." See Part III.B (discussing Griggs v. Duke Power Co.).

Moreover, as Judge Martin noted in her dissent, "the Supreme Court has even told us that when the word employee lacks any temporal qualifier it can include people other than current employees," such as "prospective employees." Id. at 984 (Martin, J., dissenting) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 342 (1997)) (internal quotation marks omitted).[1] "If 'employees can mean prospective employees, surely 'any individual' can too." Id. The text of the statute therefore contradicts the Villarreal majority's conclusion that "4(a)(2) protects an individual only if he has a 'status as an employee.'" Id. at 963.

Defendant and the Villarreal majority also focus on section 4(c)(2) of the ADEA, which uses the words "status as an employee or as an applicant for employment" rather than "status as an employee" like section 4(a)(2). According to Defendant, Congress's decision to omit the "applicant for employment" language in section 4(a)(2) must mean something. This is Defendant's strongest textual argument. Nonetheless, Section 4(c)(2) is distinguishable, because it governs labor organizations, not employers. The Villarreal dissent explained the ramifications of this distinction:

> [Section 4(c)(2)] governs a labor organization's ability to "refuse to refer for employment." This part of the statute targets the unique way in which labor organizations can discriminate when they "refer" "applicants" to employers, such as through union hiring halls. None of the other parts of the ADEA that govern employers say anything about "referring" anyone for employment. Employers, after all, don't "refer applicants." But labor organizations, by virtue of their unique referral role, are sometimes the sole conduit by which an employer can get

---

[1] Defendant misunderstands Plaintiffs and the Court's use of Robinson. ECF No. 64 at 13. That decision supports a broader interpretation of the word "employee"; the Court does not rely on Robinson to interpret the word "individual."

> potential job applicants. And § 4(c)(2) prohibits labor organizations from "refus[ing] to refer" a person for employment at all because of her age and thereby denying her "status . . . as an applicant for employment." In other words, the statute protects someone who sought work but was denied status as an applicant—that is, being allowed to apply at all—due to labor organizations' control of the hiring process.

839 F.3d at 985 (Martin, J., dissenting). The Court finds this analysis persuasive. And Defendant's statutory comparison, however convincing, cannot overcome the use of the phrase "any individual," binding Supreme Court precedent, see Part III.B, or the legislative history of the Act, see Part III.C.

Finally, the most natural reading of section 4(a)(2) "plainly describes what [PwC allegedly] did to [Plaintiffs]. Specifically, Mr. [Rabin] is an 'individual' who was 'deprive[d]' 'of employment opportunities' and denied any 'status as an employee' because of something an employer did to 'limit . . . his employees.'" Id. at 982 (Martin, J., dissenting). Given that it is PwC's alleged discrimination that deprived Mr. Rabin of his status an employee, it would turn the ADEA on its head to say that Mr. Rabin cannot bring a disparate impact claim because he was never actually hired.

### B. Supreme Court Precedent

Supreme Court precedent supports an interpretation of section 4(a)(2) that permits job-seekers to bring disparate impact claims. Most importantly, in Griggs v. Duke Power Co., the Supreme Court considered identical statutory language in Title VII. 401 U.S. 424 (1971).[2] The question before the Court was whether, under that identical statute, "an employer is prohibited by the Civil Rights Act of 1964, Title VII, from requiring a high school education or passing of a standardized general intelligence test as a condition of employment in or transfer to jobs." Id. at 425-26 (emphasis added). The Court held that Title VII prohibited the employer's actions if they were shown to have a disparate impact on African Americans. Id.

Defendant argues that Griggs has no bearing on whether job applicants, versus employees, may bring disparate impact claims, because in Griggs the plaintiffs were all "employed at the

---

[2] Of course, the statutes differ in that protected status under Title VII is "race, color, religion, sex, or national origin," whereas under the ADEA it is "age."

Company's Dan River Steam Station." Id. at 426.  But as described above, the Court phrased the question presented broadly to include a challenge to "condition[s] of employment."  Id.  Moreover, the Griggs Court explained the decision below as finding that the defendant had "openly discriminated on the basis of race in the hiring and assigning of employees at its Dan River plant."  Id. at 426-27 (emphasis added).  This suggests that the Court did not intend to limit Title VII's protections in a way that excluded job applicants.  That more liberal reading of Griggs makes sense given the Court's approval of disparate impact liability as a tool to combat "subtle forms of discrimination that 'freeze the status quo,' create 'artificial, arbitrary, and unnecessary barriers to employment,' or 'operate as built-in-headwinds for minority groups.'"  Villarreal, 839 F.3d at 987 (Martin, J., dissenting) (quoting Griggs, 401 U.S. at 430-32).  Those same "subtle forms of discrimination" are just as likely to persist in the interview room as they are within the walls of the workplace.  It cannot be that, despite Griggs's clear message, an employer remains free to freeze the status quo "by not hiring minorities at all."  Id.

