UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RABIN, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>   Defendant. | Case No.16-cv-02276-JST<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 96 |

## I. BACKGROUND

On April 4, 2016, the parties submitted a joint discovery brief, ECF No. 96, in which they dispute Plaintiffs' request to PricewaterhouseCoopers ("PwC") for data to support their statistical analysis. Plaintiffs ask the Court to "either (1) order PwC to produce the Source1[1] database in full, or (2) defer ruling until the parties have addressed [] back-end options" for accessing the Source1 data. ECF No. 97-4 at 1. PwC objects that Plaintiffs' data request "calls overwhelmingly for irrelevant information that is disproportionate to the needs of the case." Id. at 6. PwC asserts that it remains willing to "proceed with assembling the list of potential class members and the agreed-upon data fields for those individuals and their comparators, once Plaintiffs provide a reasonable age proxy;" the process PwC claims the parties already agreed to in December 2016. Id. at 11.

## II. DISCUSSION

Consistent with its usual practice – particularly in discovery disputes – and as the Court has previously indicated to the parties, the Court here attempts to resolve the dispute by adopting

---

[1] Source1 is "PwC's main system of record for applicant processing." ECF No. 97-4 at 1.

one of the parties' positions[2]: either that PwC produce the Source1 database in its entirety, as Plaintiffs request, or continue under the "two stage" data production process they agreed to in late 2016, as PwC requests. The Court will adopt PwC's proposal.

The Court starts by acknowledging that statistical evidence is "unquestionably relevant" in employment discrimination cases. Diaz v. Am. Tel. & Tel., 752 F.2d 1356, 1362–63 (9th Cir. 1985). That includes cases brought under the Age Discrimination in Employment Act ("ADEA"). See, e.g., Pines v. State Farm Gen. Ins. Co., No. SACV89-631, 1992 WL 92398, at *4 (C.D. Cal. Feb. 25, 1992). What is disputed here is the *scope* of that discovery before conditional certification of a collective action.

Simply put, Plaintiffs' position is not reasonable. Plaintiffs identify no case in which the court ordered production of a defendant's entire employment database,[3] much less a database containing "more than two million applications," as PwC's Source1 database does. ECF No. 97-4 at 6. Plaintiffs do not argue that even half of these applications have any relevance to Plaintiffs' claims. Even accepting for the sake of argument Plaintiffs' characterization of the burden to produce this information as low, Plaintiffs' request is not justified because the majority of the

---

[2] If the parties submit competing [proposals], the Court will endeavor to choose, in all respects, the single proposal it concludes is most reasonable. *See* Michael Carrell & Richard Bales, *Considering Final Offer Arbitration to Resolve Public Sector Impasses in Times of Concession Bargaining,* 28 Ohio St. J. on Disp. Resol. 1, 20 (2013) ("In baseball arbitration . . . the parties . . . have every incentive to make a reasonable proposal to the arbitrator because the arbitrator will choose the more reasonable offer").

Sage Electrochromics, Inc. v. View, Inc., No. 12-CV-6441-JST, 2014 WL 1379282, at *3 (N.D. Cal. Apr. 8, 2014) (ellipses in original).

[3] Plaintiffs do find support for considering statistical analyses in pre-collective certification employment cases, but none of those cases analyzed the scope of the statistical analyses or underlying data. For example, the court in Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 439 (S.D.N.Y. 1995) noted that plaintiffs' expert "performed an analysis of the effect of the [the challenged policy] on [defendant's] management employees." There is no discussion of the data underlying the expert's report. At the very least, the fact that the study was limited to "management employees" suggests that the Krueger plaintiffs did not demand data discovery on the scale Plaintiffs seek here. Hyman v. First Union Corp., 982 F. Supp. 1, 4 (D.D.C. 1997) is similarly unhelpful. Although the plaintiffs in that case "presented statistical evidence that they believe supports a finding of institution-wide discrimination," the court did not rely on that evidence, which was contested, "[b]ecause of the other evidence which provides a basis for the decision to allow a collective action to proceed." Id.

discovery demanded is irrelevant. The one case Plaintiffs cite in support of their raw data request, Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 305 (S.D.N.Y. 2012), does not support their argument. In that case, the court acknowledged that there is no "legal impediment" to requiring production of a defendant's entire database, but ultimately refused to order the defendant to do so due to "the costs involved in converting the mass of unorganized data provided into useable information." Id.

Defendant's alternative is the more reasonable one. Defendant seeks to limit pre-certification data discovery to the agreement the parties reached through a series of emails in December 2016. The parties created the following two-stage process:

> In the first, PwC would provide a list of the basic elements of the system, such as all fields contained in the system. In the second stage, PwC would provide, for applicants for Associate, Experienced Associate, or Senior Associate positions in the Tax and Assurance business lines, the following data: names, contact information, age proxy, job position and organizational location information, and application outcome.

ECF No. 96-7 at 4 (internal citations and quotation marks omitted). Plaintiffs appear to have agreed to this process. ECF No. 96-8 at 2 ("[T]he two-step process you describe appears to be exactly what we envision.").[4] Although the data generated by this process may not be robust enough for a merits-stage statistical analysis, it is sufficient to support a motion to conditionally certify a collective action. And of the two options presented to the Court, it is by far the more reasonable.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] Plaintiffs' argument that data discovery should not be limited to the tax and assurance lines of business is not persuasive. Although Plaintiffs' class definition is not limited to those two business lines, that is where the named Plaintiffs applied for jobs, and previous discovery has included that limitation. E.g., ECF No. 59 at 3 ("The Court orders Defendants to produce all age-related complaints by individuals seeking employment in any of the relevant lines of business, whether or not those individuals are part of the putative class.")

3

## III. CONCLUSION

The Court orders the parties to proceed under the two-stage data discovery plan outlined above.[5]

IT IS SO ORDERED.

Dated: April 19, 2017

                                                          JON S. TIGAR
                                           United States District Judge

---

[5] The Court takes no position on whether additional data discovery would be warranted after a ruling on Plaintiffs' anticipated motion for certification of their collective action.