UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RABIN, ET AL., <br>     Plaintiffs, <br> v. <br> PRICEWATERHOUSECOOPERS LLP, <br>     Defendant. | Case No.16-cv-02276-JST <br><br> **DISCOVERY ORDER** <br> ECF No. 112 |

This is a putative class action alleging that defendant PricewaterhouseCoopers ("PwC") discriminated in hiring on the basis of age. On May 26, 2016, the parties submitted a joint discovery letter brief, which presents two main disputes: 1) an appropriate proxy for age, given that PwC's applicant database does not contain information regarding each applicant's age; and 2) who the appropriate comparators to class members are.[1] The Court addresses each dispute below.

## I. Age Proxy

PricewaterhouseCoopers LLP's ("PwC") Source1 database contains a variety of information about job applicants, but does not include applicants' dates of birth ("DOBs"). Because this is an age discrimination case, the question is whether there is an appropriate proxy for DOB that would allow the parties to identify whether an applicant was (or was not) a class member.

---

[1] One method of demonstrating age discrimination is by showing that similarly situated individuals who were younger than class members received more favorable treatment in the application process. These similarly situated individuals are called "comparators." Whether individuals are similarly situated is ordinarily a question of fact. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010). The other applicants "need not be identical; they must only be similar 'in all material respects.'" Id. (quoting Moran v. Selig, 447 F.3d 748, 755 (9th Cir.2006).

The parties previously agreed to the following age proxy process: 1) PwC would provide Plaintiffs with a list of fields in the Source1 database, 2) Plaintiffs would choose an age proxy field, and 3) PwC would produce the information in certain other data fields for both purported class members and comparators identified by using the age proxy. In February 2017, Plaintiffs identified undergraduate graduation date as the best age proxy field. ECF No. 112-10. Plaintiffs proposed that all applicants who graduated 11 years before the application date should be presumed to be over 40. ECF No. 112-13. PwC responded that the spread should be 16 years, not 11. ECF No. 112-14.

On May 10, 2017, while the parties were still debating the appropriate spread, Plaintiffs approached PwC with a new proposal. Plaintiffs proposed that PwC turn over ten "identifying fields"[2] for all 250,000[3] applicants at issue to Accurint, an IT company owned by Lexis-Nexus. ECF No. 112-15. Plaintiffs claim that Accurint will be able to identify DOBs for over 95% of the 250,000 PwC applicants by cross-checking PwC's data with the 6.5 billion public records Accurint has compiled and cross-referenced. ECF No. 112 at 3. PwC opposes this proposal.

From the Court's perspective, there are three key questions[4] for determining whether Plaintiffs should be permitted to depart from the parties' previously agreed-upon age proxy process: 1) whether the Accurint proposal would place an additional burden on Defendant, 2) whether the Accurint proposal is more likely than the age proxy process to produce reliable

---

[2] The identifying fields include Address, City, State, Zip, Email, First Name, Middle Name, Last Name, Job Title, and Phone. ECF No. 112 at 3.

[3] The Court was informed at the hearing on this letter brief that the 250,000 figure represents all applicants (rather than applications) to the relevant jobs in the relevant lines of business during the relevant time period. This is the same universe of applications from which Plaintiffs would have selected an age proxy pursuant to the parties' original discussions.

[4] Neither of the cases cites by the parties on this issue is helpful. The discovery orders in <u>EEOC v. Darden</u>, on which Plaintiffs rely, are too conclusory to provide much guidance and appear to focus mostly on whether an Accurint report should be discoverable once it has already been produced. No. 15-20561 (S.D. Fla.)(ECF Nos. 87 and 175). PwC's emphasis on <u>Heath v. Google</u> is similarly unpersuasive. 215 F. Supp. 3d 844, 859 (N.D. Cal. 2016). The fact that parties in a different case used college graduation as an age proxy does not mean that it is the best method for identifying older and younger applicants here.

