UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RABIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS LLP, <br><br> Defendant. | Case No. 16-cv-02276-JST <br><br> **ORDER DENYING COLLECTIVE CERTIFICATION** <br><br> Re: ECF No. 198 |

Before the Court is Plaintiffs Steve Rabin and John Chapman's motion for conditional certification of their proposed collective action. ECF No. 198. They seek to certify a class of older applicants for employment at Defendant PricewaterhouseCoopers, LLC ("PwC"), alleging that such applicants were subject to age discrimination. As set forth below, the Court concludes that Rabin and Chapman are not substantially similar either to unqualified applicants or to deterred applicants, both of which categories are part of the larger collective action they seek to certify. Accordingly, the Court denies the motion.[1]

I.  **BACKGROUND**

Plaintiffs filed this putative collective action on April 27, 2016. ECF No. 1. They allege that PwC "engag[es] in an intentional, companywide, and systemic policy, pattern, and/or practice of discrimination against [older] applicants" and "maintain[s] discriminatory policies, patterns, and/or practices that have an adverse impact on [older] applicants and prospective applicants."

---

[1] The Court has filed this order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this order, the parties' shall provide the Court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and for which the parties' still request the material be sealed. The Court will then issue a redacted version of the order.

ECF No. 42 ¶ 115.  Plaintiffs claim that PwC "maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants."  Id. ¶ 6.  According to the complaint, these practices also deter older applicants from applying for positions at PwC in the first place.  Id. ¶ 11.

Defendant PwC is a global accounting and auditing firm that employs more than 70,000 employees in the Americas.  ECF No. 198-6 at 19-20, 44.  By PwC's own account, its "workforce is strikingly young."  ECF No. 198 at 13 n.25.  Two-thirds of its employees are in their 20s and early 30s.  ECF No. 198-4 at 115.  Within that group, most are unmarried (75 percent) and without children (92 percent).  Id.  "[F]or three out of four of them, PwC is their first job out of college."  Id.  In 2013, PwC predicted that "almost 80 percent of PwC's workforce will be comprised of Millennials."  Id.  PwC's chairman Bob Moritz explains that PwC has historically had a young workforce, in part because "most hires will eventually move on to other firms or other careers."[2]  In 2011-2012 PwC, along with the University of Southern California and London School of Business, studied millennials in the workforce.[3]

PwC utilizes a central hiring system, with companywide policies and procedures for each step of the hiring process, including job postings, interviewing, and hiring.  Ex. 25.  PwC also maintains a central recruiting database.  Ex. 58.  Interview processes are governed by uniform guidelines, and interviewers are trained centrally.  Exs. 13, 25.  Plaintiffs provide evidence about PwC recruitment and human resources strategies which suggest that the company favors younger employees and disfavors older applicants.  For example, PwC emails refer to applicants over forty as "too old," "matur[e]," or "non-traditional," and PwC interviewers utilized questions suggesting that older applicants may not thrive with long hours or new technology.  ECF No. 198-5 at 79 (describing some candidates as "too old" and some as "a bit young"); id. at 26 (referring to a candidate as "mature"); id. at 35 (rating non-traditional candidate as highly as possible); ECF No.

---

[2] Bob Moritz, The U.S. Chairman of PwC on Keeping Millennials Engaged, https://hbr.org/2014/11/the-us-chairman-of-pwc-on-keeping-millennials-engaged (Nov. 2014), cited in ECF No. 198 at 13 n.25.

[3] Id.

198-4 at 28; ECF No. 198-8 at 55.  Plaintiffs also explain that recruiters appear disinterested in older applicants at recruiting events.  ECF No. 198-8 at 32; id. at 92; id. at 248.  PwC features predominantly young people on its website.  ECF No. 198-6 at 1.[4]

Plaintiffs also allege that PwC steers older applicants into less desirable seasonal positions, referred to as the Flexibility Talent Network ("FTN"), which have lesser benefits and fewer opportunities for training and career advancement.  ECF No. 198 at 16.  Moreover, PwC recruits along two separate tracks, "campus" and "experienced," and much of PwC's associate hiring is on the campus track.  PwC interns come exclusively from campus hiring and 85-90% of interns convert into full-time associates.  Exs. 45, 90.  Moreover, PwC spends far more money on campus recruiting than it does on experienced track recruiting.  Ex. 42.

