UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RABIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>    Defendant. | Case No. 16-cv-02276-JST<br><br>**ORDER GRANTING RENEWED MOTION FOR COLLECTIVE CERTIFICATION**<br><br>Re: ECF No. 241<br><br>**<u>FILED UNDER SEAL</u>** |

Before the Court is Plaintiffs Steve Rabin and John Chapman's renewed motion for conditional certification of their proposed collective action. ECF No. 241. They seek to certify a class of older applicants for employment at Defendant PricewaterhouseCoopers, LLC ("PwC"), alleging that such applicants were subject to age discrimination. Because the Court concludes that Plaintiffs' revised collective definition has cured the deficiencies identified in the Court's earlier order denying collective certification, *see* ECF No. 236, the Court will grant the motion.[1]

I.  **BACKGROUND**

Plaintiffs filed this putative collective action on April 27, 2016. ECF No. 1. They allege that PwC "engag[es] in an intentional, companywide, and systemic policy, pattern, and/or practice of discrimination against . . . applicants ages 40 and older" and "maintain[s] discriminatory policies, patterns, and/or practices that have an adverse impact on [older] applicants." ECF No. 42 ¶ 115. Plaintiffs assert that PwC "maintains hiring policies and practices for giving preference to

---

[1] The Court has filed this order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this order, the parties shall provide the Court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and for which the parties still request the material be sealed. The Court will then issue a redacted version of the order.

younger employees that result in the disproportionate employment of younger applicants." *Id.* ¶ 6.

Plaintiff Steve Rabin relates his attempts to obtain an associate position at PwC from 2013 to 2016, beginning when he was 50 years old. ECF No. 241-3 at 184-86. Rabin declares that his education and work experience – including graduating with distinction from an MBA program with an accounting concentration, holding a CPA license in two states, and providing accounting services for over ten years – more than qualified him for an associate position at PwC. *Id.* at 184. Based on a PWC manager's interview questions about Rabin's ability to "fit in" with younger employees, combined with the experience of being unable to apply for a position listed on PwC's "campus" recruiting website without a college email or mailing address, Rabin believes that PwC discriminated based on his age in failing to hire him. *Id.* at 186. Plaintiff John Chapman describes similar experiences: He applied to numerous positions at PwC from the ages of 45 to 48 and was not hired, despite being qualified for those positions. *Id.* at 51-52. Chapman relates interactions with PwC employees, including current associates, an interviewer, and a campus recruiter, that made him believe that "PwC maintains a culture of favoring younger applicants." *Id.* at 52.

Plaintiffs previously sought to certify a collective action of "all individuals aged 40 and older who, from October 18, 2013 forward, applied or attempted to apply but were not hired for a full-time Covered Position (Associate, Experienced Associate, and Senior Associate) in the Tax or Assurance lines of service." ECF No. 198 at 26-27. The Court denied the motion because Rabin and Chapman were not substantially similar to either unqualified applicants or deterred applicants, two groups that fell within their original collective definition proposal. ECF No. 236.

Plaintiffs now bring a renewed motion for collective certification, proposing a collective action open to "[a]ll individuals who, from October 18, 2013 forward, applied for a Covered Position (Associate, Experienced Associate, and Senior Associate) in PwC's Tax or Assurance lines of service, met the minimum qualifications for the position to which they applied, were age 40 or older at the time of application, and were not hired." ECF No. 246-4 at 25. Because this revised definition excludes unqualified and deterred applicants, Plaintiffs urge that certification is now appropriate. *Id.* PwC opposes the motion, arguing that Plaintiffs have failed to offer "some reliable and verifiable way to identify who 'met the minimum qualifications.'" ECF No. 249 at 6.

2

## II. LEGAL STANDARD

Plaintiffs seek collective certification of their Age Discrimination in Employment Act ("ADEA") case under the standards set forth under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The ADEA incorporates the collective action procedures of FLSA, set forth in 29 U.S.C. § 216(b). *See* 29 U.S.C. § 626(b); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1126 n.1 (N.D. Cal. 2009) ("[B]ecause ADEA incorporates § 16(b) of the Fair Labor Standards Act into its enforcement scheme, the same rules govern judicial management of collective actions under both statutes.").

29 U.S.C. § 216(b) provides that actions against employers may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." A suit brought on behalf of other employees is known as a "collective action," a type of suit that is "fundamentally different" from class actions. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citation omitted); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018) (describing collective actions and class actions as "creatures of distinct texts . . . that impose distinct requirements"). For example, unlike in class actions, members of a collective action must file a "consent to sue" letter with the court in which the action is brought, creating an opt-in class. 29 U.S.C. § 216(b). Also different is that "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Genesis*, 569 U.S. at 75. "A collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Campbell*, 903 F.3d at 1105. Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Collective certification requires a showing that the potential class members are "similarly situated." *Lewis*, 669 F. Supp. 2d at 1127 (citing 29 U.S.C. § 216(b)). A majority of courts, including district courts in this circuit, follow a two-step process for determining whether a collective is "similarly situated." *See Campbell*, 903 F.3d at 1100; *Lewis*, 669 F. Supp. 2d at 1127; *see also Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010).

