Jahan C. Sagafi (Cal. Bar No. 224887)
Laura Iris Mattes (Cal. Bar No. 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
Melissa L. Stewart (admitted *pro hac vice*)
Daniel S. Stromberg (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: mstewart@outtengolden.com
E-mail: dstromberg@outtengolden.com

Daniel Kohrman (admitted *pro hac vice*)
Laurie McCann (admitted *pro hac vice*)
Dara Smith (admitted *pro hac vice*)
AARP FOUNDATION LITIGATION
601 E. Street, N.W.
Washington, D.C. 20049
Telephone: (202) 434-2060
Facsimile: (202) 434-2082
E-mail: dkohrman@aarp.org
E-mail: lmccann@aarp.org
E-mail: dsmith@aarp.org

Lucy Brierly Bansal (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW, Ste 200W
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: lbansal@outtengolden.com

*Additional counsel on next page.*

*Attorneys for Plaintiffs and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| STEVE RABIN and JOHN CHAPMAN, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>Defendant. | Case No. 16-cv-02276-JST<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL ORDER**<br><br>Judge:      Jon S. Tigar<br>Hearing Date:  March 11, 2020<br>Hearing Time:  2:00 p.m.<br>Courtroom:    Courtroom 6, 2nd Floor |

Jennifer L. Liu (Cal. Bar No. 279370)
THE LIU LAW FIRM, P.C.
1170 Market Street, Suite 700
San Francisco, CA 94102
Telephone: (415) 896-4260
Facsimile: (415) 231-0011
E-mail: jliu@liulawpc.com

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 11, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 – 2nd Floor of this Court's Oakland Courthouse, located at 1301 Clay Street, Oakland, California, Plaintiffs Steve Rabin and John Chapman, individually and on behalf of all others similarly situated ("Plaintiffs") will, and hereby do, move this Court for the following relief with respect to the Collective and Class Action Settlement Agreement (the "Settlement," attached as Exhibit A to the Declaration of Jahan C. Sagafi in Support of Motion for Preliminary Settlement Approval Order ("Sagafi Decl.")) with Defendant PricewaterhouseCoopers LLP ("PwC"):

    1.    that the Court certify, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3);

    2.    that the Court approve prospective relief under Federal Rule of Civil Procedure 23(b)(2);

    3.    that the Court appoint Plaintiffs as representatives of the Class;

    4.    that the Court appoint Plaintiffs' attorneys as Class Counsel;

    5.    that the Court grant preliminary approval of the Settlement;

    6.    that the Court approve mailing to the Class Members the proposed Class Notice;

    7.    that the Court appoint JND Legal Administration as the Settlement Administrator; and

    8.    that the Court schedule a hearing for final approval of the Settlement.

This Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

The Motion is based on: this notice; the following memorandum in support of the motion, the Sagafi Decl. (which annexes a copy of the Settlement); the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.  This motion is unopposed by PwC.

1    Dated: March 3, 2020                    Respectfully submitted,

2                                            By: /s/ *Jahan C. Sagafi*

3                                                Jahan C. Sagafi

4                                            Jahan C. Sagafi (Cal. Bar No. 224887)
                                             Laura Iris Mattes (Cal. Bar No. 310594)
5                                            OUTTEN & GOLDEN LLP
                                             One California Street, 12th Floor
6                                            San Francisco, CA 94111
                                             Telephone: (415) 638-8800
7                                            Facsimile: (415) 638-8810
                                             E-mail: jsagafi@outtengolden.com
8                                            E-mail: imattes@outtengolden.com

9
                                             Adam T. Klein (admitted *pro hac vice*)
10                                           Melissa L. Stewart (admitted *pro hac vice*)
                                             Daniel Stromberg (admitted *pro hac vice*)
11                                           OUTTEN & GOLDEN LLP
                                             685 Third Avenue, 25th Floor
12                                           New York, NY 10017
                                             Telephone: (212) 245-1000
13                                           Facsimile: (646) 509-2060
                                             E-mail: atk@outtengolden.com
14                                           E-mail: mstewart@outtengolden.com
15                                           E-mail: dstromberg@outtengolden.com

16
                                             Lucy Brierly Bansal (admitted *pro hac vice*)
17                                           OUTTEN & GOLDEN LLP
                                             601 Massachusetts Ave. NW, Ste 200W
18                                           Washington, DC 20001
                                             Telephone: (202) 847-4400
19                                           Facsimile: (646) 952-9114
                                             E-mail: lbansal@outtengolden.com
20

21                                           Daniel Kohrman (admitted *pro hac vice*)
                                             Laurie McCann (admitted *pro hac vice*)
22                                           Dara Smith (admitted *pro hac vice*)
                                             AARP FOUNDATION LITIGATION
23                                           601 E. Street, N.W.
                                             Washington, D.C. 20049
24                                           Telephone: (202) 434-2060
                                             Facsimile: (202) 434-2082
25                                           E-mail: dkohrman@aarp.org
                                             E-mail: lmccann@aarp.org
26                                           E-mail: dsmith@aarp.org
27

28

MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 16-CV-02276-JST

Jennifer L. Liu (Cal. Bar No. 279370)
THE LIU LAW FIRM, P.C.
1170 Market Street, Suite 700
San Francisco, CA 94102
Telephone: (415) 896-4260
Facsimile: (415) 231-0011
E-mail: jliu@liulawpc.com

*Attorneys for Plaintiffs and Proposed Class and Collective Members*

1

## **<u>TABLE OF CONTENTS</u>**

2  MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION ..................................... - 1 -

3  I.  INTRODUCTION ..................................................................................... - 1 -

4  II.  BACKGROUND ....................................................................................... - 3 -

5  A.  Factual and Procedural Background ............................................. - 3 -

6  III.  THE PROPOSED SETTLEMENT ............................................................ - 4 -

7  A.  The Settlement Classes .................................................................. - 4 -

8  B.  Settlement Overview ..................................................................... - 5 -

9  1.  Monetary Relief .................................................................. - 5 -

10  2.  Programmatic Relief ........................................................... - 8 -

11  C.  Class Representative and Declarant Service Awards .................... - 9 -

12  D.  Attorneys' Fees and Costs ............................................................ - 10 -

13  E.  Settlement Administration Costs .................................................. - 11 -

14  IV.  ARGUMENT ........................................................................................... - 12 -

15  A.  Certification of the Rule 23 Classes Is Proper ............................ - 13 -

16  1.  Rule 23(a) Is Satisfied ........................................................ - 13 -

17  2.  Certification Is Proper Under Rule 23(b)(3) ...................... - 15 -

18  3.  Rule 23(b)(2) is Satisfied ................................................... - 16 -

19  4.  Plaintiffs' Counsel Should Be Appointed as Class Counsel ......... - 16 -

20  B.  The Federal ADEA Collective Has Been Certified ..................... - 17 -

21  C.  The Settlement Is Fair, Reasonable, And Adequate ..................... - 17 -

22
23  1.  Plaintiffs' Case Faced Significant Hurdles on Liability, Class Certification, And on Appeal ............................................. - 18 -

24  2.  The Settlement Amount is Appropriate .............................. - 18 -

25  3.  The Extent of Discovery Supports Settlement ................... - 21 -

26  4.  Counsel's Experience And Views Support Approval ......... - 22 -

27  5.  The Parties Participated in Arms-Length Negotiations Before Two Experienced Neutral Mediators ............................. - 22 -

28

D.      The Proposed Notice Is Clear And Adequate ........................................... - 23 -

V.      A FINAL APPROVAL HEARING SHOULD BE SCHEDULED .................... - 23 -

VI.     CONCLUSION ......................................................................................... - 24 -

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Abdullah v. U.S. Sec. Associates,*
  731 F.3d 952 (9th Cir. 2013) ................................................................................. 13