Notably, several subsequent Supreme Court decisions have characterized Griggs as applying to job applicants.  In Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., for example, the Court described how Griggs had placed important limits on Title VII disparate impact liability, explaining that even "in a disparate-impact case, § 703(a)(2) does not prohibit hiring criteria with a 'manifest relationship' to job performance."  135 S. Ct. 2507, 2517 (2015).  Likewise, in Connecticut v. Teal, the Court explained that although the requirements in Griggs "applied equally to white and black employees and applicants, they barred employment opportunities to a disproportionate number of blacks" and were therefore invalid.  457 U.S. 440, 446 (1982) (emphasis added); see also Dothard v. Rawlinson, 433 U.S. 321, 329 (1977) (explaining that Griggs "ma[de] clear that to establish a prima facie case of discrimination, a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern").  That the Court described its own prior decision in these terms casts doubt on Defendant's cramped reading of Griggs.

Defendant makes much of the fact that Congress later amended the section of Title VII at issue in Griggs to read:

>to limit, segregate, or classify his employees <u>or applicants for employment</u> in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2) (emphasis on new language).  Defendant suggests that the decision to add the phrase "or applicants for employment" means Congress believed that group was not protected under the earlier version – i.e., the version interpreted in <u>Griggs</u>.  ECF No. 55 at 10.  Because Congress did not add a similar phrase to the ADEA, the argument goes, job applicants remain unprotected under section 4(a)(2).[3]  Defendant draws the wrong inference.  As Plaintiffs point out, the amendment to Title VII was intended to be "declaratory of present law," S. Rep. No. 92-415 at 43 (1971), and "fully in accord with the decision of the Court" in <u>Griggs</u>, H.R. Rep. No. 92-238 at 21-22 (1971).  In other words, the amendment signaled that <u>Griggs</u> had properly interpreted Title VII as protecting both employees and applicants.  Therefore, the amendment supports, rather than detracts from, an interpretation of the ADEA as likewise covering both employees and applicants.

<u>Smith</u>, which announced that disparate impact claims are cognizable under section 4(a)(2) of the ADEA, made no distinction between applicants and employees.  544 U.S. 228 (2005).[4]  It is true that the plaintiffs in <u>Smith</u> were employees.  <u>Id.</u> at 230 (describing plaintiffs as "police and public safety officers employed by the city of Jackson").  But just because <u>Smith</u> granted relief to employees, it does not follow that the Court would *not* have granted relief had the plaintiffs been applicants instead.  Moreover, the <u>Smith</u> Court relied heavily on the reasoning in <u>Griggs</u>, which, as described above, did not limit its holding to employees.  <u>Id.</u> at 232 ("[We] now hold that the ADEA does authorize recovery in 'disparate-impact' cases comparable to <u>Griggs</u>.").

---

[3] Defendant cites <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167 (2009), in support of this point.  But there, the Court emphasized that "Congress neglected to add such a provision to the ADEA when it amended Title VII . . . , even though it *contemporaneously* amended the ADEA in several ways."  <u>Id.</u> at 175 (emphasis added).  Defendant makes no claim here that Congress specifically considered adding "or applicants for employment" to the ADEA at the time it amended Title VII and decided against it.

[4] When <u>Smith</u> was decided, the amendment to Title VII that added the "or applicants for employment" language had been in place for over three decades.

7

1    Smith did identify "[t]wo textual differences between the ADEA and Title VII [that] make
2    it clear that even though both statutes authorize recovery on a disparate-impact theory, the scope
3    of disparate-impact liability under ADEA is narrower than under Title VII." Smith, 544 U.S. at
4    240. Neither, however, has the slightest connection to the applicant/employee distinction.[5] That
5    the Court chose to comment on the differences between Title VII and the ADEA's analogous
6    provisions but made no mention of the "or applicants for employment" language in Title VII is
7    noteworthy.

    The Smith Court also carefully analyzed the textual differences between section 4(a)(2)
and section (4)(a)(1). The latter makes it unlawful to "to fail or refuse to hire or to discharge any
individual or otherwise discriminate against any individual with respect to his compensation,
terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §
623(a)(1). Although subsection one contains the "fail or refuse to hire" language, and subsection
two does not, the Smith Court "said nothing about the distinction between hiring versus other
claims that [Defendant's] entire effort to distinguish Smith is staked on." Villarreal, 839 F.3d at
988 (Martin, J., dissenting).