1  information about class membership, and 3) whether Plaintiffs suggested replacing the age proxy
2  process in good faith.
3        As for the first question, the Court is not convinced that the Accurint proposal would
4  substantially increase PwC's burden because PwC would need to run a similar Data Insight Tool
5  ("DIT") report under either proposal. As the Court understands it, to implement the age proxy
6  process, PwC would create a DIT report containing college graduation date (the age proxy field),
7  application date, and several other "targeted fields" selected by Plaintiffs.[5] After adding either 11
8  or 16 years to each applicant's graduation date, PwC would use the application date to sort the
9  DIT spreadsheet into older and younger applicants (i.e., purported class members and
10 comparators). PwC would then cull the spreadsheet to provide Plaintiffs with only the targeted
11 fields to which the parties previously agreed. Under the Accurint proposal, PwC would run a
12 similar DIT report and provide Accurint with the resulting spreadsheet. Accurint would return to
13 PwC the same spreadsheet but with an additional DOB field filled in for some percentage of the
14 250,000 applicants.[6] PwC would then perform the same sorting process just described.
15 Presumably, it would eliminate those applicants for whom no DOB had been located. Then, PwC
16 would compare the DOB field to the application date to divide the spreadsheet into older and
17 younger applicants. Finally, as with the age proxy process, PwC would cull the spreadsheet to
18 only the targeted fields and produce the data to Plaintiffs.[7]
19       PwC has not persuaded the Court that the Accurint process is more burdensome than the
20 age-proxy process. Even if, for example, the DIT report for the Accurint process required two or
21 three additional fields, the total number of fields for either process would still be well under the 75
22 fields that can apparently be included in one DIT Report. ECF No. 112-9. PwC does not rebut

---

[5] These include position/job title, line of service, office location, and application outcome. ECF No. 96 at 10. The Court takes no position on whether Plaintiffs are entitled to college and graduate school graduation dates. ECF No. 112 at 3 n.8.

[6] The comprehensiveness and accuracy of Accurint's data is discussed below.

[7] PwC is wrong to equate this proposal with Plaintiffs' earlier request for all two million entries in the Source1 database.

3

Plaintiffs' claim that generating a *single* DIT report would take only 30 minutes, ECF No. 112 (objecting that the 30 minute figure is "for preparing a ***single DIT***, not for numerous DITs or the lengthy [quality control] process") (emphasis in original), and a single DIT is all that Plaintiffs are asking for. At the hearing on this letter brief, PwC argued the Accurint proposal would require a more burdensome QC check process. But PwC failed to articulate how the QC process would be more difficult or time consuming than it would be under the age proxy proposal. Nor did PwC explain what the purpose of such a check would be under either approach. Presumably, Plaintiffs would prefer PwC's unreliable data to no data at all, even if the QC check revealed flaws in the DIT report. Finally, PwC claims that the Accurint process would create additional steps or a "second round" of data pulling for PwC beyond what would be required for the age proxy process. But given the processes described above, the Court does not understand why that would be so. If PwC includes all the relevant fields in the initial DIT report that it sends to Accurint, there would be no need to run another report once Accurint returns the spreadsheet with the DOB field. PwC would simply need to delete all but the targeted fields before sending to Plaintiffs. PwC, as the keeper of the data, is best positioned to describe and quantify the additional burden it would face from the proposed Accurint process. It failed to do so here.

Next, the Court asks whether the Accurint process is substantively better than the age proxy process. In other words, will Accurint's process produce more compressive and accurate results? As both parties acknowledge, the age proxy process suffers from a number of flaws. First, regardless of whether the PwC employs an 11- or 16-year spread, using college graduation as an age proxy will produce results that are both underinclusive and overinclusive. For example, if an applicant graduated from college 16 years before she applied to PwC (an applicant that would be *covered* under either spread), there is only a 35% chance the applicant is actually over 40. ECF NO. 112-2 at 2. That means many younger applicants will mistakenly be included in the pool of older applicants. Conversely, if an applicant graduated from college 10 years before she applied to PwC (an applicant that would be *excluded* under either spread), there is a 16% chance the applicant is over 40. Id. Put another way, even the more inclusive 11-year spread would lead to roughly thousands of older applicants being improperly excluded from the older applicant pool.

Id. Indeed, Plaintiffs represent that "only 21.7% of older applicants would be captured by a college-graduation-based age proxy of 16 years." ECF No. 112 at 2. In addition to these inclusivity concerns, the age proxy field is missing altogether in 20% of the 250,000 universe of applications.

The Accurint proposal must be considered against this backdrop. The parties disagree about the likely comprehensiveness of Accurint's DOB data. Plaintiffs claim that Accurint's DOB hit rate will be over 95%. ECF No. 112 at 3. In other words, Plaintiffs say that, given the identifying fields, Accurint will return a DOB for at least 95% of the 250,000 applicants. ECF No. 112-8. But as PwC points out, that 95% figure is based on partial or full DOB or social security number *inputs*. Id. Obviously, Plaintiffs do not have DOB data since that is the *output* they are seeking. Nor can Plaintiffs provide Social Security numbers to Accurint, since PwC does not collect them from applicants. ECF No. 112 at 5. Instead, PwC's separate inquiries with Accurint suggest that, given the identifying fields that PwC can provide, the hit rate will be closer to 50% than 95%. ECF No. 112-16. Even if the 50% figure is the correct one, however, the Accurint process is still superior in terms of comprehensiveness to the age proxy process, which would capture only 28.6% of older applicants using Plaintiffs' more inclusive 11-year spread (and 21.7% using Defendant's 16-year spread). ECF No. 112-2.[8] In other words, notwithstanding its limitations, the Accurint process is more thorough and accurate.