Plaintiffs now seek to certify a collective action of "all individuals aged 40 and older who, from October 18, 2013 forward, applied or attempted to apply but were not hired for a full-time Covered Position (Associate, Experienced Associate, and Senior Associate) in the Tax or Assurance lines of service."  ECF No. 198 at 26-27.  Putative collective action members who "attempted to apply" are also called "deterred applicants."  See, e.g., ECF No. 211 at 28; ECF No. 218 at 20.[5]  To qualify for one of these covered positions, applicants must have a bachelor's or master's degree in a particular field (for example, accounting or taxation), a minimum grade point average ("GPA"), a commitment to obtain a certified public accountant ("CPA") license, and between zero and four years of experience.  ECF No. 198-7 at 1-16.

Plaintiff declares that he Steve Rabin applied for a position as a Seasonal Experienced Associate at the age of 50.  ECF No. 198-8 at 208-09.  At his interview, a senior manager asked,

---

[4] For example, the declaration of Kelli King states, "the pictures on PwC's website depicted only younger people, and its promotional quotes include statements like, 'I went to PwC out of college.'"  ECF No. 198-8 at 159.  Cynthia Woolbright declares that "when I visited PwC's website in 2014 and 2017 to look at job postings and apply for jobs, I noticed that the website featured mostly young people."  Id. at 251.  Joycelyn Wooten states that "PwC's website, which features college campus career fairs and on-campus interviewing, also illustrates that PwC's recruitment efforts are mainly focused on young, college-aged individuals."  Id. at 260.

[5] This group is not every "deterred applicant," but only that subset "who applied to FTN (i.e., non-Covered) positions and those who expressed interest in applying to the Covered Positions but whom PwC screened out or steered away before they could apply."  ECF No. 218 at 20.

"The people in the cubicles are much younger than you. How would you fit in? Would you be able to work for a younger manager or director?" Id. at 209. Rabin answered the question satisfactorily, but was not hired for the position. He states that he could tell from the question and the manager's tone of voice that he "viewed [Rabin's] age as a disadvantage." Id. Rabin also states that he attempted to apply on a separate occasion for an Associate position posted on PwC's "campus" website, but was unable to do so because he did not have a school email or mailing address. Id. at 210.

Plaintiff John Chapman declares that he was qualified for a position at PwC, and applied "numerous" times while he was between the ages of 45 and 48, but never received a position. Id. at 61. In a 2014 interview, a PwC manager asked Chapman whether he would be comfortable working with young people. Id. at 61-62. The manager "admitted that this was likely an inappropriate question to ask a candidate." Id. at 62. Chapman did not get the job. During his three-year job application period, Chapman "attended several PwC 'meet and greet' and pre-interview events where [he] met approximately twenty to thirty PwC Associates, Experienced Associates, and Senior Associates. None of them appeared to be over the age of 30." Id. While PwC employees described Chapman in internal emails as "very smart" and thought "highly of him," ECF No. 198-5 at 73, they also described him as "non-traditional," "matur[e]," and "not the right fit." Id.; ECF No. 197-5 at 27.

Both Rabin and Chapman state that their inability to obtain employment at PwC has hurt their larger career prospects. According to Rabin, "a significant portion (probably the vast majority) of accounting opportunities that [he is] interested in require 'Big Four' accounting experience.[6] In other words, PwC (in tandem with its three main competitors) functions as a gateway employer in the accounting industry. [His] inability to secure a job with PwC has negatively affected [his] efforts to secure other accounting employment." ECF No. 198-8 at 62. Similarly, Chapman states that "as a 'Big 4' firm, [PwC] functions as a gateway employer for the accounting industry." Id. When Chapman has interviewed at other employers, they have asked

---

[6] The Big Four firms are the four largest accounting firms: PwC, Deloitte, KPMG, and Ernst & Young.

4

why he did not have Big 4 experience or why he was not currently working at a Big 4 firm.