At the first step, referred to as "the notice stage" and "preliminary certification," the court considers whether the plaintiff has made a sufficient showing that the collective is "similarly situated" to justify the conditional certification of the class and the sending of notice of the action to potential class members. *Campbell*, 903 F.3d at 1100; *Lewis*, 669 F. Supp. 2d at 1127. "At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. Given this limited evidence, "the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *see also Lewis*, 669 F. Supp. 2d at 1127; *Campbell*, 903 F.3d at 1109 (describing the standard of review on preliminary certification as "loosely akin to a plausibility standard, commensurate with the stage of the proceedings"). "The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013) ("[C]ourts need not even consider evidence provided by defendants at this stage."). "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109.

"At the second step of the two-step inquiry, 'the party opposing the certification may move to decertify the class once discovery is complete.'" *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 852 (N.D. Cal. 2016) (quoting *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007)). At that stage, the court evaluates the collective action under a stricter standard for "similarly situated." *Lewis*, 669 F. Supp. 2d at 1127; *see also Campbell*, 903 F.3d at 1110 ("The district court will then take a more exacting look at the plaintiffs' allegations and the record."). At that point, the court considers several factors, "including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Lewis*, 669 F. Supp. 2d at 1127.

4

## III. DISCUSSION

Plaintiffs now seek certification of a nationwide ADEA collective open to "[a]ll individuals who, from October 18, 2013 forward, applied for a Covered Position (Associate, Experienced Associate, and Senior Associate) in PwC's Tax or Assurance lines of service, met the minimum qualifications for the position to which they applied, were age 40 or older at the time of application, and were not hired." ECF No. 246-4 at 25. Based on the limited discovery available at this point, Plaintiffs assert that "minimum qualifications" for entry-level Associate positions consist of "a bachelor's degree in a relevant field, a GPA of 3.0 or higher, and a commitment to obtain a CPA license." *Id.* For Experienced Associate and Senior Associate roles, Plaintiffs report that the minimum qualifications are "a CPA license or commitment to obtain one, and additional relevant experience (1-2 years for Experienced Associates, and 2-4 years for Senior Associates)." *Id.*

The Court's earlier order denying certification employed a two-part test for conditional collective certification. First, Plaintiffs were required to "provide substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy or plan." ECF No. 236 at 7 (quoting *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1033 (N.D. Cal. 2017) (internal quotation marks omitted)). Second, "Plaintiffs must show at this stage that they are 'generally comparable to those they seek to represent.'" ECF No. 236 at 8 (quoting *Villa v. United Site Servs. of Cal.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012)).

As Plaintiffs point out, ECF No. 246-4 at 24-25, the Court already determined "that Plaintiffs have adequately shown a uniform decision, policy, or plan on the basis of PwC's centralized and uniform hiring policies, and the substantial evidence of age disparities in hiring." ECF No. 236 at 8. Plaintiffs argue that this holding is now the law of the case. ECF No. 246-4 at 24. Because "reconsideration of legal questions previously decided should be avoided," the law of the case doctrine generally precludes courts from reconsidering issues already decided in the same case. *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (citation omitted); *see also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Thus, Plaintiffs urge that the only question

5

now before the Court with regard to the appropriateness of conditional certification is whether Plaintiffs are "generally comparable" to those they seek to represent. *See* ECF No. 246-4 at 29. The Court rejected Plaintiffs' first proposed collective definition on the grounds that Rabin and Chapman were not generally comparable – and thus not similarly situated – to facially unqualified applicants or to applicants who were deterred from applying in the first place. ECF No. 236 at 11. Because the collective Plaintiffs now propose excludes unqualified and deterred applicants, Plaintiffs insist that the Court should grant conditional certification and allow notice to be disseminated to the potential collective members. ECF No. 246-4 at 30.

Courts retain discretion to depart from the law of the case where, among other things, "an intervening change in the law has occurred." *Alexander*, 106 F.3d at 876. Here, in the time since the Court's prior order, Plaintiffs' filing of their renewed motion for collective certification, and PwC's filing in opposition, the Ninth Circuit has clarified the standards applicable to the "similarly situated" requirement. It is now clear that to be "similarly situated" under the FLSA (and thus, the ADEA), "party plaintiffs must be alike with regard to some *material* aspect of their litigation. . . . If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Campbell*, 903 F.3d at 1114. PwC accepts that, after *Campbell*, "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." ECF No. 253-1 at 2 (quoting *Campbell*, 903 F.3d at 1117). But PwC insists that this holding does not change the question now before the Court, because "facially unqualified applicants are not similarly situated to facially qualified applicants, and so should be excluded from the notice process." ECF No. 253-1 at 3.