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................... 14, 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ......................................................................................... 15

*Aquino v. CEVA Logistics U.S. Inc.,*
  No. 5:14-cv-01795-VAP-(DTBx) (C.D. Cal.) ...................................................... 8

*Astarita v. Pinnacle Entertainment, Inc.,*
  No. 4:15-cv-00095-GAF (W.D. Mo.) ................................................................. 7

*Bates v. United Parcel Serv.,*
  204 F.R.D. 440 (N.D. Cal. 2001) ...................................................................... 16

*Berndt v. California Dep't of Corrections,*
  No. 03–cv–3174–PJH, 2012 WL 950625 (N.D. Cal. Mar. 2, 2012).................... 18

*Betancourt v. Advantage Human Resourcing, Inc.,*
  No. 14–cv–01788–JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) .............. 17-18

*Blocher, et al. v. Landry's Inc.,*
  No. 8:14-cv-3213-T-35JSS (M.D. Fl.)............................................................ 7-8

*Buccellato v. AT&T Operations, Inc.,*
  No. 10 Civ. 00465, 2011 WL 3348055 (N.D. Cal. June 30, 2011).................... 10

*Calibuso v. Bank of Am. Corp.,*
  299 F.R.D. 359 (E.D.N.Y. 2014) ...................................................................... 20

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.,*
  No. 15–cv–0224–YGR, 2016 WL 314400 (N.D. Cal. 2016).................... 16

*Coates v. Farmers Grp., Inc.,*
  No. 15 Civ, 01913, 2016 WL 5791413 (N.D. Cal. Sept. 30, 2016)........................ 10

*Cotter v. Lyft, Inc.,*
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ............................................................. 19

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
  No. 06-cv-3903-TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)........................ 16

*del Toro Lopez v. Uber Techs., Inc.*,
No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ........................... 6, 12, 14

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
No. 09–cv–5803–EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) .................................. 15

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ...................................................................................... 15

*Fernandez v. Victoria Secret Stores, LLC*,
No. 06 Civ. 04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008).................................... 22

*Galeener v. Source Refrigeration & HVAC, Inc.*,
No. 13-CV-04960-VC, 2015 WL 12976106 (N.D. Cal. Aug. 20, 2015)................................. 9

*Garcia v. Johnson*,
No. 14–cv–01775–YGR, 2015 WL 13387594 (N.D. Cal. Oct. 27, 2015)........................... 16

*Garcia v. Johnson*,
No. 14–cv–01775–YGR, 2015 WL 13439762 (N.D. Cal. Aug. 20, 2015)......................... 16

*Glass v. UBS Fin. Servs., Inc.*,
No. 06 Civ. 4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)......................................... 10

*Gonzalez v. Abercrombie*,
No. 03–cv–02817–SI, ECF No. 125 (N.D. Cal. Apr. 11, 2005) ........................................ 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....................................................................... 12, 13, 14, 17

*Heath v. Google LLC*,
No. 15–cv–01824–BLF, 2019 WL 3842075 (N.D. Cal. Aug. 15, 2019)............................ 12, 20

*Jaffe v. Morgan Stanley & Co.*,
No. 06–cv–3903–TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ................................. 14

*Jarrett, et al. v. GGNSC Holdings L.L.C.*,
No. 12-cv-4105-BP (W.D. Mo.) ........................................................................................ 8

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir.)............................................................................................... 3, 18

*Lewis v. Wells Fargo & Co.*,
No. 08 Civ. 2670, ECF No. 315 (N.D. Cal Apr. 29, 2011)................................................ 10

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982)........................................................................................ 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................................... 21

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 12, 21

*Rabin v. PricewaterhouseCoopers, LLC*,
    No. 16-cv-02276, 2018 WL 3585143 (N.D. Cal. July 26, 2018) .................................. 3

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 17, 21

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) .................................................................................... 2 , 17

*Ross v. U.S. Bank Nat'l Ass'n*,
    No. 07 Civ. 2951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ............................ 10

*Ruch v. AM Retail Grp., Inc.*,
    No. 14–cv–05352–MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ..................... 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................................................... 9

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................ 17

*Tierno v. Rite Aid Corp.*,
    No. 05–cv–02520–TEH, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) .................... 15

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) .................................................................................. 22

*United States v. City of New York*,
    681 F. Supp. 2d 274 (E.D.N.Y. 2010) .......................................................................... 19

*Vedachalam v. Tata Consultancy Servs.*,
    No. 06-cv-0963, 2013 WL 3929129 (N.D. Cal. July 18, 2013) ................................... 10

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) .................................................................................... 3, 18

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ........................................................................................ 15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................... 13

*Walsh v. CorePower Yoga LLC*,
    No. 16–cv–05610–MEJ, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ....................... 14

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .................................................................................... 16

*Walton v. AT&T Corp.*,
   No. 15-cv-03653-VC, ECF No. 221 (N.D. Cal. Feb. 14, 2018) ................................... 9

*Wellens v. Sankyo*,
   No. 13 Civ. 00581, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ........................... 10

*Whiteway v. FedEx Kinko's Office and Print Servs.*,
   No. 05–cv–2320–SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ............... 13, 15

*Wren v. RGIS Inventory Specialists*,
   No. 06–cv–05778–JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................... 22

 **Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... 13

Fed. R. Civ. P. 23(b) ................................................................................................. 14, 15

Fed. R. Civ. P. 23(c) ....................................................................................................... 22

Fed. R. Civ. P. 23(e) ....................................................................................................... 22

Fed. R. Civ. P. 23(g) ....................................................................................................... 16

**Other Authorities**

4 Newberg on Class Actions § 11:22 (4th ed. 2002) ................................................. 12, 17

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004) ...................................... 12

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

## I.   INTRODUCTION

Plaintiffs Steve Rabin and John Chapman ("Plaintiffs"), on behalf of themselves and the proposed Class and Collective Members,[1] and Defendant PricewaterhouseCoopers, LLP ("PwC") (collectively, the "parties"), have negotiated a Settlement of their age discrimination claims on behalf of Older[2] applicants who applied for and were not hired to work in a Covered Position[3] (Associate, Experienced Associate, or Senior Associate in PwC's Tax or Assurance lines of service) during the Covered Period.[4]  Declaration of Jahan C. Sagafi in Support of Motion for Preliminary Settlement Approval Order ("Sagafi Decl.") ¶ 27 Ex. A (Settlement Agreement). This Settlement provides both (a) a common fund of $11,625,000 for the Class Members' benefit (including payment of administration costs, attorneys' fees and costs, and service award payments) and (b) programmatic relief covering various aspects of PwC's employment practices, to be maintained during a two-year implementation period, owned by PwC's Chief Purpose & Inclusion Officer working in concert with an external Implementation Expert.  Specifically, PwC has committed to implementing and enhancing important recruiting and hiring initiatives for the benefit of older applicants, including:  (1) hiring an industrial/organizational expert consultant (the Implementation Expert) to advise on training on age inclusivity for leadership and employees involved in recruiting and hiring as well as other aspects of training, recruiting Older workers, and avoiding age bias in the process, (2) advertising job opportunities to Older workers, taking Class Counsel's recommendations into account, (3) for applicants who have graduated from college, not to ask, pre-offer, for graduation date information or have eligibility limits based on graduation year or age, (4) including age as one aspect of PwC's non-discrimination policy in