    Rather than invent a new and more restrictive interpretation of section 4(a)(2), this Court
will follow the guidance of Smith and Griggs.[6] Those precedents support extending the right to
make a disparate impact claim under the ADEA to "any individual" who has been adversely
affected "because of such individual's age," regardless of whether she is an applicant or employee.

**C. Agency Interpretation**

---

[5] First, ADEA defendants may use the "reasonable factors other than age" defense; and second, Wards Cove's pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA. ECF No. 62 at 16-17.

[6] Defendant claims that, by adopting this approach, the Court will be "break[ing] with th[e] significant weight of precedent," pointing to Villarreal, but also to Ellis v. United Airlines, Inc., 73 F.3d 999, 1009 (10th Cir. 1996) and E.E.O.C. v. Francis W. Parker Sch., 41 F.3d 1073, 1075 (7th Cir. 1994). ECF No. 64 at 12. This reliance is misplaced. Both the Tenth and Seventh Circuits held that disparate claims were not available at all under the ADEA. The Supreme Court overruled that holding in Smith. The fact that Ellis and Francis W. Parker School involved claims by job applicants does not change the fact that their central holdings are no longer good law and cannot support Defendant's argument here.

Deference to agency interpretation provides yet another reason to reject Defendant's narrow construction of section 4(a)(2). To be clear, the Court believes the language of the statute, read in light of Griggs and Smith, makes plain that the ADEA permits job applicants to bring disparate impact claims. Nonetheless, the Court acknowledges that others might would interpret section 4(a)(2) differently, including a majority of judges on the Villarreal en banc panel. Where a statute is ambiguous, courts grant increased deference to the responsible agency's interpretation. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

Here, the Equal Employment Opportunity Commission ("EEOC"), the agency with authority to issue rules and regulations related to the ADEA, 29 U.S.C. § 628, has long interpreted the ADEA as permitting disparate impact claims by job-seekers. The EEOC's current regulation explains that "[a]ny employment practice that adversely affects *individuals* within the protected age group on the basis of older age is discriminatory unless the practice is justified by a 'reasonable factor other than age." 29 C.F.R. § 1625.7(c). The regulation mirrors section 4(a)(2)'s broad "any individual" language. Additionally, the regulation's preamble section explains how it addresses "neutral practices that act as barriers to the employment of older workers":

> Data show that older individuals who become unemployed have more difficulty finding a new position and tend to stay unemployed longer than younger individuals. To the extent that the difficulty in finding new work is attributable to neutral practices that act as barriers to the employment of older workers, the regulation should help to reduce the rate of their unemployment.

77 Fed. Reg. 19080, 19092 (2012) (footnote omitted). This endorsement of applicant disparate impact claims is not new. Only months after the ADEA was signed into law, the Department of Labor, then the agency in charge of its interpretation, declared that supposedly neutral "pre-employment" tests must be "reasonably necessary for the specific work to be performed" and "equally applied to all applicants." 33 Fed. Reg. 9173 (1968). Defendant offers no persuasive reason to discard this decades-old interpretation of the ADEA by its implementing agency.

### D. Legislative History

9

The history of the ADEA's enactment reveals that Congress was concerned not just with age discrimination within the workplace, but also with the barriers to older workers finding employment in the first place. In the Act's statement of purpose, Congress described how "older workers find themselves disadvantaged in their efforts . . . to regain employment when displaced from jobs," and struggle with "high" unemployment, "especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability." 29 U.S.C. § 621(a)(1), (a)(3). Plaintiffs amply demonstrate that congressional supporters of the ADEA spoke out often and openly about the need to address age discrimination in hiring. ECF No. 62 at 24-26. As the chief sponsor of the ADEA in the Senate, Ralph Yarborough, stated succinctly, "[i]n simple terms, this bill prohibits discrimination in hiring and firing." 113 Cong. Rec. 31248, 31252 (1967). This and many other references to protecting older job applicants negate any impression that Congress viewed discrimination in hiring as less important than discrimination against those already employed. While statements by particular lawmakers are not "controlling," as Defendant rightly states, it is wrong to say they have "no probative value." ECF No. 64 at 20.

## CONCLUSION

Together, a textual analysis of section 4(a)(2), the Supreme Court's precedent in Griggs and Smith, the EEOC's interpretation of the ADEA, and the Act's legislative history, all confirm that job applicants like Plaintiffs may bring disparate impact claims. Defendant's motion for judgment on the pleadings is denied.

IT IS SO ORDERED.

Dated: February 17, 2017

_____
JON S. TIGAR
United States District Judge