Setting the hit rate to one side, PwC also challenges the reliability of the DOBs that Accurint can produce. It seems beyond question that the Accurint data would contain some errors. Nevertheless, at least it produces specific DOBs – unlike the age proxy process, which the parties both recognize will generate a pool of older applicants that includes substantial numbers of false positives. Moreover, Defendant can use its Human Resources database, which does contain DOBs for *hired* applicants, to measure and potentially challenge the reliability of this evidence in opposing a conditional certification motion.

As for the last factor, the Court sees no indication that Plaintiffs changed course on this

---

[8] Taking into account the fact that the age proxy field is only available for 80% of applicants, the actual percentage is even lower.

5

issue in bad faith. Rather, the Court takes Plaintiffs at their word that, after negotiating the appropriate age proxy in good faith, they discovered what appeared to them to be "an elegant, superior solution." ECF No. 112 at 2. They then raised this alternative proposal with PwC.

In sum, though by no means perfect, the Accurint proposal is likely to produce more comprehensive and reliable results with minimal additional burden on PwC. The Court orders the parties to proceed with the Accurint process but will not require PwC to split the cost.

## II. Comparators

The parties also dispute who qualifies as a comparator. Plaintiffs seek to define comparators as "all applicants to the relevant job positions during the relevant period who are not potential class members." ECF No. 112 at 8. PwC would limit comparators to those applicants who applied to the same job requisition as an older applicant. Id. at 10. The Court will adopt PwC's definition.

As a general matter, it is true that the actual pool of applicants need not always be the outer limit in terms of defining the comparator class. See Moore v. Hughes Helicoptors, 708 F.2d 475, 482 (9th Cir. 1983) ("Disparate impact should always be measured against the actual pool of applicants or eligible employees *unless* there is a characteristic of the challenged selection device that makes use of the actual pool of applicants or eligible employees inappropriate") (emphasis added). That said, the cases in which courts have allowed broader comparator discovery tend to be individual plaintiff cases where the additional data sought beyond the applicant pool is limited. For example, in Diaz v. AT&T, the Ninth Circuit held that the district court had erred in limiting an individual plaintiff's comparator discovery to the company's promotion decisions in its Tucson office, where the plaintiff worked, rather than in the greater "Western Region." 752 F.2d 1356, 1363 (9th Cir. 1985). Moreover, not only was Diaz a single plaintiff case, but the plaintiff specifically alleged he would have taken a promotion outside of Tucson, had one been available. Id. Similarly, Plaintiffs point to Ingram v. Pacific Gas & Electric Co., No. 12-CV-02777-JST, 2013 WL 6174487, at *4-5 (N.D. Cal. Nov. 25, 2013), in which an individual plaintiff alleged that he was terminated because of race. This Court concluded that the plaintiff was entitled to evidence of terminations at 46 PG&E substations, not just the one at which he had worked. Id.

The Court explained that limiting plaintiff to only his substation would result in a sample size so small that it would be difficult to perform any statistical analysis, and noted that identifying terminations among the 1500 employees of the extra 46 substations was unlikely to be burdensome. Id. By contrast, this is a collective action where even PwC's proposed comparator definition would lead to discovery on thousands of applications. There is little risk that Plaintiffs would be unable to perform a statistical analysis without the additional discovery they seek. Nor have Plaintiffs made particular allegations, like in Diaz, that justify expanding comparator class beyond the actual pool of applicants. Finally, adopting Plaintiffs' comparator definition could substantially increase the volume of data discovery.

Plaintiffs also argue that PwC's definition is too narrow because ""PwC recruiters can search for past applicants to other requisitions, to encourage them to apply." ECF No. 112 at 8. According to Plaintiffs, this justifies expanding the comparator class to include any applicant to one of the relevant positions. But as Plaintiffs acknowledged at the hearing, if a recruiter encourages a candidate for Requisition A to apply for Requisition B, and the candidate decides to do so, her application would then appear in the list for Requisition B and be covered under PwC's approach. PwC's recruitment practices therefore do not support expanding the comparator class to requisitions beyond those to which an older applicant applied.

The Court orders the parties to proceed under PwC's comparator definition.

IT IS SO ORDERED.

Dated: June 29, 2017

 JON S. TIGAR
United States District Judge

7