Plaintiffs also offer the written testimony of Dr. David Neumark, a labor economist. Dr. Neumark studied preliminary hiring data from PwC and found "very strong statistical deviations from age-neutrality in hiring . . . strongly consistent with discrimination in favor of younger applicants." ECF No. 198-3 ¶¶ 5, 14, 21. Neumark concluded that over a three-and-a-half year period, PwC hired younger applicants six times more often than older applicants. Id. ¶¶ 5, 14, Table 1. In his deposition, Neumark explained that he did not assess whether older applicants were discouraged from applying to PwC. ECF No. 211-4 at 9. Likewise, Neumark did not assess whether any other variables which correlate with age played a role in the statistical disparity. Id. at 13-14.

23 individuals have already opted into the collective action, and 28 collective members and potential members, who applied to covered positions and were qualified but rejected, submitted declarations in support of Plaintiffs' motion. ECF No. 198-1 at ¶¶ 127-155.

## II.   LEGAL STANDARD

Plaintiffs seek collective certification of their Age Discrimination in Employment Act ("ADEA") case under the standards set forth under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The ADEA incorporates the collective action procedures of FLSA, set forth in 29 U.S.C. § 216(b). See 29 U.S.C. § 626(b); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1130 (N.D. Cal. 2009) ("[B]ecause ADEA incorporates § 16(b) of the Fair Labor Standards Act into its enforcement scheme, the same rules govern judicial management of collective actions under both statutes. . . .").

29 U.S.C. § 216(b) provides that actions against employers may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." A suit brought on behalf of other employees is known as a "collective action," a type of suit that is "fundamentally different" from class actions. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013) (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–70 (1989)). For example, unlike in class actions, members of a collective action must file a "consent to sue" letter with the court in which the action

is brought creating an opt-in class. 29 U.S.C. 216(b). Also different is that "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." Genesis, 569 U.S. at 75. Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffman–LaRoche, 493 U.S. at 170.

Certification requires a showing that the potential class members are "similarly situated." Lewis, 669 F. Supp. 2d at 1127 (citation omitted). A majority of courts, including district courts in this circuit, follow a two-step process for determining whether a class is "similarly situated." See Harris v. Vector Marketing Corp., 753 F. Supp. 2d 996, 1003 (2010); Lewis, 669 F. Supp. 2d at 1127.

At the first step, alternatively called "the notice stage" and "conditional certification," the court considers whether the plaintiff submitted sufficient evidence to justify the conditional certification of the class and the sending of notice of the action to potential class members. Lewis, 669 F. Supp. 2d at 1127. In making this determination, "the court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Id. (internal quotation marks omitted). In other words, "[b]ecause the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification." Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004); see also Lewis, 669 F. Supp. 2d at 1127. "The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010); see also Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013) ("[C]ourts need not even consider evidence provided by defendants at this stage[.]").

"At the second step of the two-step inquiry, 'the party opposing the certification may move to decertify the class once discovery is complete.'" Heath v. Google Inc., 215 F. Supp. 3d 844, 852 (N.D. Cal. 2016) (quoting Adams v. Inter–Con Sec. Sys., Inc., 242 F.R.D. 530, 536 (N.D. Cal. 2007)). At that stage, the court evaluates the collective action under a stricter standard

for "similarly situated." Lewis, 669 F. Supp. 2d at 1127.  At that point, the court considers several factors, "including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit."  Id.  "Considerations involving the merits of claims are more appropriately addressed at the second stage of the analysis when [fewer] facts are in dispute."  Kellgren v. Petco Animal Supplies, Inc., No. 13CV644 L KSC, 2015 WL 5167144, at *4 (S.D. Cal. Sept. 3, 2015).

## III. DISCUSSION

To show that certification is appropriate, Plaintiffs "must provide substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan."  Saleh v. Valbin Corp., 297 F. Supp. 3d 1025, 1033 (N.D. Cal. 2017) (internal quotations and citations omitted).  Stated differently, Plaintiffs must show that there is "some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Russell v. Wells Fargo & Co., No. 07-CV-3993-CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008).  Plaintiffs argue that they have offered more than sufficient evidence to show that PwC deliberately recruits and hires younger workers to the detriment of older workers, and that these documents, witness declarations, and statistical analyses "bind[] together" the class members' claims and make collective adjudication appropriate.  ECF No. 198 at 28.