PwC's primary argument in opposition to the motion is that conditional certification must be denied because Plaintiffs have failed to "define a collective sufficiently narrowly that notice will be limited to persons who are similarly situated to the named Plaintiffs." ECF No. 249 at 6-7. PwC emphasizes the difficulties inherent in "[d]etermining whether a given applicant meets basic qualifications." *Id.* at 10. According to PwC, this process requires "a mix of individualized quantitative and qualitative assessments," and "basic qualifications vary from position to

6

position." *Id.* In reply, Plaintiffs propose that, once the collective is certified, the parties should collaborate to review PwC's applicant data and internal guidance regarding minimum qualifications to develop a notice list, excluding those who facially lack the minimum qualifications. ECF No. 151-10 at 8-9. Under Plaintiffs' proposal, the notice will include an attachment explaining PwC's minimum qualifications for the relevant positions. *Id.* at 9. Individuals who review the attachment and determine that they meet the collective definition may then choose whether to opt in. *Id.* In response, PwC insists that "nothing in *Campbell* suggests the Court should . . . approve a collective definition that would lead to numerous individualized factual disputes (likely in the thousands) about whether specific applicants were facially qualified and therefore satisfy Plaintiffs' proposed collective definition." ECF No. 253-1 at 3.

Having considered the parties' arguments for and against certification, the Court agrees with Plaintiffs' characterization of the inquiry at this phase. "[T]he two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Campbell*, 903 F.3d at 1110. The Court has already found that "Plaintiffs have adequately shown a uniform decision, policy, or plan on the basis of PwC's centralized and uniform hiring policies." ECF No. 251-10 at 10 (quoting ECF No. 236 at 8). In light of that factual finding, the evidence underlying it, and Plaintiffs' subsequent revisions to their collective definition to exclude unqualified and deterred applicants, the Court concludes that the collective Plaintiffs now propose is comprised of members who are "similarly situated" insofar as they share similar issues of law and fact material to their ADEA claims. Because Plaintiffs' proposed collective thereby meets the standards for conditional, notice-stage certification as set forth in *Campbell*, the Court grants the motion for collective certification. The Court will certify a collective action open to "[a]ll individuals who, from October 18, 2013 forward, applied for a Covered Position (Associate, Experienced Associate, and Senior Associate) in PwC's Tax or Assurance lines of service, met the minimum qualifications for the position to which they applied, were age 40 or older at the time of application, and were not hired." Should it become clear that Plaintiffs' proposed definition is indeed unworkable, as PwC alleges, the two-step collective

certification process provides a ready solution: PwC may move to decertify the class. *See Campbell*, 903 F.3d at 1117 ("The district court may be able to decertify where conditions make the collective mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed collectively based on its perception of likely inconvenience.").

Having so ruled, the Court cannot yet order notice to potential members of the collective action because – as the parties themselves agree – further meet-and-confer efforts are required before they and the Court can determine who will receive such notice. *See* ECF No. 249 at 25 (Defendant urging that "the parties should be directed to meet and confer promptly regarding the form and content of the proposed notice, if any collective is conditionally certified"); ECF No. 263 at 8 (Plaintiffs' counsel stating "what we'd ask is for today Your Honor . . . to certify the collective and then allow a process where the parties could implement, essentially, the conditional certification order by having some transparency, reviewing the data, and agreeing on a process"); *see also Heath v. Google Inc.*, 215 F. Supp. 3d 844, 859 (N.D. Cal. 2016) (directing parties to meet and confer on "the proper form and content of the notice to be sent to potential opt-ins, . . . on the appointment of a third-party administrator to issue the notice and process opt-ins," and on how to determine a proxy for applicants' age).

Accordingly, the parties are directed to meet and confer to to develop a notice list, form of notice, opt-in form, and attachment describing the minimum qualifications for the positions at issue. To streamline these negotiations, the Court makes the following observations:

- The process of determining who will receive notice will not proceed on an application-by-application basis, as PwC's counsel suggested at the motion hearing. *See* ECF No. 263 at 26-28. Such a process would defeat the purposes of good case management which are central to the collective action process. See *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (noting that "the proper means of managing a collective action – the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed – is largely a question of case management" (citations and quotation marks omitted)).

- The collective action will not be limited only to those who received an interview. *See* ECF No. 263 at 38.

8

- That the Rejection Reason field within PwC's Source1 database states "does not meet basic qualifications," standing alone, will not disqualify someone from receiving notice. *See* ECF No. 263 at 25-26; *id.* at 50-51.

- The parties may propose fields within PwC's Source1 database in addition to the field "meets basic qualifications." ECF No. 263 at 42.

- The parties' joint proposal or competing proposals for disseminating notice to the approved collective are due by April 25, 2019. If the parties submit competing proposals, the Court will endeavor to choose, in all respects, the single proposal it concludes is most reasonable. *See* Michael Carrell & Richard Bales, *Considering Final Offer Arbitration to Resolve Public Sector Impasses in Times of Concession Bargaining,* 28 Ohio St. J. on Disp. Resol. 1, 20 (2013) ("In baseball arbitration . . . the parties . . . have every incentive to make a reasonable proposal to the arbitrator because the arbitrator will choose the more reasonable offer."). There will be no further hearing on the question of notice unless the Court subsequently so orders.

## CONCLUSION

For the foregoing reasons, the Court grants the motion and conditionally certifies the collective action. The parties' joint proposal for notifying the collective is due within 45 days.

**IT IS SO ORDERED.**

Dated: March 28, 2019

JON S. TIGAR
United States District Judge