---

[1] For ease of reference, Class and Collective Members will be referred to collectively as "Class Members."
[2] For ease of reference, "Older" means individuals aged 40 or older.
[3] Unless otherwise specified herein, all capitalized terms have the meaning defined in the Settlement Agreement, which is attached to the Declaration of Jahan C. Sagafi in Support of Motion for Preliminary Settlement Approval Order ("Sagafi Decl.") as Exhibit A.
[4] October 18, 2013 to January 21, 2020 for Collective Action Plaintiffs and September 8, 2013 to January 21, 2020 for the Rule 23 Classes.

official notifications of that policy,[5] (5) permitting alumni to apply for on-campus openings of Covered Positions, (6) making public and internal statements expressing PwC's commitment to diversity in hiring, including age-diverse photographs and avoiding text showing a lack of support for age-diverse job applicants in its recruiting materials and Careers website, and issuing two joint press releases announcing the settlement, (7) ensuring that the complaint procedure covers age discrimination complaints and providing information to the Implementation Expert about age-related complaints, (8) ownership of implementation by PwC's Chief Purpose & Inclusion Officer, who will meet with the Implementation Expert 6, 12, and 24 months after Finality, (9) a reserve period of 15 months after Finality, during which Claimants who believe they suffered age discrimination or retaliation in not being hired into a Covered Position during that 15-month period can request additional compensation from a separate fund set aside from the Gross Settlement Amount, and (10) continuing jurisdiction by the Court.

The proposed Settlement and this Motion readily satisfy the requirements of Rule 23, the ADEA, Ninth Circuit precedent, and established Northern District practice, including the Class Action Settlement Guidance. *See, e.g.*, *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019). As an initial matter, the litigation has been intense. The parties have zealously litigated the substantive and procedural issues presented by this case, including a determination of whether the ADEA allows Plaintiffs to assert disparate impact hiring claims, whether the case can be conditionally certified as a collective, and various discovery disputes. Discovery has been extensive, including PwC's production of 253,203 documents totaling 1,042,467 pages. The parties have participated in months of settlement negotiations spread across the last year and a half, supervised by two highly experienced mediators – Robert Meyer of JAMS, who has deep experience litigating and mediating complex disputes including in the accounting industry specifically, and David A. Rotman of Mediated Negotiations, who is one of the premier employment discrimination class action mediators in the nation. As more fully discussed below, Plaintiffs respectfully submit that this exceptional Settlement should be preliminarily approved,

---

[5] PwC states that age is already included in PwC's official non-discrimination policy.

1   such that Notice can issue to the Class Members to allow them to comment on the settlement, file

2   claim forms, and/or opt out, as they deem appropriate.

3   **II.    BACKGROUND**

4        **A.    Factual and Procedural Background**

5        On April 27, 2016, Plaintiff Steve Rabin filed the original complaint on behalf of a

6   nationwide ADEA collective and a California class.  On September 8, 2016, John Chapman

7   joined as a plaintiff asserting Michigan class claims.  Plaintiffs allege that PwC discriminated

8   against them and other Older applicants seeking positions in the Covered Positions in violation of

9   the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"),

10  the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, et seq.("FEHA"),

11  the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and

12  the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* ("MCRA").

13       In late 2016, PwC moved for judgment on the pleadings, arguing that the ADEA does not

14  allow for disparate impact claims.  ECF No. 55.  The Court denied PwC's motion, distinguishing

15  the Eleventh Circuit's *en banc* decision in *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958

16  (11th Cir. 2016).  ECF No. 74.  Later, the Seventh Circuit, also *en banc*, agreed with the Eleventh

17  Circuit.  *Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir.), *cert. denied*, 140 S. Ct. 306 (2019).

18       The parties engaged in substantial pre-conditional-certification discovery, with PwC

19  producing 1,042,467 pages of documents through an extensive ESI process.  In addition, PwC

20  produced Class Member and comparator data, from which Plaintiffs made simple calculations of

21  age disparities in PwC's hiring.  Sagafi Decl. ¶ 20.

22       After initially denying Plaintiffs' motion for conditional certification of a nationwide

23  ADEA collective, *Rabin v. PricewaterhouseCoopers, LLC*, No. 16-cv-02276, 2018 WL 3585143,

24  at *4 (N.D. Cal. July 26, 2018), the Court granted Plaintiffs' renewed motion on March 28, 2019,

25  ECF No. 270.  Plaintiffs issued notice to approximately 17,000 potential collective members, and

26  3,456 individuals opted in.  Sagafi Decl. ¶ 21.

27       On September 21, 2018, the parties attended their first full-day mediation, overseen by

28  Robert Meyer of JAMS.  *Id.* ¶ 22.  Although no settlement was reached, the parties continued to

MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 16-CV-02276-JST

negotiate for several months, eventually reaching a tentative agreement to detailed programmatic relief terms. *Id.* ¶ 23. Then, this fall and winter, the parties began to litigate opt-in discovery issues while, in parallel, holding a second round of settlement talks. *Id.* ¶ 24. On January 21, 2020, the parties attended a second full-day mediation with David A. Rotman, one of the preeminent employment class action mediators in the country. *Id.* ¶ 25. At the close of mediation, the parties reached an agreement on the total monetary amount of the Settlement, and over the ensuing three weeks intensively negotiated a term sheet, which was signed on February 17, 2020. *Id.* ¶ 26. On March 2, 2020, the parties executed a long-form Settlement Agreement. *Id.* ¶ 27.

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Classes

For settlement purposes only, PwC agrees to certification of the following classes (collectively, the "Settlement Class"), defined as:

(1) "**California Class**" means all applicants who, between September 8, 2013 and January 21, 2020 (inclusive), (a) applied for and were denied a Covered Position in California or (b) resided in California at the time they applied to a Covered Position and were denied; and were aged 40 or older at the time of application. "**Michigan Class**" means all applicants who, between September 8, 2013 and January 21, 2020 (inclusive), (a) applied for and were denied a Covered Position in Michigan or (b) resided in Michigan at the time they applied to a Covered Position and were denied; and were aged 40 or older at the time of application.

(2) "**Settlement Collective**" means all the applicants (a) who applied to and were denied Covered Positions on or after October 18, 2013, (b) who were aged 40 or older at the time of application, and (c) who opted in to this Litigation pursuant to the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq. ("ADEA") on or before January 21, 2020.

Settlement Agreement §§ 1.3, 1.28, 1.43.  The parties estimate that there are approximately 5,000

Settlement Class Members, including the 3,456 opt-ins.[6]

### B.    Settlement Overview

The Settlement provides two important forms of relief for the Class Members:  (1) a non-reversionary common fund of $11,625,000 to compensate for financial and emotional harm of Class Members who choose to file claim forms ("Claimants") and (2) programmatic relief whereby PwC commits to enhance its recruiting and hiring processes for Older workers who may wish to apply to the Covered Positions in the future.

### 1.    Monetary Relief

The $11,625,000 Settlement Amount will cover: (a) payments to Claimants, including all applicable taxes; (b) Service Awards of $20,000 for each of the two Plaintiffs, plus $2,000 for each of the 28 declarants[7] who agree to sign general releases (for a total of up to $96,000); (c) Class Counsel's fees up to 40% of the Gross Settlement Amount and actual litigation costs and expenses up to $295,000; (d) settlement administration costs, not to exceed $105,330 absent unforeseen circumstances and Court approval, (e) the costs of the Implementation Expert up to $20,000, and (f) a $300,000 reserve fund to compensate Claimants for any alleged and valid age discrimination claims based on PwC's failure to hire them into a Covered Position to which they apply during the 15-month window following Finality.[8]  Settlement Agreement §§ 1.31, 4.2.