PwC argues that this evidence does not show a company-wide policy or practice.  The company describes ageist comments by PwC personnel as "anomalous."  ECF No. 211 at 13-14.  PwC focuses on minor differences between the experiences of the declarants, for example that "some applied through their colleges despite being over 40, while others applied to Associate-level positions online rather than on campus," or that "some declarants attended PwC recruiting events and felt ignored or unwelcome, while others attended similar events and were encouraged to apply."  Id. at 10-11.  Finally, PwC notes that Dr. Neumark's statistical evidence is subject to alternative interpretations that are inconsistent with liability.  Id. at 16-18.

These differences, while perhaps significant at a later stage of the case, are insufficient to defeat conditional certification. In Heath v. Google, an ADEA case alleging age discrimination in hiring computer engineers, the defendant made similar arguments in opposing conditional certification. 215 F. Supp. 3d at 854 (arguing that the only uniform policy is an antidiscrimination policy, and that age-related comments by recruiters and interviews were mere "stray remarks"). That court concluded that the defendant's arguments went to the merits and should be addressed at a future stage. Id.; see also c.f. Deatrick v. Securitas Sec. Servs. USA, Inc., No. 13-CV-05016-JST, 2014 WL 5358723, at *4 (N.D. Cal. Oct. 20, 2014) (reserving the consideration of "disparate factual and employment settings" and "various defenses available to the defendant with respect to each plaintiff" for the second stage of the certification process). Here, the Court likewise concludes that Plaintiffs have adequately shown a uniform decision, policy, or plan on the basis of PwC's centralized and uniform hiring policies, and the substantial evidence of age disparities in hiring. ECF No. 198 at 13-25 (including declarations, PwC human resources policy documents, and statistical analyses showing a central uniform hiring policy which results in age disparities in hiring). PwC's arguments to the contrary would be better addressed to the second stage of the proceedings.

The Court's inquiry does not end there, however. In addition to a showing that "the putative class members were together the victims of a single decision, policy, or plan," Plaintiffs must show at this stage that they are "generally comparable to those they seek to represent." Villa v. United Site Servs. of Cal., No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012). Plaintiffs seek to certify a collective of "all individuals aged 40 and older who, from October 18, 2013 forward, applied or attempted to apply but were not hired for a full-time Covered Position (Associate, Experienced Associate, and Senior Associate) in the Tax or Assurance lines of service." ECF No. 198 at 26-27. PwC argues that under Plaintiffs' broad proposed class, "unqualified applicants . . . are not similarly situated to Chapman and Rabin, who allege they were qualified for the positions to which they applied," and received an interview.

ECF No. 211 at 18.[7]  Plaintiffs do not dispute that their proposed collective includes unqualified applicants.

As to this point, PwC's arguments are more persuasive.  The difference between Rabin and Chapman on the one hand, and facially unqualified applicants on the other, prevents the Court from conditionally certifying the class.  "Although the standard for conditional certification at the notice-stage is lenient, there *is* a standard."  Heath, 215 F. Supp. 3d at 850 (emphasis added).  A plaintiff "need not show that his position is or was *identical* to the putative class members' positions; a class may be certified . . . if the named plaintiff can show that his position was or is *similar* to those of the absent class members."  Labrie v. UPS Supply Chain Sols., Inc., No. C-08-3182 PJH, 2009 WL 723599, at *4 (N.D. Cal. Mar. 18, 2009) (citing Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006)) (emphasis added).  Chapman and Rabin cannot make this showing, because they are not similarly situated to facially unqualified applicants.