---

[6] While the parties know that there are 3,456 individuals who opted into the litigation, they cannot yet know how many absent California and Michigan class members there are, because those class periods extend beyond the period for which the parties have run the date of birth search process using Accurint and Transunion, *see* ECF No. 130.  If the Settlement is preliminarily approved, PwC will provide data to the vendor JND to collect date of birth information to determine how many applicants were Older and therefore Class Members.

[7] The 28 individuals, each of whom submitted a sworn declaration in support of Plaintiffs' motions for collective action certification, are Bon Joon Ahn, Nii-Ama Akuete, James Boyd Bankston, Brian Barnhart, Harry Brown III, Lori Cairns, Dickran Guerguerian, Brian Griffith, Birgit Halliday, Sonya Hearn, James Huffman, Barry Iio, Heather Jackson, Charles Kelly, Kelli King, Sherene Lane-Pryce, Salvador Maciel, Michael Narey, Karl Painter, Ralph Penso, Lynette Rhodes, Girma Tiruneh, Darryl Tolliver, Harry Treinen, Daniela Wells, Cynthia Woolbright, Jocelyn Wooten, and William Zatek.

[8] This "not-to-exceed" cost is consistent with similar work performed by settlement administrators on similar matters.  *See* Sagafi Decl. ¶ 33.

The plan of allocation takes care to allocate money roughly according to Plaintiffs' Counsel's assessment of the strength of each Claimant's litigation position, based on a reasonable number of variables derived from data produced by PwC and input from the Claimants themselves, and evaluated by the Settlement Administrator. Plaintiffs believe that this approach will ensure that Claimants receive an appropriate share of the Net Settlement Fund. PwC does not endorse the plan of allocation or make any judgment regarding a Claimant's appropriate share. Specifically, Claimants' awards will be determined using a point system designed by Plaintiffs' Counsel that balances precision, fairness, and administrability using the following variables: (1) whether they are a California/Michigan opt-in class member (2 points), an opt-in non-class member (i.e., an opt-in from a different state) (1.5 points), or a California/Michigan non-opt-in (i.e., a class member but not an opt-in),[9] (2) a general assessment of the strength of any individual's argument that they were qualified to work at PwC (10x points for those selected by PwC to interview for a Covered Position; and, for the rest, 0x, 1x, 2x, or 3x, as determined by the Settlement Administrator based on basic information provided by the Claimants in their Claim Forms regarding educational background (college, college major, college GPA, graduate school, graduate school GPA) and professional background (whether they had a CPA and their relevant work experience at the time of their last application to a Covered Position)). The Settlement Administrator,[10] in consultation with Class Counsel, will score each Claim Form. Claimants who

---

[9] This approach recognizes that (a) opt-ins are already before the Court (by virtue of the Court's conditional collective action certification), whereas California and Michigan non-opt-ins would not be able to recover money in the lawsuit absent Rule 23(b)(3) certification, (b) ADEA claims provide for liquidated damages, and (c) state law claims add value to the ADEA claims (in the form of greater relief, such as punitive damages and/or emotional distress damages, as well as more settled law enshrining the disparate impact standard).

[10] The parties have selected JND Legal Administration as the Settlement Administrator after a competitive bidding process. *See* Sagafi Decl. ¶ 28. JND has performed excellently for Plaintiffs' counsel several times recently, including in administering the similarly complicated claims process in the *Uber* race and gender discrimination class action settlement before Judge Yvonne Gonzalez Rogers in 2018 (for which the court approved a higher administration fee of $110,000 for approximately 458 class members). *del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *14 (N.D. Cal. Nov. 14, 2018); *see* Sagafi Decl. ¶¶ 29 - 31 (listing cases JND has worked on with Plaintiffs' counsel in the past two years, including *Uber*). Plaintiffs' counsel is confident that JND's familiarity with the class data (because of their administration of the collective action certification notice process in this case) will streamline the administration and avoid unnecessary delays or overages. Sagafi Decl. ¶ 32.

MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 16-CV-02276-JST

receive zero points (because of a 0x multiplier, because their background suggests they would have had a relatively weaker claim in litigation) will receive a Default Award of $200.

Any remainder not claimed will either be redistributed to Claimants *pro rata* or given as a *cy pres* donation to Experience Works, Inc., a nationwide nonprofit dedicated to helping people age with dignity and purpose and improve quality of life through training, community service, and employment.[11]

Claim Forms can be submitted online or by email, mail, or fax.  Consistent with modern best practices, the Settlement Administrator will maintain a website providing the Notice, Claim Form, information about deadlines and other relevant dates, key pleadings and orders, frequently asked questions, and Class Counsel's contact information.

The release is appropriately tailored to claims based on the factual allegations in the operative complaint (the "Released Claims").  Settlement Agreement § 12.  The Named Plaintiffs and any Declarants who would like to receive a Service Award will also execute a general release of all claims in exchange for their Service Award payments.

Notice will be sent by U.S. mail and email.  Additionally, the Settlement Administrator and Class Counsel are authorized and intend to engage in supplemental efforts to ensure that Class Members receive and understand the Notice.  Reminder emails will be sent halfway through the Claims Period to anyone who has not submitted a Claim Form or opted out.  *Id.* § 9.2.3.  Class Members will have 60 days to object, opt out, and/or submit a Claim Form.

After consulting with the proposed Settlement Administrator about its experience, and based on their communications with the Settlement Collective members to date, Plaintiffs estimate that approximately 50% of the Class Members will return Claim Forms.  *See, e.g., Astarita v. Pinnacle Entertainment, Inc.*, No. 4:15-cv-00095-GAF (W.D. Mo.) (1,801/3,563 Class Members filed claims (50.5%)); *Blocher, et al. v. Landry's Inc.*, No. 8:14-cv-3213-T-35JSS

---

[11] Experience Works administers part of the Senior Community Service Employment Program, which is a community service and work-based job training program for older adults that serves as a bridge to securing unsubsidized jobs with local employers.  *See* https://www.experienceworks.org/.  The parties have no connection to Experience Works.  Sagafi Decl. ¶ 33.

(M.D. Fl.) (770/2,437 = 31.6%); *Aquino v. CEVA Logistics U.S. Inc.*, No. 5:14-cv-01795-VAP
(DTBx) (C.D. Cal.) (299/1,856 =16.1%); *Jarrett, et al. v. GGNSC Holdings L.L.C.*, No. 12:4105-
CV-C-BP (W.D. Mo. (2,672/6,119 = 43.7%); *see also* Sagafi Decl. ¶ 35.

### 2.    Programmatic Relief

Perhaps more importantly, PwC agrees to programmatic relief for a period of two years.
Settlement Agreement § 3.  The key features of the programmatic relief provided for in the
Settlement Agreement include:

**Implementation Expert.**  The parties will select a neutral Implementation Expert with
industrial/organizational expertise to act as PwC's consultant to advise on (1) training on
age inclusivity and overcoming age bias (including implicit bias) for leadership,
employees in the Talent Acquisition group, and personnel who interview candidates and
make hiring decisions for Covered Positions, (2) including an age component in annual
compliance training, (3) ideas for recruiting Older workers for Covered Positions, and (4)
ideas for avoiding age discriminatory impact in job posting procedures, screening and
decisionmaking criteria, and interview questions.

The Implementation Expert consultant will meet with PwC's Chief Purpose & Inclusion
Officer 6, 12, and 24 months after Finality to discuss implementation.  At least a month
before each meeting, PwC's Chief Purpose & Inclusion Officer will provide a status
update as to each area covered by the Settlement.  The Implementation Expert will present
questions and suggestions to PwC regarding implementation.

**Postings.**  PwC shall advertise directly to older populations of potential job applicants.
As part of this initiative, PwC will consider recommendations from Class Counsel.