PwC requires applicants to have a degree in a relevant field, have earned a minimum undergraduate GPA, and, for Experienced and Senior Associate positions, relevant work experience.  ECF No. 198-7 at 1-41.  PwC does an initial screen for basic qualifications, and only interviews candidates who pass the initial screen.  ECF No. 212-3 at 24-25.  This initial screen significantly narrows the pool of applicants.  ECF No. 211 at 21.  Chapman and Rabin were facially qualified: they possessed a college degree in a relevant major, had attained the required GPA, and had passed the CPA examination.  ECF No. 198-8 at 61, 208.  As such, they passed the initial screen and received interviews.  Id.  Not only will the inquiry as to their claims be different from the one as to unqualified applicants' claims, but it is hard to imagine how unqualified applicants could ever be part of the class, given that an ADEA plaintiff "must show, among other things, that he was qualified for the position."  Heath, 215 F. Supp. 3d at 857.

This case is like Heath.  In that case, the court considered a motion to conditionally certify an

---

[7] PwC makes additional arguments against certification including: (1) that campus recruiting is lawful, ECF No. 211 at 10; (2) that many recruiters do not know applicants' age when they reject them, Id. at 24-25; and (3) that it is legal to conduct a generation focused workforce study, ECF No. 212-3 at 11.  The Court declines to address these arguments because a discussion of the merits is not appropriate at this stage.  Heath, 215 F. Supp. 3d at 855.

9

age discrimination collective action against Google. Named plaintiff Cheryl Fillekes sought to certify a class under the FLSA consisting of persons over 40 who interviewed in-person for certain positions at Google. Id. at 853. The district court conditionally certified that class. Another plaintiff, Robert Heath, sought to conditionally certify a different class consisting of "all applicants" for certain specified jobs from 2010 to the present "who were 40 years of age or older at the time of their application[,] and who were rejected for the position." Id. at 855. For that proposed class, there was no requirement that class members have been invited for an in-person interview or passed any kind of screening. The district court declined to certify that class because although Heath was facially qualified, the "proposed class would include an unknown number of applicants who demonstrate no plausible qualifications for the job." Id.; see also Trinh v. JP Morgan Chase & Co., No. 07-CV-1666, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) (declining to certify collective for failure to show Plaintiffs were similarly situated to class members). The court noted that "there are likely to be wide disparities in the class members' qualifications and/or experiences" such that certification was inappropriate. Heath, 215 F. Supp. 3d at 857-58.[8]

Similarly here, it is clear that facially unqualified applicants are included in Plaintiffs' proposed class. "[Rabin's] vast class would include every individual applicant over the age of 40 without regard to their qualifications, including, for example, a lawyer applying for [an Experienced Associate]." Id. at 857. Because Plaintiffs Rabin and Chapman were facially qualified when they applied, ECF No 198-8 at 61, 208, the Court concludes they are not substantially similar to facially unqualified applicants.

Plaintiffs argue on reply that limiting the class to qualified applicants prevents them from attacking discrimination in the initial screening process itself. ECF No. 218 at 19-20. They note that PwC recruiters are permitted to exercise discretion in the application of the screening criteria, such that "an offer can be extended to a candidate with any GPA," and that while "[m]ajors *should*

---

[8] The collective action the court declined to certify in Heath was *narrower* than Plaintiffs' proposed collective. The plaintiff in that case sought to certify a collective of all rejected applicants for particular positions within Google who were over 40. Heath, 215 F. Supp. 3d at 855. In addition to all rejected applicants over 40, the proposed class in this case includes deterred *non-applicants* over 40. ECF No. 198 at 26-27.

10

be relevant to the specific [line of service] desired," and that "*[t]ypical* majors are Accounting, Finance, Business, and MIS/Computer Science," no particular undergraduate major is actually required. Id. (quoting Exs. 153, 154) (emphasis added by Plaintiffs). They allege that the screening process itself is another mechanism by which PwC discriminates against older applicants, given that pre-interview rejection rates are higher for older applicants than younger ones. Id. at 19. While there may be merit to Plaintiffs' claims about the screening process – a question the Court does not decide – the fact remains that neither Rabin nor Chapman is typical of a facially unqualified applicant. Plaintiffs must find another way to challenge discrimination in the initial screen, either through its existing named plaintiffs – who were rejected at the initial screening stage for some jobs, although they were facially qualified – or through a different named plaintiff, if they wish to do so.[9]

Likewise, Rabin and Chapman are not similarly situated to potential class members who were deterred from applying, because they *did* apply. ECF No. 212-3 at 28. In fact, Plaintiffs do not identify any individual deterred from applying who was over forty. ECF No. 198-8 at 171 (declarant Salvador Maciel explaining he was deterred from applying just before his 40th birthday; all other declarants applied). Other courts in this circuit have concluded that plaintiffs who applied could not represent those deterred from applying in an ADEA collective certification case because they were not similarly situated. Pines v. State Farm Gen. Ins. Co., No. SACV89-631AHS(RWRX), 1992 WL 92398, at *12 (C.D. Cal. Feb. 25, 1992).