**No use of graduation date.**  PwC agrees, for Covered Positions, not to ask pre-offer
applicants who have graduated for their graduation date, and not have eligibility limits
based on graduation year (except where the graduation date is in the future) or age.

**Non-discrimination policy.**  PwC shall include age as one aspect of PwC's non-
discrimination policy in official notifications of that policy.

**Alumni access to on-campus postings.**  PwC shall permit graduates of a school to apply
to Covered Positions at that school, and alert those schools at which PwC actively recruits
that such campus-track positions are open to alumni.

**Age discrimination complaint procedure.**  PwC's complaint procedure shall cover
complaints of age discrimination.  PwC will provide the Implementation Expert a
summary of the substance of post-Finality age-related complaints by applicants to
Covered Positions, without identifying any individual applicant, and the outcome of each
such complaint.

**Two-year implementation period.**  These programmatic changes will be implemented over the course of two years post Finality.  Separately, on the first two anniversaries post Finality, PwC's Chief Purpose & Inclusion Officer will send Class Counsel a letter confirming compliance with the settlement terms.

**Reserve period compensation.**  In addition, a reserve fund of $300,000 will be set aside from the Gross Settlement Fund to compensate Claimants who, during the 15-month period after Finality, submit evidence that they applied to a Covered Position and were not hired due to age discrimination or retaliation ("Reserve Fund Petitioners").[12]  To the extent a residue remains from the reserve fund, it will be paid out in the same manner as any residue from the Net Settlement Fund.

**Continuing jurisdiction.**  The Court has continuing jurisdiction during the two-year implementation period.

### C.   Class Representative and Declarant Service Awards[13]

The Settlement provides that Plaintiffs Rabin and Chapman will receive Service Award payments of $20,000 each, and that the 28 Declarants (if they agree to general releases) will each receive Service Award payments of $2,000.  Settlement Agreement § 6.  These amounts will be separate and apart from any other recovery to which they will be entitled under the Settlement as Class Members.  *Id.* at § 6.3.  These payments are intended to compensate them for (a) the significant time and effort that Plaintiffs and Declarants have spent on behalf of the Class with the prosecution of the claims, (b) the resulting value they have conferred to Class Members, and (c) the exposure and risk they incurred by taking a leadership role in a lawsuit that has garnered broad media coverage, along with the risk of retaliation in the employment marketplace by employers that do not wish to employ someone associated with a class action.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003) (confirming that non-plaintiffs can receive incentive awards under appropriate conditions); *Walton v. AT&T Corp.*, 15-cv-03653-VC, ECF No. 221 (N.D. Cal. Feb. 14, 2018) (Chhabria, J.) (awarding $5,000 each to seven class member witnesses); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13-CV-04960-VC, 2015 WL 12976106, at *3 (N.D. Cal. Aug. 20, 2015) ($27,000 and $25,000 to two class representatives);

---

[12] Reserve Fund Petitioners will receive $0-10,000 based on the same factors used in the main Claim process, supplemented by any additional showing they wish to make.

[13] This section and the next section preview, at a general level, the more detailed factual and legal presentation Plaintiffs will provide in their Fee Petition to be filed during the Claims period.

*Vedachalam v. Tata Consultancy Servs.*, No. 06-cv-0963, 2013 WL 3929129, at *2 (N.D. Cal. July 18, 2013) (Wilken, J.) (awarding $1,000 to each testifying declarant); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 00465, 2011 WL 3348055, at *3 (N.D. Cal. June 30, 2011) (Koh, J.) ($20,000 to lead plaintiff); *Lewis v. Wells Fargo & Co.*, No. 08 Civ. 2670, slip op. at 4 (N.D. Cal Apr. 29, 2011), ECF No. 315 (Wilken, J.) ($22,000 and $20,000 for named plaintiffs); *Ross v. U.S. Bank Nat'l Ass'n*, No. 07 Civ. 2951, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) ($20,000 service award for each of four class representatives); *Glass v. UBS Fin. Servs., Inc.*, No. 06 Civ. 4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) ($25,000 to each of four class representatives); *see also Coates v. Farmers Grp., Inc.*, No. 15 Civ, 01913, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) (Koh, J.) ($5,000 each to two opt-in class members who participated in the litigation); *Wellens v. Sankyo*, No. 13 Civ. 00581, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (Orrick, J.) ($1,000 to $6,000 for opt-in witness class members who provided declarations or were deposed).

### D.   <u>Attorneys' Fees and Costs</u>

The Settlement Agreement allows Plaintiffs' Counsel to request attorneys' fees up to 40% of the settlement fund and reimbursement of actual out-of-pocket costs up to $295,000. Settlement Agreement §§ 5.1-5.4.  Plaintiffs' Counsel's lodestar in this hotly contested litigation is already over $6,488,000, with more work to be performed to (1) secure preliminary approval, (2) oversee implementation of notice and respond to Class Member inquiries during the notice period, (3) assist the Settlement Administrator in evaluation of the Claim Forms, (4) brief and argue final approval, and (5) particularly importantly, provide PwC with recommendations regarding advertising to Older workers and manage the reserve fund claims process until approximately 2022.  Plaintiffs intend to request a 35% fee, or $4,068,750, which equates to a "negative" lodestar multiplier of 0.63x, which will gradually decrease during the coming months and years while Plaintiffs' Counsel continue to work for the Class Members' benefit.  Plaintiffs expect the ultimate lodestar multiplier, after all work is done (around the end of 2022), to be approximately 0.60x (or lower), if the Court awards a 35% fee.  Looked at another way, once the value of the programmatic relief is included on top of the monetary relief (*see* § IV.C.2., below),

Plaintiffs believe that a more realistic assessment of the Settlement value is $16,625,000; the $4,068,750 fee is 24.5% of that amount.

Plaintiffs' counsel have performed substantial work to earn this fee.  During the past four years of investigation and litigation, Plaintiffs' Counsel (a) defeated a Motion for Judgment on the Pleadings, ECF No. 55, and an interlocutory appeal of the ruling, ECF No. 84, (b) conducted extensive discovery, including intensively negotiating a robust ESI process and reviewing a production of over 253,000 documents, (c) worked closely with expert consultants to carefully analyze PwC's application data and public date of birth data, (d) conducted extensive legal and factual research of the claims at issue, (e) engaged in vigorous and hotly-contested motion practice including two collective action certification motions, (f) zealously represented Plaintiffs during two mediations and intense post-mediation settlement discussions, and (g) otherwise aggressively pursued the case to achieve an excellent result for Class Members.

A 35% fee is consistent with the Ninth Circuit's and this District's fee jurisprudence, whereby fee awards in "megafund" settlements of $50-200 million are based on a benchmark of 25%, which is adjusted downward for settlements over $200 million and upward for settlements below $50 million, as well as being cross-checked for reasonableness using Plaintiffs' counsel's lodestar.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (affirming 28% fee in $96.885 million settlement, describing "increase-decrease" rule to adjust benchmark up or down, and holding that size of fund and lodestar cross-check are among factors to be considered in setting fee rate).  Plaintiffs' Counsel will submit their fee and cost request, along with the request for service payments, ten business days before the objection deadline, to allow Class Members an opportunity to object or otherwise comment on these aspects of the Settlement.  Settlement Agreement § 5.1.

### E.   Settlement Administration Costs

The Settlement Administrator has agreed to perform all administration work set forth in the Settlement Agreement for a maximum payment of $105,330 (barring unforeseen circumstances, in which case the Settlement Administrator may request Court approval for an additional amount on a showing of good cause).  The Settlement Administrator's maximum fee

amounts to just 0.9% of the total fund, which is reasonable in light of the amount and complexity of the work to be performed (especially processing the Claim Forms, which will require careful manual review), and is in line with settlement administration fees in comparable cases.  *See, e.g., Uber*, 2018 WL 5982506, at *14  ($110,000 administration fee, equal to 1% of $10 million settlement).