In their reply brief and at the hearing on this motion, Plaintiffs attempted to recast "deterred" applicants as those who actually applied, but were steered away from covered positions into seasonal positions, and those who expressed interest in applying, but whom PwC steered away. ECF No. 218 at 20; ECF No. 231 at 36 (arguing that plaintiff Rabin should be considered a "deterred applicant" because "[a] recruiter reached out to him and steered him towards one of these FTN roles as opposed to inviting him to a full-time covered position"). As an initial matter,

---

[9] While Rabin and Chapman did not pass the initial screen or receive an interview for some applications, ECF No. 198-8 at 61, 208, they were facially qualified on each occasion they applied because they possessed the requisite GPA, degree, and other qualifications.

11

this new definition is not consistent with either the complaint or the dictionary. The complaint states that "PwC's policies and practices have the effect of *deterring* prospective applicants ages 40 and older *from applying* and denying job opportunities to those individuals ages 40 and older who do apply." ECF No. 42 ¶ 11; see also id. ¶ 13 (same). And Merriam-Webster defines "deter" to mean "to turn aside, discourage, or prevent from acting." Merriam-Webster's Collegiate Dictionary 340 (11th ed. 2012). More importantly, Rabin and Chapman are not similarly situated to the class they seek to represent because they did in fact apply to covered positions. ECF No. 198-8 at 61, 208.[10]

Because Plaintiffs are not similarly situated to the class they seek to represent, the Court denies the motion to certify the proposed collective. The Court will not attempt to narrow the Plaintiffs' proposed class to cure the defects the Court identifies in this order. Rather, the Court denies the motion without prejudice so that Plaintiffs can propose a class to which they are similarly situated, and Defendants can defend against that proposed class. See Rivera v. Saul Chevrolet, Inc., No. 16-CV-05966-LHK, 2017 WL 3267540, at *11 (N.D. Cal. July 31, 2017); see also Heath, 215 F. Supp. 3d at 858 (rejecting Plaintiff's request to narrow a class if the court concluded Plaintiff was not substantially similar to that class because to "do so would improperly prevent [Defendant] from identifying infirmities in such an alternative definition and deprive the Court of sufficient evidence and argument on which to base such a determination").

///

---

[10] The Court need not address the merits at this stage but notes that little case law supports the proposition that deterred applicants can maintain an ADEA collective action. Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1102 (C.D. Cal. 2002) (dismissing without prejudice because the court was "highly skeptical" of plaintiffs' ability to plead an ADEA collective on the basis of deterred applicants but allowing plaintiffs to amend so individual applicants could attempt to plead futility of applying); Pines, 1992 WL 92398, at *12 (declining to certify deterred applicants). But see Hyman v. First Union Corp., 982 F. Supp. 1, 8 (D.D.C. 1997) (concluding that an employee who expressed interest in applying to a position but was told he was overqualified could be added to an ADEA collective action).

As Plaintiffs admit, "identifying some types of deterred applicants could [also] pose ascertainability challenges." ECF No. 218 at 20. Plaintiffs argue their class is ascertainable nonetheless because PwC maintains a list of potential applicants in its "Smashfly" database, which tracks individuals interested in working at PwC. Id. at 21-22. But the Court need not address the question now because it concludes the class cannot be conditionally certified for other reasons.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the motion without prejudice. Plaintiffs may file an amended motion for collective certification within thirty (30) days. Failure to cure the deficiencies identified in this order or failure to file a subsequent motion within 30 days will result in a denial with prejudice of conditional certification of FLSA collective action.

**IT IS SO ORDERED.**

Dated: July 26, 2018

JON S. TIGAR
United States District Judge

13