## IV.   ARGUMENT

Settlement approval "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: First, the court must determine that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b)); and second, the court must determine that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998).

Although the Ninth Circuit has not addressed the criteria courts should use to determine whether to approve an ADEA settlement, district courts in the Ninth Circuit have relied on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), which requires the Court to determine whether "the settlement represents a fair and reasonable resolution of a bona fide dispute."  *Heath v. Google LLC*, No. 15–cv–01824–BLF, 2019 WL 3842075, at *3 (N.D. Cal. Aug. 15, 2019) (approving ADEA settlement) (citing *Lynn's Food Stores*, 679 F.2d at 1355).

A.      **Certification of the Rule 23 Classes Is Proper.**

For settlement purposes, the parties agree to certification of the class.[14]  "The validity of use of a temporary settlement class is not usually questioned."  Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).

The relevant factors also weigh in favor of certification.

1.      **Rule 23(a) Is Satisfied.**

First, numerosity is met because joinder of Class Members would be impractical.  Fed. R. Civ. P. 23(a)(1).  The Class of thousands of individuals readily meets this standard.

Second, commonality is met because "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In examining the commonality factor, the Supreme Court has stated that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common answers apt to drive the resolution of the litigation."  *Abdullah v. U.S. Sec. Associates,* 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, there are numerous common questions, such as whether PwC's policies and practices discriminate against Class Members, whether they violate the ADEA, the UCL, FEHA, and MCRA, whether PwC's recruitment and hiring systems are discriminatory, and what remedies are warranted.

Third, typicality is satisfied.  Rule 23 typicality requires a finding that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "focuses on the similarity between the lead plaintiff's legal theories and those of the people he or she purports to represent."  *Whiteway v. FedEx Kinko's Office and Print Servs.*, No. 05–cv–2320–SBA, 2006 WL 2642528, at *6 (N.D. Cal. Sept. 14, 2006);

---

[14] The Rule 23 Classes proposed in the Settlement Agreement are substantially the same as those proposed in the First Amended Complaint, ECF No. 42, with the following differences: (1) the Rule 23 Classes include only qualified applicants, consistent with the Court's Order denying conditional certification of an ADEA collective including unqualified applicants (ECF No. 103); (2) the Rule 23 Class period reaches back three years from the date of the operative Complaint, to September 8, 2013 for all claims, by agreement of the Parties; (3) the Rule 23 Classes no longer include "deterred applicants," in recognition of the difficulty of identifying individuals who did not act on their desire to apply to PwC.  The certified ADEA collective is unchanged in the Settlement Agreement.

*Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs' claims are typical because they challenge the same policies and practices as the Class Members' claims.

<u>Fourth</u>, Plaintiffs have fairly and adequately protected the interests of the class and will continue to do so.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where the class representative: (1) has common, and not antagonistic, interests with unnamed class members, and (2) will vigorously prosecute the interests of the class through qualified counsel.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs, like the Class Members they seek to represent, share an interest in vigorous prosecution of the claims and in seeing PwC improve its recruitment and hiring practices.  Plaintiffs Rabin and Chapman are adequate representatives of the California and Michigan classes, respectively, because they allege that they applied to and were denied employment with PwC in a Covered Position, at the age of 40 or older, despite being qualified, while residents of their respective states or in applying to a position based on those states.  Both Rabin and Chapman have been dedicated to aggressively prosecuting those claims.  The interests of Plaintiffs and Class Members in seeking compensation for and overhaul of PwC's recruitment and hiring practices are the same.

In addition, Plaintiffs are represented by adequate counsel.  Class Counsel are highly experienced in prosecuting employment discrimination class actions.  As detailed further in the Sagafi Decl., Class Counsel specialize in representing employees in complex employment class actions, with a track record of obtaining superior results for their clients.  *See, e.g.*, *Uber*, 2018 WL 5982506 at *4 (appointing Outten & Golden as class counsel in $10,000,000 race and gender discrimination settlement); *Walsh v. CorePower Yoga LLC*, No. 16–cv–05610–MEJ, 2017 WL 589199, at *8 (N.D. Cal. Feb. 14, 2017) ("Plaintiff's counsel have a proven track record in the prosecution of class actions as they have successfully litigated and tried many major class action cases."); *Jaffe v. Morgan Stanley & Co.*, No. 06–cv–3903–TEH, 2008 WL 346417, at *8 (N.D. Cal. Feb. 7, 2008) (Class Counsel have "extensive experience and expertise in prosecuting employment discrimination class action cases"); *see also* Sagafi Decl. ¶ 5 (collecting cases).

For these reasons, Class Counsel satisfy the adequacy requirement of Rule 23(a).

2.      **Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Both of these requirements are met here.

The proposed Rule 23 Class is sufficiently cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623.  Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation omitted).  Common questions may predominate "even though certain class members' circumstances var[y] and some of the defendant's practices would have to be proven by anecdotal testimony." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09–cv–5803–EMC, 2011 WL 4017967, at *12 (N.D. Cal. Sept. 8, 2011).  Here, common issues predominate because Plaintiffs and the Class Members applied to one of three positions (Associate, Experienced Associate, Senior Associate) in PwC's Tax or Assurance lines of service and were subject to common policies and practices regarding recruitment and hiring. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (citing cases) (focusing on "centralized control in the form of standardized hierarchy" and "standardized corporate policies and procedures governing employees"); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 538 (N.D. Cal. 2012) (Chen, J.) (noting nationwide system and "specific employment practices that have caused a disparity").  Superiority rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3).  Here, "there is no indication, that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05–cv–02520–TEH, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006); *Amchem*, 521 U.S. at 615.  The Class Members likely lack the resources and certainly lack the incentives to secure experienced, qualified counsel, or to see litigation through to completion on their own.  It is generally not rational to invest hundreds of thousands of dollars in expert and other costs plus scores or hundreds of hours

of time and the stress inherent in litigation for a chance to possibly recover money against a powerful corporation.  In addition, hundreds of individual lawsuits would be wasteful and inefficient.  *See, e.g.*, *Whiteway*, 2006 WL 2642528, at *11.  Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3.     Rule 23(b)(2) is Satisfied.

Under Rule 23(b)(2) class certification, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class," even if not all class members have been injured by the challenged practice.  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15–cv–0224–YGR, 2016 WL 314400, at *9 (N.D. Cal. 2016) (Rule 23(b)(2) settlement class certified); *Garcia v. Johnson*, No. 14–cv–01775–YGR, 2015 WL 13439762, at *1 (N.D. Cal. Aug. 20, 2015) (same); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 447–48 (N.D. Cal. 2001) (Henderson, J.).

Here, Plaintiffs seek classic 23(b)(2) injunctive relief to modify PwC's recruitment and hiring practices and eradicate discrimination.  *See Civil Rights Educ. & Enf't Ctr*, 2016 WL 314400, at * 9 ("The Supreme Court in *Wal-Mart* recognized that [c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture.") (internal quotations omitted); *see also Garcia v. Johnson*, No. 14–cv–01775–YGR, 2015 WL 13387594, at *1 (N.D. Cal. Oct. 27, 2015) (approving prospective relief including defendant modifying practices, producing periodic implementation reports to class counsel and incorporating changes into training guides for employees); *Curtis-Bauer v. Morgan Stanley & Co.*, 2008 WL 4667090, at *5 (programmatic relief disparate impact case approved).

### 4.     Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) resources counsel can commit.  Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above.  *Supra*, § IV.A.1; *see also* Sagafi Decl. ¶¶ 4-16, 36-37.

### B.   The Federal ADEA Collective Has Been Certified.

The Court conditionally certified the ADEA collective on April 5, 2019.  ECF No. 274.  A total of 3,456 individuals opted in after certifying that they applied for Covered Positions within the Covered Period and met the minimum qualifications for the positions to which they applied.

### C.   The Settlement Is Fair, Reasonable, And Adequate.

Once the Court has found class and collective certification proper, the next step of the preliminary approval process is to assess whether the settlement is "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  Typically, the first-stage analysis inquires into "obvious deficiencies," with preliminary approval granted if the settlement is non-collusive and within the range of possible final approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Walker, J.); *see also Ruch v. AM Retail Grp., Inc.*, No. 14–cv–05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (focusing preliminary approval analysis on "non-collusive negotiations," the lack of "obvious deficiencies," and "preferential treatment," and being "within the range of possible approval"); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 11.41 (4th ed. 2006).

When considering whether to grant approval, courts often "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  However, the Ninth Circuit has recently cautioned that pre-certification settlements merit significant scrutiny.  *Roes, 1-2* 944 F.3d at 1043.  Courts may also assess the following factors, which are assessed in greater detail at final approval.  These factors are addressed below: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the experience and views of counsel."  *Hanlon*, 150 F.3d at 1026.  In addition, courts review "the presence of a governmental participant" and "the reaction of the class members to the proposed settlement."  *Id.*  The former is not relevant, and the latter cannot be gauged at this stage.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.   **Plaintiffs' Case Faced Significant Hurdles on Liability, Class Certification, And on Appeal.**

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'"  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14–cv–01788–JST, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016).  Plaintiffs face substantial obstacles to full recovery.

First, liability is far from guaranteed because even if Plaintiffs could show statistically significant disparities by age in hiring, PwC could point to differences in education, training, and experience to attempt to explain away any differences.  Relatedly, much of Plaintiffs' strongest evidence is of remarks made by PwC recruiters and interviewers to older candidates.  PwC could attempt to show that these remarks were individualized and localized rather than part of a nationwide pattern or practice or cohesive recruitment and hiring plan directed by PwC.

Second, Plaintiffs faced obstacles in winning class certification because of the multiple job titles, lines of service, specialties, geographic locations, management teams, and individual qualifications at issue.  Hiring class actions, while certifiable, face obstacles in litigation because the details of each person's circumstances – such as their qualifications for the position, interview skills, and jobs taken after being rejected – may require individualized inquiries, including as to damages.  *See, e.g.*, *Berndt v. California Dep't of Corrections*, No. 03–cv–3174–PJH, 2012 WL 950625, at * 13 (N.D. Cal. Mar. 2, 2012) ("potential for multiple mini-trials, even solely as to damages, further weakens the case for a finding of superiority").

Third, even if Plaintiffs were able to prevail on the merits at trial, the risk of losing an appeal is high.  Although the Court denied PwC an interlocutory appeal of its Motion for Judgment on the Pleadings regarding whether Plaintiffs can bring disparate impact claims on behalf of applicants under the ADEA, at the close of the case PwC would likely seek a new appeal to the Ninth Circuit.  There, if Plaintiffs prevailed, it would create a circuit split, increasing the likelihood that the Supreme Court might weigh in and reverse.  *See Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir. *en banc*), *cert. denied*, 140 S. Ct. 306 (2019) (job applicants not

covered under ADEA disparate impact provision); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. *en banc* 2016) (same).

### 2.     The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.) (internal quotation marks omitted).

There are several ways to assess the reasonableness of the Settlement amount.[15]

<u>First</u>, the total exposure, multiplied by the probably of prevailing at each stage, results in an "expected value" for the case significantly below $11,625,000.  Plaintiffs calculate the "average" individual Class Member's damages as follows: a $68,500 starting salary at PwC, an unemployment period of 12 weeks following denial of the Class Member's application to PwC before getting alternative employment elsewhere (based on Bureau of Labor Statistics ("BLS") data in this sector), 9% lower pay in alternative employment, 5% annual salary growth, and either a three-year time horizon of future underpayment or a 20-year time horizon (the Class Member's full career after application to PwC at age of 40 or older).  Those assumptions yield damages of approximately $35,243 or $219,659 per person for the three- and 20-year time horizons, respectively.  If one assumes the following shortfall numbers:  216 Associate offers, 150 Experienced Associate offers, and 212 Senior Associate offers, for a total of 578 offers, those individual damages figures translate to $20.4 million and $126.9 million, respectively.[16]

---

[15] The following analyses reflect Plaintiffs' calculations.  PwC disagrees with the inputs and approach and would contest them in litigation.

[16] The shortfall analysis focuses on discrepancies in offer rates, assuming equal qualifications among the two populations.  It is independent of the number of Class Members.  The fact that the number of Class Members exceeds the estimated shortfall would not increase the damages calculation, because the damages calculation is capped at the total shortfall (i.e., two applicants cannot both claim a right to be hired for the same unique position).  *See, e.g., United States v. City of New York*, 681 F. Supp. 2d 274, 291 n.22 (E.D.N.Y. 2010) ("Because there will likely be many more victims of discrimination than positions that the City would have filled with minority candidates, the [settlement] provides each victim with a pro rata share of the monetary value of those positions.").

The next step is to adjust these raw exposure figures by the probability of Plaintiffs' prevailing at each stage of litigation.  Assuming a 50% chance of prevailing at Rule 23 certification and FLSA decertification (together), summary judgment, and trial yields an aggregate 12.5% chance of recovering maximum damages.  Applying that chance to the average of the two damages figures ($73.6 million) yields an <u>expected value of $9,200,000</u>.  This figure ignores the chance of losing on appeal, which is a significant concern given recent changes to the composition of the Ninth Circuit and Supreme Court, taking them in a direction that is more receptive to arguments by corporate interests.  Thus, a $9.2 million expected value appears inflated.  The $11.625 million settlement compares quite favorably to that expected value.

<u>Second</u>, another way to view the settlement is on a per-person basis.  Here, the $11.625 million settlement equates to approximately $2,325 per person for an estimated 5,000 Class Members.  This amount compares reasonably to class action settlements resolving claims of incumbents (as opposed to applicants), where the harm is generally greater, because incumbents experience ongoing harm month after month, year after year.  *See, e.g.*, *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 368 (E.D.N.Y. 2014) ($7,800 per class member for female financial advisors challenging gender discrimination); *Gonzalez v. Abercrombie* No. 03–cv–02817–SI (N.D. Cal. Apr. 11, 2005), ECF No. 125 ($2,000 per class member in race discrimination action for store salespeople and applicants).  Here, the approximately 5,000 Class Members are included without regard to qualifications – e.g., some of the 3,456 Opt-Ins and the additional California and Michigan Class Members may have GPAs below 3.0, college majors that are not relevant to accounting and auditing work, and/or inferior work experience.

<u>Third</u>, Plaintiffs believe that the settlement is also reasonable compared with *Heath v. Google*, which recently settled in this district for $11,000,000.  15–cv–1824, ECF No. 438 (N.D. Cal. Aug. 15, 2019).  To make the *Rabin-Heath* comparison apples to apples, four key adjustments are required:  (a) 227 *Heath* opt-ins compared to 578 *Rabin* positions (making *Rabin* 2.55x as big as *Heath*), (b) $335,000 vs. $68,500 in salary (0.20x), *Heath v. Google,* No. 5:15–cv–01824–BLF, ECF No. 346, Ex. 1 at 10–11 n.5, (c) 22 weeks vs. 12 weeks of unemployment per BLS data (0.55x), and (d) the *Heath* plaintiffs had survived a decertification motion, whereas *Rabin* has

not.  Holding aside that last qualitative factor, the quantitative factors (2.55x * 0.20x * 0.55x) yield an aggregate factor of 0.28x, which, when applied to the *Heath* settlement, yields an expected value of $3,100,000.The proposed settlement far exceeds that.

Importantly, Plaintiffs believe that the extensive programmatic relief, while difficult to value with precision, is extremely valuable.  Supposing that the programmatic relief aids 2,500 individuals to the tune of $1,000 in value for each of the next two years, that benefit to Class Members equals an additional $5,000,000 in value, bringing the total value of the settlement to $16,625,000.

Thus, the $11,625,000 common fund plus the programmatic relief constitutes fair, reasonable, and adequate compensation for the Class Members, in light of potential value of their claims.

### 3.      The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery.  The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Here, Plaintiffs have litigated these claims zealously for nearly four years, conducting robust formal discovery along the way.  Specifically, Plaintiffs obtained 1,042,467 pages of documents from PwC, reviewing and analyzing thousands of corporate documents, training materials for recruiters and other PwC employees involved in the hiring process, emails, internal complaints, in addition to extensive data tracking applications to Covered Positions.  Sagafi Decl. ¶ 19.  Throughout the Litigation, Plaintiffs' Counsel interviewed many Class Members and other witnesses, who provided extensive information regarding PwC's recruitment and hiring process, as well as describing their own individual experiences with discrimination.  *Id.* ¶ 18.  Plaintiffs' Counsel also worked closely with experts to analyze various types of potential discrimination in hiring.  *Id.* ¶ 20.  Thus, the Settlement results from Plaintiffs' Counsel's informed judgment about the strengths and weaknesses of the claims.

### 4.     Counsel's Experience And Views Support Approval.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotations omitted).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (internal quotations and modifications omitted).

Plaintiffs' Counsel – Outten & Golden LLP, AARP Foundation Litigation, and the Liu Law Office – are some of the most experienced and sophisticated plaintiffs' employment lawyers in the area of discrimination litigation in the country.  Based on their extensive experience and expertise in this particular area of the law, Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate.  Plaintiffs' Counsel specialize in prosecuting nationwide employment class actions, and over the past many years have successfully—and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims.  Sagafi Decl. ¶ 32 (describing "Past Distributions" in accordance with Northern District of California Procedural Guidance for Class Action Settlements).

### 5.     The Parties Participated in Arms-Length Negotiations Before Two Experienced Neutral Mediators.

A settlement reached "in good faith after a well-informed arms-length negotiation" is presumed to be fair.  *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 04149, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *Wren v. RGIS Inventory Specialists*, No. 06–cv–05778–JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *see also Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 325 (N.D. Cal. 2013) (Armstrong, J.) (participation in private mediation "support[s] the conclusion that the settlement process was not collusive").  Here, the settlement easily meets the rigorous scrutiny required in this District and by *Roes, 1–2*, for both substantive and procedural reasons.  First, the Settlement is substantively strong, providing excellent monetary relief and robust programmatic relief.  Second, the Settlement is procedurally sound, (a) having been reached after extensive, hard-fought adversarial litigation, with extensive discovery and

motion practice, (b) with no parallel litigation that could give rise to reverse auction concerns, and (c) after over a year of mediated settlement discussions with the oversight of two highly experienced mediators with particular expertise, collectively, in this industry and in complex employment discrimination class actions.  Sagafi Decl. ¶¶ 22-27.

### D.     The Proposed Notice Is Clear And Adequate.

The proposed Notice is the "best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B), and is "reasonable," Fed. R. Civ. P. 23(e)(1).  The Notice and Claim Form are consistent with Northern District of California's Procedural Guidance for Class Action Settlements and modern best practices set forth by the Federal Judicial Center (based on examples at www.fjc.gov).  The Notice and Claim Form are easily understandable and include: (1) contact information for Class Counsel to answer questions; (2) the address for a website, maintained by the Settlement Administrator that will link to the notice, motions for approval and for attorneys' fees and any other important documents in the case; and (3) instructions on how to access the case docket via PACER or in person at any of the Court's locations.  The Notice will state the date of the final approval hearing and clearly states that the date may change without further notice to the class.  The Notice further advises Class Members that they should check the settlement website or the Court's PACER site to confirm that the date has not been changed.

The Notice explains that Class Members have 60 days to object or opt out, and 60 days to submit a Claim Form.  Settlement Agreement ¶ 9.2.7.

The Claim Form is clear, user-friendly, and focused on a few key relevant facts to which Class Members have ready access.  The Claim Form is helpfully pre-printed with individualized information in customized paper copies.  It will also be available online, so that Class Members can submit Claim Forms via a web submission form, just like many of them opted into the litigation.  In addition, Plaintiffs' Counsel will assist the Settlement Administrator in responding to Class Member questions, helping them file Claim Forms and navigate the process generally.

### V.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Plaintiffs, in consultation with PwC, propose the following schedule for finalizing and implementing the Settlement:

MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 16-CV-02276-JST

| Event | Proposed Date |
|---|---|
| **Preliminary Approval Hearing** | **March 11, 2020** |
| Court enters Preliminary Approval Order* | March 18, 2020 |
| PwC provides class list data to Settlement Administrator | April 8, 2020 |
| Settlement Administrator disseminates Notice | May 7, 2020 |
| Settlement Administrator sends Reminder notices | June 8, 2020 |
| Plaintiffs file Fee and Service Award motions | June 22, 2020 |
| Deadline for Class Members to file Claim Forms, opt out, and/or object | July 6, 2020 |
| PwC deadline to exercise void option | July 23, 2020 |
| Plaintiffs file Final Approval motion | July 27, 2020 |
| **Final Approval Hearing** | **August 10, 2020** |
| Final Approval Order* | August 17, 2020 |
| Effective Date (assuming no appeals)* | September 16, 2020 |
| PwC funds Settlement | September 30, 2020 |
| Settlement Administrator mails checks to Class | October 15, 2020 |

* Assumed date for purposes of calculating subsequent dates.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the settlement classes; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and (e) and section 216(b) of the FLSA; (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and JND Legal Administration as Settlement Administrator; (4) set the deadlines for filing claims, written exclusions, or objections to the Settlement; (5) approve the forms of notice to the class of the settlement and the Claim Form; and (6) schedule a hearing on the final approval of the Settlement.

Dated: March 3, 2020

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
    Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
Laura Iris Mattes (Cal. Bar No. 310594)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: imattes@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
Melissa L. Stewart (admitted *pro hac vice*)
Daniel Stromberg (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-mail: atk@outtengolden.com
E-mail: mstewart@outtengolden.com
E-mail: dstromberg@outtengolden.com

Lucy Brierly Bansal (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW, Ste 200W
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: lbansal@outtengolden.com

Daniel Kohrman (admitted *pro hac vice*)
Laurie McCann (admitted *pro hac vice*)
Dara Smith (admitted *pro hac vice*)
AARP FOUNDATION LITIGATION
601 E. Street, N.W.
Washington, D.C. 20049
Telephone: (202) 434-2060
Facsimile: (202) 434-2082
E-mail: dkohrman@aarp.org
E-mail: lmccann@aarp.org
E-mail: dsmith@aarp.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jennifer L. Liu (Cal. Bar No. 279370)
THE LIU LAW FIRM, P.C.
1170 Market Street, Suite 700
San Francisco, CA 94102
Telephone: (415) 896-4260
Facsimile: (415) 231-0011
E-mail: jliu@liulawpc.com

*Attorneys for Plaintiffs and Proposed Class and Collective Members*

MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 16-CV-02276-JST